Ekwan E. Rhow - State Bar No. 174604
 erhow@birdmarella.com
Grace W. Kang - State Bar No. 271260
 gkang@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

Nicholas Groombridge (*pro hac vice*)
 ngroombridge@paulweiss.com
Jenny C. Wu (*pro hac vice*)
 jcwu@paulweiss.com
Michael F. Milea (*pro hac vice*)
 mmilea@paulweiss.com
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

J. Steven Baughman (*pro hac vice*)
 sbaughman@paulweiss.com
Megan Raymond (*pro hac vice*)
 mraymond@paulweiss.com
Tanya S. Manno (*pro hac vice*)
 tmanno@paulweiss.com
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

Attorneys for Defendant Twitter, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PALO ALTO RESEARCH CENTER INC.,<br><br>          Plaintiff,<br><br>     vs.<br><br>TWITTER, INC.,<br><br>          Defendant. | Case No. 2:20-cv-10754-AB(MRWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TWITTER, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Hearing Date:  March 19, 2021<br>Time:    10:00 A.M.<br>Courtroom:  7B<br><br>Assigned to Hon. André Birotte Jr. |

# **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..........................................................................................................1

PROCEDURAL HISTORY ........................................................................................1

LEGAL STANDARD ..................................................................................................2

ARGUMENT .................................................................................................................4

I.   The '871 Patent ...................................................................................................4

    A.   The '871 Patent Claims Are Directed to an Abstract Idea..........................6

    B.   The '871 Patent Claims Add No Inventive Concept ...................................9

II.  The '781 Patent .................................................................................................11

    A.   The '781 Patent Claims Are Directed to an Abstract Idea........................13

    B.   The '781 Patent Claims Add No Inventive Concept .................................16

III. The '362 Patent .................................................................................................18

    A.   The '362 Patent Claims Are Directed to an Abstract Idea........................20

    B.   The '362 Patent Claims Add No Inventive Concept .................................24

CONCLUSION............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Affinity Labs of Tex., LLC* v. *Amazon.com, Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)................................................................ 7, 9, 15

*Affinity Labs of Tex., LLC* v. *DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)........................................................... 3, 23

*Alice Corp. Pty.* v. *CLS Bank Int'l*,
    573 U.S. 208 (2014) ........................................................................ passim

*Apple, Inc.* v. *Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016)..................................................................... 9

*Bascom Glob. Internet Servs., Inc.* v. *AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016).................................................................. 10

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) .................................................................................... 2

*Berkheimer* v. *HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018).................................................................... 4

*Bridge & Post, Inc.* v. *Verizon Commc'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) ...................................................... 13, 14

*BSG Tech LLC* v. *Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018)................................................................ 3, 4

*Bozeman Fin. LLC* v. *Fed. Rsrv. Bank of Atlanta*,
    955 F.3d 971 (Fed. Cir. 2020)...................................................................... 8

*Cellspin Soft, Inc.* v. *Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019).................................................................. 21

*ChargePoint, Inc.* v. *SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)................................................................. 2, 3

*Content Extraction & Transmission, LLC* v. *Wells Fargo Bank*,
    776 F.3d 1343 (Fed. Cir. 2014).................................................................. 21

*Customedia Techs., LLC* v. *Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)...................................................... 7, 13, 23

*CyberSource Corp.* v. *Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) .................................................... 6, 7, 13, 21

*DDR Holdings, LLC* v. *Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ........................................................... 21

*Diamond* v. *Diehr*,
  450 U.S. 175 (1981) ............................................................................. 3

*Elec. Power Grp., LLC* v. *Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ..................................................... passim

*Enfish, LLC* v. *Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ................................................... 4, 9, 15

*FairWarning IP, LLC* v. *Iatric Sys., Inc.*,
  893 F.3d 1089 (Fed. Cir. 2016) ........................................................... 20

*Intellectual Ventures I LLC* v. *Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ................................................. 3, 13, 15

*Intellectual Ventures I LLC* v. *Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ..................................................... passim

*Intellectual Ventures I LLC* v. *Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ............................................... 4, 8, 9, 10

*Interval Licensing LLC* v. *AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) ...................................................... 8, 22

*Mayo Collaborative Servs.* v. *Prometheus Labs., Inc.*,
  566 U.S. 66 (2012) ..................................................................... 17, 25

*Monument Peak Ventures, LLC* v. *Toshiba Am. Bus. Sols., Inc.*,
  No. SACV1902181DOCDFM, 2020 WL 6050597 (C.D. Cal. Aug. 12,
  2020) ............................................................................................ 25

*OIP Techs., Inc.* v. *Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) .......................................................... 16

*Parker* v. *Flook*,
  437 U.S. 584 (1978) .......................................................................... 11

*RecogniCorp, LLC* v. *Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) .......................................................... 16

ii

*SAP Am., Inc.* v. *Investpic LLC*,
    898 F.3d 1161 (Fed. Cir. 2018).....................................................................4, 10, 11, 14

*Simio, LLC* v. *FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020).................................................................................3, 23

*Smart Sys. Innovations, LLC* v. *Chicago Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017)......................................................................................18

*Solutran, Inc.* v. *Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019)....................................................................................3, 4

*In re TLI Commc'ns LLC Pat. Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)..................................................................................16, 17

*W. View Rsch., LLC* v. *Audi AG*,
    685 F. App'x 923 (Fed. Cir. 2017) ................................................................................14

*Zapfraud, Inc.* v. *FireEye, Inc.*,
    No. 19-1688-CFC, 2020 WL 6822972 (D. Del. Nov. 20, 2020) .....................................9

iii

## **INTRODUCTION**

Each of PARC's six asserted patents is patent-ineligible under 35 U.S.C. § 101. Three of these patents are addressed in this motion[1]—all three cover age-old practices that humans have long performed when searching for information and handling documents.  The '871 Patent is directed to determining the authoritativeness of a document based on textual features within the document.  The '781 Patent is directed to personalizing information searches by returning as-yet unseen information connected in some way to the information previously viewed by the user.  The '362 Patent is directed to receiving a tag with instructions to take a specified action on a portion of a document, processing the tag, and sending the portion to the recipient named in the tag.[2]  Notably, all of the steps of Claim 1 of each of the three patents can be performed entirely by humans.  The remaining claims simply "[s]tat[e] an abstract idea while adding the words 'apply it with a computer.'"  *Alice Corp. Pty.* v. *CLS Bank Int'l*, 573 U.S. 208, 223 (2014).  The application of these fundamental human activities to a computer or to the Internet, however, is not sufficient to save these claims from being directed to abstract ideas under long-standing Federal Circuit precedent.  Because the '871, '781, and '362 Patent claims are directed to abstract ideas and fail to recite inventive concepts sufficient to transform them into patent-eligible applications, they are invalid under § 101.

## **PROCEDURAL HISTORY**

In accordance with Local Rule 7-3, the parties met and conferred regarding

---

[1] To reduce repetitive briefing for the Court, Twitter does not brief the ineligibility of U.S. Patent Nos. 8,489,599 and 9,208,439 in this motion and instead joins Facebook's motion on these two patents.  To reduce the number of issues in front of the Court at this time, Twitter does not move to dismiss PARC's claim for relief for U.S. Patent No. 7,043,475, but reserves the right to argue that the '475 Patent is invalid under § 101 at a later stage of the case.

[2] The '871 Patent refers to  U.S. Patent No. 7,167,871, the '781 Patent refers to U.S. Patent No. 8,606,781, and the '362 Patent refers to U.S. Patent No. 8,966,362.

Twitter's anticipated motion to dismiss. On January 14, 2021, Twitter sent PARC a letter noting the lack of allegations in PARC's Complaint regarding the patent-eligibility of the asserted patents. *See* Declaration of Nicholas Groombridge, Ex. A. On January 19, the parties, along with Facebook and Snap (together with Twitter, the "Defendants"), met and conferred live. The Defendants asked PARC how the asserted patent claims are eligible for patent protection under the Federal Circuit's § 101 precedent, and whether PARC intended to amend its Complaint to add any allegations that would support such protection. PARC responded that it did not see any need to amend its Complaint and did not intend to do so before a court ruling on the Defendants' motions to dismiss.

When asked specifically whether it would contend that any particular asserted claim element or dependent claim provided an inventive concept, PARC did not identify a single one in any of the patents addressed in this motion. PARC also did not identify any claim construction issue that would make dismissal premature at the Rule 12(b)(6) stage. Following the meet-and-confer, PARC sent a letter that reiterated that it did not see a need to amend its Complaint to support the patent-eligibility of the challenged patents. *See id.*, Ex. B at 3–4. On February 10, Twitter sent a follow-up email with additional bases for its anticipated arguments that the patents of this motion are patent-ineligible, requesting to meet and confer further in an attempt to narrow the parties' disputes. *Id.*, Ex. C at 3–4. PARC sent a response in the afternoon of February 15, 2021, reiterating the positions it took in the meet-and-confer and its subsequent letter. *Id.*, Ex. C at 1–2.

## **LEGAL STANDARD**

Dismissal of patent infringement claims at the pleadings stage is appropriate where, assuming the truth of the complaint's factual allegations and drawing all reasonable inferences in favor of the plaintiff, the asserted patent claims are patent-ineligible under 35 U.S.C. § 101. *See Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *ChargePoint, Inc.* v. *SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019).

A patent is invalid if it claims patent-ineligible subject matter, such as laws of nature, natural phenomena, or abstract ideas. *Diamond* v. *Diehr*, 450 U.S. 175, 185 (1981). In the computer context, subject-matter eligibility is evaluated under the two-step framework set forth in *Alice*, 573 U.S. at 217–18.

***Step one*** of the *Alice* test inquires "'what the patent asserts to be the focus of the claimed advance over the prior art,' to determine whether the claim's 'character as a whole' is directed to ineligible subject matter." *Simio, LLC* v. *FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020) (quoting *Solutran, Inc.* v. *Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019); *Affinity Labs of Tex., LLC* v. *DIRECTV, LLC*, 838 F.3d 1253, 1257–58 (Fed. Cir. 2016) ("*Affinity Labs I*")). Where "the abstract idea tracks the claim language and accurately captures what the patent asserts to be the focus of the claimed advance over the prior art, characterizing the claim as being directed to an abstract idea is appropriate." *Solutran*, 931 F.3d at 1168 (internal citation and quotation marks omitted). As the Federal Circuit clarified, the "directed to" inquiry may also involve looking to the specification to understand "the problem facing the inventor" and, ultimately, what the patent describes as the invention. *ChargePoint*, 920 F.3d at 767.

Courts have recognized various forms of abstract ideas, including: (1) activity that can be performed mentally or with pen and paper; (2) long-prevalent or fundamental practices; (3) methods for organizing data, such as collecting, analyzing, and displaying data; and (4) methods of organizing human activity, including the use of rules to take certain actions. *See, e.g.*, *Alice*, 573 U.S. at 219; *Intellectual Ventures I LLC* v. *Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("*IV/Capital One I*"); *Elec. Power Grp., LLC* v. *Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). A patent directed to an abstract idea does not become patentable simply by claiming the abstract idea within a narrow technological context or use case. *BSG Tech LLC* v. *Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018). Further, as the Federal Circuit has explained, "merely reciting an abstract idea by itself in a claim—even if

3

the idea is novel and non-obvious—is not enough to save it from ineligibility." *Solutran*, 931 F.3d at 1169 (citing *Synopsys, Inc.* v. *Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a ***new*** abstract idea is still an abstract idea.") (emphasis in original)).

Claims "directed to an improvement in the functioning of a computer" may be patent-eligible, whereas claims in which "computers are invoked merely as a tool" are not. *Enfish, LLC* v. *Microsoft Corp.*, 822 F.3d 1327, 1336, 1338 (Fed. Cir. 2016). And what matters is what is claimed: technological improvements in the specification can only confer patent eligibility "to the extent they are captured in the claims." *Berkheimer* v. *HP Inc.*, 881 F.3d 1360, 1369–70 (Fed. Cir. 2018).

***Step two*** of the *Alice* test looks more precisely at whether the claim elements, individually or in their ordered combination, add an "inventive concept," i.e., whether additional elements "'transform the nature of the claim' into a patent-eligible application" or "amount[] to significantly more" than a patent on the abstract idea itself. *Alice*, 573 U.S. at 217–18. A claim fails step two if the additional elements are well-understood, routine, and conventional, requiring no more than "a generic computer to perform generic computer functions." *Intellectual Ventures I LLC* v. *Symantec Corp.*, 838 F.3d 1307, 1313, 1315 (Fed. Cir. 2016). It also fails if the elements are themselves directed to an abstract idea, including those that "simply restate[]" what is "already determined [to be] an abstract idea." *BSG*, 899 F.3d at 1291; *see also SAP Am., Inc.* v. *Investpic LLC*, 898 F.3d 1161, 1169 (Fed. Cir. 2018) (claim details that "are themselves abstract" are not inventive concepts).

## ARGUMENT

### I.   The '871 Patent

The '871 Patent concerns determining the "authoritativeness" (e.g., reliability) of a document. '871 Patent at 1:13–18. As the patent explains, one way to assess that authoritativeness is by looking at the "textual, non-topical cues" or features in the document. *Id.* at 2:39–41. The specification notes that people do this when they

evaluate a book's authoritativeness in a non-computer context: "When someone says, for example, 'Professor Jones has written an authoritative book on Roosevelt's foreign policy' . . . . what is meant is that the book . . . reads as if it is well-researched, that the book uses language in a skillful and appropriate way, that the book contains numerous references of the right sort, and the like." *Id.* at 1:64–2:8.

The alleged invention of the patent takes the same approach to determining whether a document is authoritative. The alleged invention determines "document content feature values" for a document, which the patent explains are values assigned to particular textual features of the document, such as the number of question marks or number of paragraphs, which may indicate authoritativeness. *Id.* at FIGS. 3, 14, 3:11–21, 4:4–6, 4:46–49, 6:55–58, 7:3–11. The alleged invention then determines the authoritativeness of the document based on those values using a "trained document textual authority model." This model includes various classifications for determining the authoritativeness of a document, such as a set of model documents that humans have "manually evaluated and labeled" as being authoritative, *id.* at 6:39–42, and certain document attributes that humans use to determine authoritativeness, such as "whether the author is a professional or a member of the general public," *id.* at 11:43–56. *See also id.* at FIG. 7, 3:28–34. While the specification discusses how this model is trained and applied, those details are not in the claims.

Claim 1 is presented below with key portions relevant to this motion in bold:

1. A method for determining an authoritativeness of a document having a plurality of document content features, the method comprising:

**determining a set of document content feature values of a document based on textual contents** in the document, the document providing information regarding a subject;

**determining an authoritativeness for the document based on the determined set of document content feature values using a trained document textual authority model**, wherein determining the authoritativeness comprises determining a reliability of the document, the reliability indicative of whether the information, as provided in the document, is reliable regarding the subject; and

1   outputting the determined authoritativeness in association with the
2   document.

3   In addition to Claim 1, PARC also identifies Claims 16 and 21 in its Complaint.
4   Claim 16 recites similar steps as Claim 1, recast in the form of a machine-readable
5   medium that executes those steps with a processor.  Claim 21 also recites similar
6   steps, but in the form of a system comprising memory and circuits.  *See Alice*, 573
7   U.S. at 226–27 (holding the system and computer-readable medium claims to be no
8   different in substance from the method claims for the § 101 analysis).

9   ### A. The '871 Patent Claims Are Directed to an Abstract Idea

10   The '871 Patent claims are impermissibly abstract because they are directed to
11   the fundamental practice of determining the authoritativeness of a document based on
12   textual features within the document.  The concept reflected in the claims is directly
13   analogous to what people do when they read research papers, news articles, and other
14   textual works that are intended to be authoritative.  A reader with experience in the
15   relevant subject matter—in other words, a human with training to recognize "textual
16   authority"—can and almost certainly will form a view on how reliable the work is.
17   For example, as a professor reads such works, she may assess textual features in the
18   work related to authoritativeness, such as whether the work "reads as if it is well-
19   researched," "uses language in a skillful and appropriate way," and the like.  *Id.* at
20   1:64–2:8.  She can identify and weight such features for assessing authoritativeness
21   based on what she has learned from reviewing hundreds of papers over the years.

22   Indeed, ***all*** of the steps of Claim 1 could be performed by a human.  *See*
23   *CyberSource Corp.* v. *Retail Decisions, Inc.*, 654 F.3d 1366, 1371–72 (Fed. Cir. 2011)
24   ("[M]ethods which can be performed mentally, or which are the equivalent of human
25   mental work, are unpatentable abstract ideas," even if "computational" in nature).
26   With respect to the first step of the claim, a person can "determin[e] a set of document
27   content feature values of a document based on textual contents" by, for example,
28   assigning a score to whether the document reads "as if it is well-researched."  *See,*

6

*e.g.*, '871 Patent at 2:5–6.  So too, with respect to the second step of the claim, a person can "determin[e] an authoritativeness for the document based on the determined set of document content feature values using a trained document textual authority model" by, for example, having in mind a framework for assessing the authoritativeness based on the assigned scores.  And finally, with respect to the last step of the claim, a person can "output[] the determined authoritativeness" by, for example, stating or writing down the level of reliability of the document.  In that sense, the claim covers nothing more than a concept that can be performed mentally or with pen and paper.  *See CyberSource*, 654 F.3d at 1372 (holding a claim broadly extending to "essentially any method of detecting credit card fraud based on information relating past transactions to a particular 'Internet address,' even methods that can be performed in the human mind," to be directed to abstract ideas); *id.* at 1373 ("Such a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101.").

The fact that Claims 16 and 21 require the use of computer components does not change the conclusion that the '871 Patent claims are all impermissibly abstract.  *See Affinity Labs of Tex., LLC* v. *Amazon.com, Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) ("*Affinity Labs II*").  Neither Claim 16 nor Claim 21 teaches any improvement to the functioning of the recited processor, memory, or circuit.  The claims only recite those computer components as tools for implementing the abstract idea of the claims instead of an improvement to those computer components.  *Elec. Power Grp.*, 830 F.3d at 1354.  The claims "do not enable computers to operate more quickly or efficiently, nor do they solve any technological problem."  *Customedia Techs., LLC* v. *Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020).

The claims do not provide any details as to **how** the alleged invention determines the "document content feature values," or the "authoritativeness" or "reliability" of the document, just that it happens.  The claims also do not explain **how** the trained model is used, or even trained, to determine that information is

authoritative, just that it is used.  Such claims are "so result-based that they amount[] to patenting the patent-ineligible concept itself." *Interval Licensing LLC* v. *AOL, Inc.*, 896 F.3d 1335, 1344–45 (Fed. Cir. 2018) (holding claims patent-ineligible that are devoid of specific details on "***how*** to engineer or program" a working system and recite only "result-based" functional aspirations) (emphasis in original); *see also id.* at 1345 (claims ineligible when reciting "production of a desired result . . . without any limitation on how to produce that result").

Notably, the '871 claims are similar to—and even more abstract than—computer-implemented claims for characterizing digital content (for example determining what email is spam) that the Federal Circuit has found patent-ineligible. In *Symantec*, the Federal Circuit invalidated claims to a method for "identifying characteristics of data files" to solve the problem of filtering unwanted e-mails.  838 F.3d at 1313–16.  The *Symantec* method received "file content identifiers," created using a mathematical algorithm, and determined whether the received content identifier matched a "characteristic" of other identifiers—much like the '871 method uses a mathematical algorithm to evaluate textual characteristics relating to authoritativeness.  *Id.*  The *Symantec* method then "outputt[ed]" an "indication of the characteristic of the data file" based on its "determining" step—much like the '871 method outputs the authoritativeness of a document determined from the textual characteristics of the document.  *Id.*  The Federal Circuit concluded that the *Symantec* claims recited nothing more than the "long-prevalent practice for people receiving paper mail to look at an envelope and discard certain [unwanted] letters . . . based on characteristics of the mail," noting that the list of relevant characteristics for filtering unwanted mail "could be kept in a person's head."  *Id.* at 1314.  Likewise, the '871 claims merely reflect the long-prevalent practice of assessing the authoritativeness of a document using a list of relevant characteristics in mind.  *See also id.* at 1316–19; *Bozeman Fin. LLC* v. *Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 976–81 (Fed. Cir. 2020) (holding ineligible claims for "detecting fraud" by "receiving" two financial

records, matching their "parameters"); *Zapfraud, Inc.* v. *FireEye, Inc.*, No. 19-1688-CFC, 2020 WL 6822972, at *3 (D. Del. Nov. 20, 2020) (holding ineligible claims for "classif[ying]" electronic messages to determine whether they purport to be, but are not, "transmitted on behalf of an authoritative entity").

At bottom, the claims merely attempt to capture what people have done for centuries when they review and evaluate texts that are intended to be authoritative, with nothing more than a bare instruction to "do it on a computer." *Apple, Inc.* v. *Ameranth, Inc.*, 842 F.3d 1229, 1242–43 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 223). While the patent notes that "[t]he sheer volume of information available on the [Internet] 110 presents significant difficulties to a user in retrieving the most pertinent documents relevant to a particular topic," '871 Patent at 5:25–28, that problem is not unique to the Internet. PARC asserted to the contrary, arguing "the overwhelming amount of information" is an "Internet/computer specific problem." Ex. C at 2. But this very argument was rejected by the Federal Circuit in *Symantec* because there, as here, the claims contained no reference to it. 838 F.3d at 1316.

People have dealt with large volumes of textual works for centuries, and humans have always had to perform the same "textual" analysis that the '871 Patent employs to determine which are authoritative on a particular subject. Because the claims recite a fundamental practice that humans have long performed and do not even require a computer (or, at most, are simply applied in a conventional computer setting), the claims are not directed to "an improvement in the functioning of a computer." *Affinity Labs II*, 838 F.3d at 1270 (quoting *Enfish*, 822 F.3d at 1338). The claims are therefore directed to an abstract idea.

## B. The '871 Patent Claims Add No Inventive Concept

None of the claims of the '871 Patent supply an inventive concept beyond a "concept of authoritativeness." '871 Patent at 1:63–64. The claims fail to recite any elements, individually or as an ordered combination, that transform the claimed abstract idea into a patent-eligible application of that idea. *See Alice*, 573 U.S. at 221.

As noted above, Claim 1 merely recites actions that can be performed entirely by a human, whereas Claims 16 and 21 merely implement those actions using generic computer components performing generic functions. *See Elec. Power Grp.*, 830 F.3d at 1354.

The patent confirms that the alleged invention can be implemented using conventional computer components. For example, the specification confirms that "[i]n general, ***any*** device, capable of implementing a finite state machine that is in turn capable of implementing the flowcharts shown in FIGS. 7–11, can be used to implement the authoritativeness determining system 200." '871 Patent at 24:29–32 (emphasis added). *See also id.* at 24:19–21 ("the authoritativeness determining system 200 is implemented on a programmed general purpose computer"), 24:33–36 (similar). Thus, the '871 Patent claims do not "harness[]" a specific "technical feature of network technology" to make the claimed advance particularly inventive, nor does it recite a "specific, discrete implementation of the abstract idea." *Bascom Glob. Internet Servs., Inc.* v. *AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). The invocation of "already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is well-understood, routine, [and] conventional." *SAP*, 898 F.3d at 1170 (internal quotation marks omitted). *See also Symantec*, 838 F.3d at 1315, 1318.

The specification broadly states the claimed system can process document content feature values "using one or more statistical processes or techniques, such as, for example, a regression or classification process." '871 Patent at 7:47–53. Dependent Claims 3–6 and 23 further specify that the values assigned to textual features of a document may be determined using well-understood statistical methods, such as regression, variable selection, mutual information, and Adaboost (which was available since at least 1996). *See* '871 Patent at 7:59–8:4. Similarly, dependent Claims 9–11 further specify that the trained document textual authority model may be implemented using regression and Adaboost. *Id.* at 7:47–8:13. These

mathematical algorithms cannot be patented. *Elec. Power Grp.*, 830 F.3d at 1354 ("[W]e have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category."); *SAP*, 898 F.3d at 1163; *see also Parker* v. *Flook*, 437 U.S. 584, 587–96 (1978) (holding patent-ineligible claims "directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose").

None of the other dependent claims recite any additional elements that transform the abstract idea into a patent-eligible application. Instead, they merely recite well-known, routine, and conventional techniques, including statistical techniques, to determine values for the textual contents (e.g., Claims 2–7, 14) and to determine authoritativeness from the values (e.g., Claims 8–12), and types of information that humans conventionally have used to determine reliability of a document (e.g., Claims 13, 15). During the parties' meet-and-confer prior to the filing of this motion, PARC never once suggested otherwise. And despite Twitter's pointed questions asking whether PARC thought its claims would be able to survive step two of the *Alice* analysis, PARC did not identify any other transformative inventive concept. Accordingly, the '871 Patent claims are invalid under § 101.

## II.   The '781 Patent

The '781 Patent asserts that its advance over the prior art is the retrieval of information that has not yet been seen by a user but is "likely to be topically related" and "likely to be useful to the user." '781 Patent at 10:29–36. According to the specification, at the time of the purported invention in 2005, existing search techniques would personalize search results by retrieving information the user had previously accessed based on a user's profile. *Id.* at 1:20–29. The specification contends that, in contrast to the purported invention, those search engines were "not focused on discovering new-unseen information relevant to the user's current information retrieval goals." *Id.* at 1:29–32. The purported invention attempts to

11

address this perceived problem by searching documents linked to previously-seen documents on the theory that linked documents are likely to be related to the previously-seen documents. *Id.* at 1:36–47.

Accordingly, the '781 Patent describes a method for tailoring search results by identifying and presenting information a user has not previously seen but that is related to what the user has already seen. *Id.* at Abstract. The method retrieves the user's search history. *Id.* at 1:38–39. The method collects a set of heretofore unseen documents that are linked to documents the user has seen before by tracing a chain of documents linked to a previously-seen document, from one link to the next, based on a threshold chain length. *Id.* at 5:19–23; FIG. 3; FIG. 17 (depicting chain of links). The patent refers to this collection as a "proximal neighborhood," with the idea that the linked documents are "likely to be topically related." *Id.* at 4:25–38, 4:46–49. The user's search query is then applied to that set of unseen documents to identify search results for the user. *Id.* at 4:45–51.

Claim 1 is presented below with portions relevant to this motion in bold:

1. A method for **personalized search** comprising the steps of:

receiving a query from a user;

identifying the user;

**retrieving a user history** for the user comprising access patterns **identifying linked information elements previously accessed** by the user within an information repository;

identifying a user profile comprising keywords relevant to the access patterns in the user history;

**determining a proximal neighborhood** using the user history in the user profile, wherein **the proximal neighborhood comprises only linked information elements previously unseen by the user that are within a threshold distance** of the linked information elements in the user history; and

**applying the query to the unseen linked information elements** in the proximal neighborhood and **determining search results** comprising the unseen linked information elements that match the query.

The only other identified claim in PARC's Complaint, Claim 19, recites the same set of steps, just recast in the form of a system of circuitry that performs those steps. *See Alice*, 573 U.S. at 226–27.

### A. The '781 Patent Claims Are Directed to an Abstract Idea

The claims of the '781 Patent simply recite the abstract idea of personalizing information searches by returning as-yet unseen information connected in some way to information previously viewed by the user.  Indeed, Claim 1 is nothing more than the fundamental practice of providing suggestions for new items to someone based on what that person has seen before.  For example, when a reader asks the librarian for what book to read next, the librarian can look up the reader's check-out history and, based on that information, suggest additional unread books linked in some way to the books in the reader's history, such as books by the same author.  Claim 19 simply recites performing that mental method on a computer.  *See CyberSource*, 654 F.3d at 1373 ("[A] method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101."); *see also id.* at 1375 (holding that the same is true for claims "reciting the use of a computer to execute an algorithm that can be performed entirely in the human mind").

The Federal Circuit has repeatedly held that personalizing, or tailoring, information in response to known information based on a person's activity is an abstract idea under similar circumstances.  In one such case involving claims to customizing web page content based in part on the user's navigation history, the Federal Circuit explained that "[p]roviding this minimal tailoring . . . is an abstract idea" and "[t]his sort of information tailoring is 'a fundamental . . . practice long prevalent in our system,'" noting that "[t]here is no dispute that newspaper inserts had often been tailored based on information known about the customer." *IV/Capital One I*, 792 F.3d at 1369.  *See also Customedia*, 951 F.3d at 1362–64 ("using a computer to deliver targeted advertising to a user" is an abstract idea, not "an improvement in the functionality of the computer"); *Bridge & Post, Inc.* v. *Verizon Commc'ns, Inc.*,

13

778 F. App'x 882, 884 (Fed. Cir. 2019) (non-precedential) (holding patent-ineligible claims involving "tracking a user's computer network activity and using information gained about the user to deliver targeted media").

Furthermore, the '781 Patent claims are patent-ineligible because they merely recite abstract-idea processes of gathering and analyzing information of a specified content—collecting information (e.g., the user's previously accessed documents, documents linked to those documents) and analyzing information (e.g., applying the query to the collected unseen documents to determine search results)—and "not any particular assertedly inventive technology for performing those functions." *Elec. Power Grp.*, 830 F.3d at 1354.  A long line of Federal Circuit cases have held this "familiar class of claims" to be abstract.  *See id.* at 1353–54 (collecting cases)*. See also, e.g.*, *Intellectual Ventures I LLC* v. *Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) ("*IV/Capital One II*") ("collecting, displaying, and manipulating data of particular documents" is an "abstract concept"); *SAP*, 898 F.3d at 1167 (holding patent-ineligible claims directed to "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis"); *W. View Rsch., LLC* v. *Audi AG*, 685 F. App'x 923, 926 (Fed. Cir. 2017) (non-precedential) (holding patent-ineligible claims that "do not go beyond receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual or audio response to the initial data query").

During the parties' meet-and-confer, PARC could not identify any inventive technology recited in its patent claims and instead generically stated that they involve "computer-specific problems that require computer-specific solutions, which takes them out of the realm of abstract ideas."  Groombridge Decl., Ex. B at 2.  If what that means is that PARC believes its claims are patent-eligible because they are implemented in a computer setting, *Alice* squarely rejects that proposition.  *Alice*, 573 U.S. at 223.  And though PARC  declared in a subsequent email that "[o]ne can hardly

14

imagine a more Internet/computer-specific problem than the overwhelming amount of information returned in Internet and network search results," Groombridge Decl., Ex. C at 2, the '781 Patent claims do little more than what humans have long done when searching for new and related information, much like how a librarian uses a reader's check-out history to suggest new books to read.  That the claims "limit[ed] the invention to a particular field of use or technological environment, such as the Internet," is not enough to save the claims from abstractness.  *See IV/Capital One I*, 792 F.3d at 1366.

The patent itself states that "[t]his invention relates to information retrieval," a problem that has existed well before the dawn of the computers.  '781 Patent at 1:15.  To the extent PARC suggests that its claims address the problem of personalizing search results in the specific context of a computer or the Internet, the Federal Circuit has explained that "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet," *IV/Capital One I*, 792 F.3d at 1366, or by limiting the information searched to "particular content," such as previously-accessed documents and linked documents, *see Elec. Power Grp.*, 830 F.3d at 1353.

The Federal Circuit has also made clear that "adding conventional computer components to well-known business practices" does not make that practice patent-eligible.  *Affinity Labs II*, 838 F.3d at 1270 (quoting *Enfish*, 822 F.3d at 1338).  For example, in *Affinity Labs II*, the Federal Circuit considered whether claims directed to delivering media content that recited computer components such as a "network based media management system" and a "graphical user interface" survived *Alice* step one, and concluded that the claims nonetheless failed that step because the patentee "ma[de] no claim that it invented any of those components or their basic functions, nor d[id] it suggest that those components, at that level of generality, were unknown in the art as of the priority date." *Id.*  So too here.  Claim 1 covers the basic practice of providing new and relevant information to a user based on the user's history,

whereas Claim 19 merely adds to Claim 1 the use of memory, processor, and circuits—all conventional computer components that the patentee did not invent. *See id.*; *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (holding claims patent-ineligible even where the claims recite a telephone and a server because those components "merely provide a generic environment in which to carry out the abstract idea"). In other words, the focus of the claims is not on an improved memory, processor, circuits, or any other technological component. The claims are therefore directed to an abstract idea.

### B. The '781 Patent Claims Add No Inventive Concept

The claims of the '781 Patent fail to recite any elements, individually or as an ordered combination, that transform the claimed abstract idea into a patent-eligible application. *See Alice*, 573 U.S. at 221. Each of the first five steps—"receiving" a query, "identifying" a user, "retrieving" a user history, "identifying" a user profile, and "determining" a set of linked documents—is a "routine data-gathering step[]." *See OIP Techs., Inc.* v. *Amazon.com, Inc.*, 788 F.3d 1359, 1360 (Fed. Cir. 2015). Further, these steps are just variants of collecting information, and thus in and of themselves also abstract. *See Elec. Power Grp.*, 830 F.3d at 1353; *RecogniCorp, LLC* v. *Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Adding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract."). The fact that the claims specify what information is to be collected (e.g., documents linked to those the user has already seen) does not save the claims from abstraction. *Elec. Power Grp.*, 830 F.3d at 1353 ("[C]ollecting information, including when limited to particular content (which does not change its character as information), [i]s within the realm of abstract ideas."). Similarly, the remaining step of the claim—"applying" the query to "determine" matches in a set of documents—constitutes a routine data-analyzing activity.

Nor does the addition of a generic memory, processor, and circuits in Claim 19 transform the abstract idea into a patent-eligible application. *See Alice*, 573 U.S. at

16

223.  Tellingly, the specification describes them only in generic terms and confirms that "each of the circuits . . . can be implemented as portions of a suitably programmed general-purpose computer." '781 Patent at 14:19–22.  The specification even explains that the particular form each circuit takes "is a design choice and will be obvious and predictable to those skilled in the art." *Id.* at 14:26–29.  *TLI Commc'ns*, 823 F.3d at 612 (claims failed step two where "[t]he specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms.").

The dependent claims of the '781 Patent also do not provide the "additional features" necessary to save the asserted claims at *Alice* step two.  *See Mayo Collaborative Servs.* v. *Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012).  They only recite well-understood, known, or conventional document crawling techniques (e.g., Claims 2–4), information sources or repositories in which user history or documents are contained (e.g., Claims 5–7), combinations of information for a first and second user (e.g., Claims 8–12), and specific types of information sources and information categorizations (e.g., Claims 13–18).  None of these claims are sufficient to transform the abstract idea of the '781 Patent claims into a patent-eligible application of the idea. *See Elec. Power Grp.*, 830 F.3d at 1353–54.

While the '781 Patent claims use jargon, such as "proximal neighborhood," "linked information elements," or "access patterns," these terms do not carry any special meaning that would confer patent-eligibility.  Rather, as the specification and claims make clear, the "proximal neighborhood" is just a set of unseen documents linked to documents that a user has previously viewed.  '781 Patent at Claim 1. Similarly, "linked information elements" just refers to documents linked with other documents (for example, by standard Internet hyperlinks), *id.* at Abstract, and "access patterns" just describes what a user has accessed in the past, *id.* at 3:62–66.  But the "mere fact that the inventor applied coined labels to conventional structures does not make the underlying concept inventive." *IV/Capital One II*, 850 F.3d at 1342.  Just

17

because a claim is drafted in the "typically obtuse syntax of patents" with "technical jargon" does not save it from ineligibility.  *See Smart Sys. Innovations, LLC* v. *Chicago Transit Auth.*, 873 F.3d 1364, 1370 (Fed. Cir. 2017) (ruling patent claims to be abstract despite the recitation of terms such as "identifying token" and "timepass record").  This Court should therefore hold the '781 Patent claims invalid under § 101.

## III.   The '362 Patent

The '362 Patent "relate[s] to document management" and purports to address perceived limitations of prior document-editing systems when sharing documents with others.  *See* '362 Patent at 1:8–11 ("[E]mbodiments of the present invention relate to a method and system for content dissemination by in-document tagging.").  The specification criticizes those systems as (i) only being able to "send information at the level of entire documents" (1:19–28); (ii) "typically requir[ing] special sharing-related interfaces or applications, which are often stand-alone modules" (1:29–34); and (iii) "only allow[ing] simple distribution of information" (1:34–38).

The patent's proposed solution is to add a "tag" to a document intended to facilitate disseminating, or sending, a portion of a document to others.  *Id.* at 1:8–9, 1:42–44.  The patent explains that the tag "refers to a piece of descriptive text" that is at least partly written in natural—i.e., human—language.  *Id.* at 4:24–25.  The tag is inserted into a document and specifies an action to be performed on a portion of the document (e.g., showing a particular paragraph to a specific reviewer) and the intended recipient of that portion.  *See id.* at 1:44–46 ("[T]he system allows a user to add a tag to a first document, wherein the tag indicates an operation to be performed on a portion of the document."); *id.* at 1:49–63 ("[T]he tag specifies one or more of: an action, the portion of the document, and a receiving entity corresponding to the action.").  Figure 4 of the patent illustrates some examples of such a tag inserted into a Microsoft Word document (yellow highlights added to the tag embodiments):



*Id.* at FIG. 4; *see also id.* at 9:65–10:3 (describing FIG. 4).

Claim 1 is presented below with portions relevant to this motion in bold:

1. A method for facilitating content dissemination, the method comprising:

receiving, within a document editing system, a user input comprising **one or more tags to insert inline within a document**, wherein the document is formulated in a natural language and wherein a respective tag is at least partly formulated in natural language and is visible to the user, and **indicates an action to be performed on a partial portion of the document and a receiving entity** corresponding to the action;

processing the one or more tags according to one or more rules to determine both the action to be performed on the partial portion of the document and the receiving entity; and

disseminating the document portion indicated by the one or more tags to the corresponding receiving entity to facilitate performing the action specified in the one or more tags on the document portion.

PARC also identifies Claims 12 and 23 in its Complaint. Claim 12 recites the same method, but in the form of instructions executed by a computer. Claim 23 does the same in the context of a computer system. *See Alice*, 573 U.S. at 226–27.

## A. The '362 Patent Claims Are Directed to an Abstract Idea

The claims of the '362 Patent are directed to the abstract idea of receiving a tag with instructions to take a specified action on a portion of a document, processing the tag, and sending the portion to the recipient named in the tag.  This simply reflects a non-technological practice of jotting notes about follow-up actions within a document.  Indeed, the specification describes an example of this practice in which an author is writing an article, realizes that someone else, Jane, may be interested in particular comments in his article, so he adds the text "<<Show><paragraph><to Jane>>" into the draft "[a]s this comes to mind" and then continues typing.  '362 Patent at 4:66–5:8.  While the specification goes on to say that the alleged invention uses a computer to process the bracketed text and send the paragraph to Jane, the author could just as readily follow the instructions of his bracketed note and send that paragraph to Jane himself.

At bottom, the claim does not offer much more beyond how documents are commonly marked up with pen and paper.  Indeed, the patent notes that the disclosed "tag" is also referred to as a "markup."  *Id.* at 4: 27–28.  It is no wonder, then, that Claim 1 does not require the use of any technological components, let alone an improvement to any technological components.  And while Claims 12 and 23 do require the use of computer components, those claims merely use those computer components as tools to implement the otherwise pen-and-paper steps of Claim 1, and thus are just as abstract as Claim 1.  *See FairWarning IP, LLC* v. *Iatric Sys., Inc.*, 893 F.3d 1089, 1096 (Fed. Cir. 2016) (where method claims were patent-ineligible, similar apparatus claims that added "nominal recitations of basic computer hardware, such as 'a non-transitory computer-readable medium with computer-executable instructions' and a microprocessor" meant that the "conclusion of ineligibility is inescapable") (quoting *Accenture Glob. Servs., GmbH* v. *Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013)).  As the Federal Circuit has explained, claims are patent-ineligible where they just "apply[] a known business process to the

particular technological environment of" a computer without improving the underlying technology, as is the case here. *DDR Holdings, LLC* v. *Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014). *See also CyberSource*, 654 F.3d at 1375 ("Here, the incidental use of a computer to perform the mental process of claim 3 does not impose a sufficiently meaningful limit on the claim's scope.").

The claims only broadly recite the steps of "receiving" information (i.e., a tag), "processing" information (i.e., a tag), and "disseminating" information (i.e., a portion of a document)—all of which the Federal Circuit has explicitly and repeatedly held are abstract ideas: "The concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Content Extraction & Transmission, LLC* v. *Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). *See also IV/Capital One II*, 850 F.3d at 1341 ("collecting, displaying, and manipulating data of particular documents" is an "abstract concept"); *Cellspin Soft, Inc.* v. *Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) ("[W]e have consistently held that similar claims reciting the collection, transfer, and publishing of data are directed to an abstract idea."). Such generalized and conventional steps, even if limited to manipulating specific types of information, cannot confer patent-eligibility. *See Elec. Power Grp.*, 830 F.3d at 1353 (explaining that, because "[i]nformation as such is an intangible," the Federal Circuit "ha[s] treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas").

Significantly, none of the claims provide any details as to ***how*** the alleged invention receives and processes a tag and disseminates a document portion in accordance with that tag. There are no details on ***how*** the claimed system knows that it has received a tag, even though the claim notes that the tag is at least partly formulated in natural language like the document in which the tag is inserted, only that it just does. There are no details on ***how*** the claimed system interprets the tags in the document and uses rules to determine the action to be performed, the portion of

the document on which the action is to be performed or the recipient of that portion, only that it just does.  There are not even any details about what rules to use.  And, despite PARC's assertion that the '362 Patent claims "a particular manner of sharing information," Groombridge Decl., Ex. C at 2, there are no details on ***how*** the system disseminates the document portion to the intended recipient, only that it just does.

The step one inquiry often must "turn to any requirements for ***how*** the desired result is achieved."  *Id.* at 1355 (emphasis in original).  Here, that is entirely lacking: the focus of the '362 claims is on results previously achieved through human judgment or manual action rather than a particular way to achieve those results.  Such claims fall into the category of ineligible software-based claims because they "[a]re so result-based that they amount[] to patenting the patent-ineligible concept itself." *Interval Licensing*, 896 F.3d at 1344.

Moreover, even if the '362 claims did specify how tags are processed to achieve the claimed result, the use of "tags" (e.g., "|Show Paragraph to Jane|") that can just be typed into a document in "natural language" and "visible to the user," does not provide an improvement to computer functionality that would render the claims patent-eligible. *Id.* at Claims 1, 12, 23, 9:24–25.  Contrary to PARC's suggestion that tagging electronic data constitutes a "a computer-specific problem with a computer-specific solution," Groombridge Decl., Ex. C at 7, the mere use of "tags" does not save the claims:  the Federal Circuit has invalidated claims reciting the use of tags written in XML—a "specialized computer language"—for editing documents, as directed to the abstract idea of "collecting, displaying, and manipulating data." *IV/Capital One II*, 850 F.3d at 1338, 1340.

In *IV/Capital One II*, the challenged patent disclosed a system for editing documents written in XML, a "specialized mark-up computer language" that uses "tags" to "define what data the system stores at each position within an XML document." *Id.* at 1338–39.  The patentee in that case argued in part that, "because the invention relates to a specialized computer language—XML—and renders

otherwise incompatible documents compatible through a unique dynamic document based on [certain data structures]," its patent claims were not abstract or an age-old idea. *Id.* at 1340. The Federal Circuit rejected that argument, explaining that specifying that the system editing XML documents was simply "restrict[ing] the invention's field of use," which "does not render an otherwise abstract concept any less abstract." *Id.*; *see also Affinity Labs I*, 838 F.3d at 1259. Like the use of XML in *IV/Capital One II*, the '362 Patent's recitation of "tags"—at best—merely limits its field of use, which does not affect the § 101 analysis. *Id.*

Moreover, the only advantages of the alleged invention that the patent identifies are all for the benefit of **users** of that alleged invention—the claims do not present an improvement to any underlying technology or computer functionality. *See, e.g.*, '362 Patent at 1:14–38, 3:16–61 (noting that "users may be interested in only part of a document," "[it] can reduce the amount of information the recipient needs to consider," "[it] can increase both the likelihood that the recipient will be able to respond in a timely fashion, and the likelihood that the response will be more focused on the issues of concern," "[it can] reduce[] cognitive load on the sender, and therefore can reduce mistakes, such as a user forgetting to send the information," "[it allows] users [to] take greater advantage of the resources made available by information sharing," and "[it] allows the user to be immediately aware of both the provided response and the context of the information being discussed, without manually searching"). The Federal Circuit has made clear that "improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality." *Customedia*, 951 F.3d at 1365. *See also Simio*, 983 F.3d at 1361 (rejecting an "argument [that] does not explain how the **computer's** functionality is improved beyond the inherent improvement of the experience of a user") (emphasis in original).

Here, "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec.*

*Power Grp.*, 830 F.3d at 1354.  At best, the claims merely computerize a known practice of marking up a document with notes on what to do with particular portions of the document, but without any specific teachings on ***how*** the computer achieves this result.  Accordingly, the claims of the '362 Patent fail *Alice* step one.

### B. The '362 Patent Claims Add No Inventive Concept

None of the elements of the '362 Patent claims, whether taken individually or in ordered combination, supply an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application.  *See Alice*, 573 U.S. at 221.  The claims merely recite generic steps that follow a logical sequence to implement the abstract idea: adding a tag, processing the tag, and then disseminating a document portion to an intended recipient.  These steps are routine and conventional, and neither the patent nor the Complaint suggests otherwise.  *See Elec. Power Grp.,* 830 F.3d at 1355 ("[M]erely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas.").

The specification makes clear that the alleged invention can be implemented using generic technology, none of which the patentee invented.  For example, Figures 2 through 5 show the alleged invention applied to conventional document editing systems like Microsoft Word.  *See, e.g.*, '362 Patent, FIGS. 2–5.  The specification describes "an exemplary computer system that facilitates in-document tagging in support of content dissemination" in which the system includes such basic and conventional components as a "processor," "memory," and "storage device."  *Id.* at 11:57–62.  Further, the specification states that "any natural language processing technologies can be used to parse" the natural language tag.  *Id.* at 9:21–22.  The tagged portion of a document can be disseminated using conventional communication services, such as "email."  *Id.* at 8:16–19.

The dependent claims of the '362 Patent also do not provide the "additional

features" necessary to save the claims at step two of *Alice*.  *See Mayo*, 566 U.S. at 77.  Those dependent claims only recite limiting the form of information contained in the tag, including to "an abstract specification" (e.g., Claims 2–3, 11), performing conventional activities the specification does not purport to have invented, such as displaying a collection of information, and modifying, encrypting, or digitally signing a document, without specifying ***how*** those steps are performed in an inventive way (e.g., Claims 4–5, 9–10), and naming conventional ways the processing of the tag can be triggered (e.g., Claims 6–8).  None of these claims recite additional features sufficient to transform the abstract idea of the '362 Patent claims into a patent-eligible application of the idea.  *See Elec. Power Grp.*, 830 F.3d at 1353–54.

Accordingly, none of the clam elements of the '362 Patent, alone or in combination, provide an inventive concept.  These claims cannot stand under § 101.

<u>**CONCLUSION**</u>

For the foregoing reasons, the '871, '781, and '362 Patent claims are invalid under § 101 and, thus, PARC has failed to state a claim upon which relief can be granted as to the Third, Fourth, and Sixth Claims for Relief in its Complaint.

Further, Twitter respectfully submits that PARC's claims regarding the patents of this motion should be dismissed with prejudice.  Despite being given the opportunity to narrow the parties' disputes and avoid a motion to dismiss, PARC has not raised any facts, or pointed to any claim construction issues that would allow its patent claims to survive, and has stated that it need not amend its Complaint to avoid dismissal.  Groombridge Decl. Ex. B at 3–4.  Any amendment would be unsupported by the patents and futile.  *Monument Peak Ventures, LLC* v. *Toshiba Am. Bus. Sols., Inc.*, No. SACV1902181DOCDFM, 2020 WL 6050597, at *3 (C.D. Cal. Aug. 12, 2020) (non-precedential) (dismissing complaint with prejudice where asserted patent claims were found patent-ineligible and amendment would be futile).

1  DATED:  February 15, 2021          PAUL, WEISS, RIFKIND, WHARTON &
2                                     GARRISON LLP

3                                     By:    /s/ Nicholas Groombridge
4                                            Nicholas Groombridge

5                                     PAUL, WEISS, RIFKIND, WHARTON &
                                      GARRISON LLP
6                                     Nicholas Groombridge (*pro hac vice*)
                                          ngroombridge@paulweiss.com
7                                     Jenny C. Wu (*pro hac vice*)
                                          jcwu@paulweiss.com
8                                     Michael F. Milea (*pro hac vice*)
                                          mmilea@paulweiss.com
9
                                      1285 Avenue of the Americas
10                                    New York, New York 10019-6064
                                      Telephone: (212) 373-3000
11                                    Facsimile:  (212) 757-3990

12                                    J. Steven Baughman (*pro hac vice*)
                                          sbaughman@paulweiss.com
13                                    Megan Raymond (*pro hac vice*)
                                          mraymond@paulweiss.com
14                                    Tanya S. Manno (*pro hac vice*)
                                          tmanno@paulweiss.com
15
                                      PAUL, WEISS, RIFKIND, WHARTON &
16                                    GARRISON LLP
                                      2001 K Street, NW
17                                    Washington, D.C. 20006-1037
                                      Telephone: (202) 223-7300
18                                    Facsimile: (202) 223-7420

19                                    Ekwan E. Rhow - State Bar No. 174604
                                          erhow@birdmarella.com
20                                    Grace W. Kang - State Bar No. 271260
                                          gkang@birdmarella.com
21
                                      BIRD, MARELLA, BOXER, WOLPERT,
22                                    NESSIM, DROOKS, LINCENBERG &
                                      RHOW, P.C.
23                                    1875 Century Park East, 23rd Floor
                                      Los Angeles, California 90067-2561
24                                    Telephone: (310) 201-2100
                                      Facsimile:  (310) 201-2110
25
                                      Attorneys for Defendant Twitter, Inc.
26

27

28