# EXHIBIT B

# McKool Smith

Ashley Moore
Direct Dial: (214) 978-6337
amoore@McKoolSmith.com

300 Crescent Court
Suite 1500
Dallas, TX 75201

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

January 22, 2021

*via E-mail*

Heidi L. Keefe
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304
hkeefe@cooley.com

Nicholas Groombridge
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
ngroombridge@paulweiss.com

Yar Chaikovsky
Paul Hastings LLP
1117 S. California Avenue
Palo Alto, CA 94304
yarchaikovsky@paulhastings.com

> RE: ***Palo Alto Research Center Inc. v. Facebook, Inc.*, No. 2:20-cv-10753-AB-MRW (C.D. Cal.); *Palo Alto Research Center Inc. v. Twitter, Inc.*, No. 2:20-cv-10754-AB-MRW (C.D. Cal.); *Palo Alto Research Center Inc. v. Snap Inc.*, No. 2:20-cv-10755-AB-MRW (C.D. Cal.)**

Dear Counsel:

We write in response to your letters of January 12 and January 14, 2021, and in furtherance to the parties' January 19, 2021 meet and confer.

As we explained during the meet and confer, your letters fail to articulate any meaningful basis for Defendants' proposed motions to dismiss. For example, Facebook's letter[1] provides nothing more than a summary of § 101 case law, with a generic suggestion that all 7 Patents-in-Suit recite abstract ideas. Not once does this Facebook letter mention a particular Patent-in-Suit, describe its subject matter in any detail, or actually apply the two-step *Mayo/Alice* inquiry to any

---

[1] Although each Defendant sent a separate letter, the content is nearly identical. As a result, PARC uses Facebook's letter as exemplary of each Defendant's positions, and PARC's letter should be taken as a response to all Defendants.

January 22, 2021
Page 2

of the patent claims. Despite this glaring shortcoming, and Defendants' refusal to provide any additional detail when pressed during the meet and confer, you demanded PARC provide patent and claim-level detailed responses. As PARC explained during the call, it is difficult, if not impossible, to divine Defendants' arguments and preemptively address them with any specificity. Nor should such an ambush be the appropriate manner in which a meet and confer is conducted. Setting that aside, during the meet and confer PARC provided a non-exhaustive explanation why each Patent-in-Suit's technology is not unpatentable under § 101. PARC also addressed Defendants' additional concerns regarding willfulness and inducement.

As requested, this letter sets forth a brief overview of PARC's positions regarding the issues raised in Defendants' letters,[2] as well as the additional requests made during the meet and confer. After reviewing this letter, should Defendants still choose to file their motions, PARC reserves the right to respond in any way it deems appropriate in accordance with the Court's rules, including moving to strike your motions for failure to meet and confer in good faith. In its responses PARC may also provide further detail, argument, and explanation beyond the summary noted below or the non-exhaustive explanations provided on the meet and confer.

**<u>Patentable Subject Matter</u>**

Defendants' first argument is that all of the Patents-in-Suit are invalid under 35 U.S.C. § 101. As noted above, Defendants provide no basis for this claim other than outlining the steps of the *Mayo/Alice* inquiry, and stating (without any analysis) that all claims of the Patents-in-Suit are patent ineligible. PARC disagrees.

Step one of the *Alice/Mayo* test involves determining whether the claimed technology relates to an abstract idea, such as a "'preexisting, fundamental truth,'" a "method of organizing human activity," and/or "longstanding commercial practices" such as risk hedging. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356 (2014) (internal citation omitted). The *Alice* court made clear that this step must not be oversimplified because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* at 2354 (internal citation omitted). Yet this is precisely what Defendants have done. Defendants characterize all claims of the Patents-in-Suit as "collecting information, analyzing it, and displaying certain results," at which point Defendants conclude the claimed technology must be an abstract idea. Not only is this a gross misunderstanding of the Patents-in-Suit, it also fails to consider the abundant case law holding that computer-related technologies routinely pass muster under 35 U.S.C. § 101. *See, e.g., Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307 (Fed. Cir. 2020) (stating that "we have routinely held software claims patent eligible under *Alice* step one when they are directed to improvements to the functionality of a computer or network platform itself"). I discussed this concept at length when noting the Patents-in-Suit involve computer-specific problems that require computer-specific solutions, which takes them out of the realm of abstract ideas. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (holding that claims directed to a "hybrid web page that combines visual 'look and feel' elements from the host website" are patent eligible as they "overcome a problem specifically arising in the realm of computer networks"); *Enfish, LLC v.*

---

[2] PARC also takes umbrage with Defendants' "patent assertion entity" descriptor. As explained in great detail in the Complaint, PARC made countless technological breakthroughs, and corresponding products, before Defendants even existed. It is not a patent assertion entity.

January 22, 2021
Page 3

*Microsoft Corp.*, 822 F.3d 1327, 1336-39 (Fed. Cir. 2016) (holding claims to a self-referential database to be patent eligible); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259-60 (Fed. Cir. 2017) (holding claims "focus[ed] on a 'specific asserted improvement on computer capabilities'" to be patent eligible). As a result, the Patents-in-Suit do not claim abstract ideas.

As the Patents-in-Suit pass step one, PARC need not address step two of the *Mayo/Alice* inquiry. But, even assuming step two is reached, the Patents-in-Suit involve inventive concepts that are significantly more than abstract ideas. Contrary to Defendants' letters, the Complaints provide significant detail regarding the difficulties associated with, for example, the limitations of mobile phones and electronic messaging systems at the time, and the proliferation of information available on the Internet. *See* Facebook Complaint at ¶¶ 31-32, 60-61, 85-86, 115-17, 144-45, 173-74, and 201-02. The PARC inventors sought to solve these problems with the variety of inventive solutions claimed in the Patents-in-Suit. *See Ceiva Logic, Inc. v. Amazon.com, Inc.*, No. CV 19-09129-AB (MAAx), slip op. at 12 (C.D. Cal. July 1, 2020) (denying motion to dismiss under § 101 and holding that "Defendant has not satisfied its burden of showing that no issue of fact exists as to whether the ordered combination of limitations is unique or inventive"). Nothing in Defendants' letters suggests otherwise. Defendants simply assert that the claims (of who knows which Patent-in-Suit) "invoke 'generic computer implementation' with 'purely functional' recitations." Facebook letter at 2. Such a blanket statement is insufficient to put PARC on notice of Defendants' allegations, and is particularly suspect given Defendants' numerous patents directed to Internet-related technologies. Even a cursory glance at Defendants' portfolios shows that they regularly patent "computer implemented methods," presumably with the understanding that these technologies survive a § 101 analysis. *See, e.g.*, USP 10,855,640 to Facebook (claiming a "computer implemented method" for sharing posts about a live online event); USP 10,891,044 to Twitter (claiming a "computer implemented method" for positioning content in a scrolling display for optimal viewing); and USP 9,430,783 to Snapchat (claiming a "computer implemented method" for prioritizing messages).

Defendants next demand that PARC "identify all [] claim constructions . . . [that] affect the § 101 inquiry" along with an explanation of "how PARC believes they affect the § 101 inquiry." Facebook letter at 2. As PARC has not received sufficient information to identify or understand Defendants' § 101 allegations, it is premature for PARC to list out the claim terms and constructions that may affect a § 101 analysis. However, PARC does note that claim construction, although "'not an inviolable prerequisite to a validity determination under § 101[, is] . . . ordinarily [] desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.'" *Nagravision SA v. NFL Enterprises, LLC*, No. CV 17-03919-AB (SKx), 2018 WL 1807285, at *6 (C.D. Cal. Mar. 9, 2018); (quoting *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012)); *see also Netflix, Inc. v. Rovi Corp.*, No. 11-CV-6591-PJH, 2015 WL 4345326, at *1 (N.D. Cal. July 15, 2015), *aff'd*, 670 F. App'x 704 (Fed. Cir. 2016) (holding that "because the § 101 analysis is 'often dependent on the scope and meaning of the claims,' the court will, in this case, first construe the disputed claim terms.").

In sum, we do not believe Defendants' letters set forth a good faith basis for filing your motions to dismiss, and are likely nothing more than a delay tactic given Defendants' prior litigation history. Any further details from PARC—which would inevitably be based on PARC's

January 22, 2021
Page 4

supposition of Defendants' future, unknown allegations—are unnecessary and inappropriate at this juncture.

**Willfulness and Inducement**

Similar to Defendants' other allegations, your letters provide nothing more than a cursory allegation that PARC has "not plead facts sufficient to plausibly state a claim for willfulness or inducement." Facebook letter at 2. As I explained during our meet and confer, PARC's Complaints sufficiently allege willfulness and inducement allegations related to Defendants' post-Complaint conduct. The Complaints contain detailed allegations of infringement, and state that these allegations serve as notice to each Defendant that it infringes. *See, e.g.,* Facebook Complaint at ¶ 222. Thus, PARC sufficiently alleges post-Complaint willfulness. *See, e.g., Monolithic Power Sys., Inc. v. Silergy Corp.*, 127 F. Supp. 3d 1071, 1076 (N.D. Cal. June 18, 2015) (stating that "there's no reason to engage in this fact-dependent inquiry on a motion to dismiss . . . To the contrary, such an inquiry seems to put the cart before the horse, effectively requiring district courts to adjudicate patent infringement claims prematurely, before discovery has been completed and potentially before the parties have complied with the local patent rules, for the sole purpose of deciding whether a plaintiff should be allowed to pursue a post-filing willfulness claim."); *see also Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1290 (Fed. Cir. 2007) (holding that "'[w]illfulness does not equate to fraud, and thus, the pleading requirement for willful infringement does not rise to the stringent standard required by Rule 9(b).'") (internal citations omitted).

The same is true for PARC's inducement allegations. "[O]nce a Defendant is aware that it is potentially inducing infringement and decides to continue its actions, it should be liable [for induced infringement] it if is incorrect." *Telesign Corp. v. Twilio, Inc.,* No. CV 15-3240 PSG (Ssx), 2015 WL 12765482, *8 (C.D. Cal. Oct. 16, 2015). Defendants' only concern appears to be that PARC has not sufficiently plead specific intent to induce infringement. But at this stage PARC need only plead facts that Defendants advertise and instruct customers how to use the accused products in an infringing manner. *Id.* at *9. PARC has done exactly that. Its Complaints provide detailed allegations of infringement with citations to numerous Internet articles and instructions to users from each Defendant. PARC then alleges induced infringement based on each Defendant "providing . . . instructions to enable and facilitate infringement." *See, e.g.,* Facebook Complaint at ¶ 49. PARC's inducement claim is therefore sufficient.

Finally, to the extent discovery shows Defendants had knowledge of the Patents-in-Suit consistent with a pre-suit inducement and willfulness charge, PARC reserves the right to amend its Complaints to make such allegations.

**Potential Amendments to PARC's Complaints**

At this time, PARC does not intend to amend its Complaints to address Defendants' unarticulated, baseless concerns, especially since Defendants have not filed, and the Court has not ruled on, the forthcoming motions to dismiss. Of course, PARC's statement should not be taken as foreclosing future amendments to its Complaints if the circumstances merit such an amendment.

January 22, 2021
Page 5

**<u>Extensions to Response to PARC's Complaints</u>**

PARC filed its Complaints on November 25, 2020, and served them shortly thereafter. As a matter of professional courtesy, PARC granted each Defendant a 45-day extension, making your responses due February 5th and 8th. Defendants now request *yet another* extension, this time for 30 days. We are already long past the cumulative 30-day extension that the Central District of California's judges confer on defendants without Court approval. *See* L.R. 8-3 ("If the stipulation, together with any prior stipulations, does not extend the time for more than a cumulative total of thirty (30) days from the date the response initially would have been due, the stipulation need not be approved by the judge."). Defendants' new request provides almost 100 days to weigh your options and respond to the Complaints. By way of comparison, a 100-day extension is more than an order of magnitude longer than the 5 to 7 days Defendants allotted PARC to review and respond to your letters. Defendants have given PARC no justification for such a substantial delay, especially since Defendants waited until just last week—over 40 days from service of the Complaints—to even put their boilerplate positions in writing and request a meet and confer. Given the above, PARC cannot agree to a 30-day extension. However, as a compromise, PARC offers a one-week extension to Defendants.

PARC has endeavored to answer your questions to the best of its ability given the lack of detail and analysis in your letters, and your failure to provide any further information during our meet and confer. To the extent you would like to proceed with the one-week extension, please let me know. Otherwise, we look forward to seeing your responses in early February.

Sincerely,

Ms. Ashley Moore

cc: zFBPARC@cooley.com; PH-PARC-Snap@paulhastings.com; and Twitter's counsel of record (jcwu@paulweiss.com, gkang@birdmarella.com, erhow@birdmarella.com, ngroombridge@paulweiss.com, sbaughman@paulweiss.com, mraymond@paulweiss.com, mmilea@paulweiss.com, tmanno@paulweiss.com).

NG-9J84MDUI 4813-8901-3464v2