**EXHIBIT 3**

Xerox Docket No. D/A1707

**PATENT APPLICATION**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**OLIFF & BERRIDGE, PLC**
Telephone: (703) 836-6400
Facsimile: (703) 836-2787

ATTORNEY DOCKET NO.: 111745

DATE: May 23, 2006

**CUSTOMER NUMBER 27074**

**AMENDMENT TRANSMITTAL**

In re the Application of:

Ayman O. FARAHAT et al.

Application No.: 10/232,714

Filed: September 3, 2002

For: SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

Group Art Unit: 2161
Examiner: T. PARDO

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Transmitted herewith is an Amendment in the above-identified application.

Any additional claim fees have been calculated as shown below:

|  | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NO. PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADD'L FEE |
|---|---|---|---|---|---|
| TOTAL CLAIMS | *25 MINUS | **22 | =3 | x 50 | $ 150.00 |
| INDEP CLAIMS | *3 MINUS | ***3 | =0 | x 200 | $ |
| ☐ FIRST PRESENTATION OF MULTIPLE DEP. CLAIM |  |  |  | + 360 | $ |
|  |  |  |  |  | $ 150.00 |

* If the entry in Column 1 is less than the entry in Column 2, write "0" in Column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, write "20" in this space.
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, write "3" in this space.

The "Highest Number Previously Paid For" in this space (Total or Independent) is the highest number found from the equivalent box in Column 1 of a prior Amendment or the number of claims originally filed.

☒ Please charge my Deposit Account No. 24-0037 in the amount of $150.00. Two duplicate copies of this sheet are attached.

☒ The Commissioner is hereby authorized to charge any other fees that may be required to complete this filing, or to credit any overpayment, to Deposit Account. 24-0037. Two duplicate copies of this sheet are attached.

DEPOSIT ACCOUNT USE
AUTHORIZATION
Please grant any extension
necessary for entry;
Charge any fee due to our
Deposit Account No. 24-0037

Respectfully submitted,

James A. Oliff
Registration No. 27,075

Gang Luo
Registration No. 50,559

JAO:GXL/sqb

Xerox Docket No. D/A1707

**PATENT APPLICATION**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of

Ayman O. FARAHAT et al.                    Group Art Unit:   2165

Application No.:   10/232,714              Examiner:   T. PARDO

Filed:   September 3, 2002                 Docket No.:   111745

For:   SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

**AMENDMENT**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

In reply to the March 6, 2006 Office Action, please consider the following:

**Amendments to the Claims** as reflected in the listing of claims; and

**Remarks**.

05/24/2006 JADD01   00000077 240037   10232714
01 FC:1202           150.00 DA

Xerox Docket No. D/A1707
Application No. 10/232,714

**Amendments to the Claims**:

The following listing of claims will replace all prior versions, and listings, of claims in the application:

1. (Currently Amended) A method for determining an authoritativeness of a document having a plurality of document content features, the method comprising:

    determining a set of document content feature values of a document based on textual contents in the ~~document~~ document, the document providing information regarding a subject; ~~and~~

    determining an authoritativeness for the document based on the determined set of document content feature values using a trained document textual authority ~~model.~~ model, wherein determining the authoritativeness comprises determining a reliability of the document, the reliability indicative of whether the information, as provided in the document, is reliable regarding the subject; and

    outputting the determined authoritativeness in association with the document.

2. (Original) The method of claim 1, wherein determining the set of document content feature values comprises extracting a subset of document content features from the plurality of document content features.

3. (Currently Amended) The method of claim 1, wherein determining the set of document content feature values comprises determining the set of document content ~~features~~ feature values using one or more parsing techniques or methods.

4. (Original) The method of claim 1, wherein determining the authoritativeness for the document comprises:

    providing the set of document content feature values to the trained document textual authority model; and

Xerox Docket No. D/A1707
Application No. 10/232,714

determining a document textual authoritativeness value based at least on the set of document content feature values determined.

5. (Original) The method of claim 1, wherein determining an authoritativeness for the document further comprising determining a textual authority class for the document.

6. (Previously Presented) The method of claim 1, wherein the plurality of document content features includes at least one or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features or readability indices features.

7. (Original) The method of claim 2, wherein extracting a subset of document content features is performed using one or more regression techniques or methods.

8. (Original) The method of claim 2, wherein extracting a subset of document content features is performed using one or more variable selection techniques or methods.

9. (Original) The method of claim 7, wherein one or more regression techniques or methods comprises a stepwise regression technique.

10. (Original) The method of claim 8, wherein one or more variable selection techniques or methods comprises one or more of mutual information technique and AdaBoost technique.

11. (Original) The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more statistical processes or techniques.

12. (Original) The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more metric-regression algorithms or methods.

13. (Original) The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using an AdaBoost algorithm model or method.

14. (Currently Amended) A machine-readable medium that provides instructions for determining the authority of a document having a plurality of document content features, instructions, which when executed by a processor, cause the processor to perform operations comprising:

determining a set of document content feature values of a document based on textual contents in the ~~document;~~ document, the document providing information regarding a subject; and

determining at least one of textual authoritativeness value or textual authority class for the document based on the determined set of document content feature values using a trained document textual authority ~~model.~~ model, wherein determining the authoritativeness comprises determining a reliability of the document, the reliability indicative of whether the information, as provided in the document, is reliable regarding the subject; and

outputting the determined authoritativeness in association with the document.

15. (Previously Presented) The machine-readable medium according to claim 14, wherein the plurality of document content features includes at least one or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features or readability indices features.

16. (Original) The machine-readable medium according to claim 14, wherein determining the textual authoritativeness value or a textual authority class for the document comprises:

extracting a plurality of document content features from each document;

determining a set of document content feature values for each document using one or more parsing techniques or methods; and

determining a textual authoritativeness value or a textual authority class for the document by using one or more of metric regression or boosted decision tree algorithms or methods.

17. (Currently Amended) A textual authority determining system that determines an authority of a document having a plurality of document content features, comprising:

a memory; and

a document textual authoritativeness value determination circuit or routine ~~that~~ that:

_____ determines at least a textual authoritativeness value for the document based on textual contents in the document by processing a set of document content feature values determined for a subset of document content features extracted from the plurality of document content features using one or more of metric regression or boosted decision tree algorithms or ~~methods,~~ methods, the document providing information regarding a subject, wherein determining the authoritativeness comprises determining a reliability of the document, the authoritativeness indicative of whether the information, as provided in the document, is reliable regarding the subject; and

_____ outputs the determined authoritativeness in association with the document.

18. (Previously Presented) The textual authority determining system of claim 17, wherein the plurality of document content features includes at least one or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of

abbreviations, text characteristics features, speech tagging features or readability indices features.

19. (Original) The textual authority determining system of claim 17, further comprising a document content features extraction circuit or routine that determines a subset of document content features from the plurality of document content features using a stepwise regression process.

20. (Currently Amended) The method of claim 1, wherein determining the set of document content feature values comprises determining the set of document content feature values based solely on the ~~textual contents~~ information provided in the document.

21. (Currently Amended) The machine-readable medium according to claim 14, wherein determining the set of document content feature values comprises determining the set of document content feature values based solely on the ~~textual contents~~ information provided in the document.

22. (Currently Amended) The textual authority determining system of claim 17, wherein the document textual authoritativeness value determination circuit or routine determines the document content feature values based solely on the ~~textual contents~~ information provided in the document.

23. (New) The method of claim 1, wherein determining the reliability of the document comprises determining, from the information within the document, a background of an author of the document, an institutional affiliation of the author, whether the document reads as if the document is well-researched, and whether the document has been reviewed or examined by others.

24. (New) The machine-readable medium according to claim 14, wherein determining the reliability of the document comprises determining, from the information within the document, a background of an author of the document, an institutional affiliation

Xerox Docket No. D/A1707
Application No. 10/232,714

of the author, whether the document reads as if the document is well-researched, and whether the document has been reviewed or examined by others.

25. (New) The textual authority determining system of claim 17, wherein determining the reliability of the document comprises determining, from the information within the document, a background of an author of the document, an institutional affiliation of the author, whether the document reads as if the document is well-researched, and whether the document has been reviewed or examined by others.

Xerox Docket No. D/A1707
Application No. 10/232,714

## **REMARKS**

Claims 1-25 are pending in this application.

By this Amendment, claims 1, 14 and 17 are amended and claims 23-25 are added to recite additional features disclosed in the specification at, for example, paragraphs [0002], [0004], [0006], [0019] and [0062]. Claims 20-22 are amended for better clarity. Claim 3 is amended to obviate an informality.

Reconsideration of the application is respectfully requested.

Applicants thank Examiner Pardo for the courtesy extended to Applicants' representative, Mr. Luo, during the May 16, 2006 personal interview. The substance of the personal interview is incorporated in the following remarks.

The Examiner is respectfully requested to acknowledge consideration of the references listed on, and to return an initialed copy of, the Form PTO-1449 submitted with the March 29, 2006 Information Disclosure Statement.

The Office Action rejects claims 20-22 under 35 U.S.C. §112, first paragraph. Claims 20-22 are amended for better clarity. Accordingly, withdrawal of the rejection of claims 20-22 under 35 U.S.C. §112, first paragraph, is respectfully requested.

The Office Action rejects claims 1-9, 11, 12 and 14-22 under 35 U.S.C. §103(a) over U.S. Patent No. 6,336,112 to Chakrabarti et al. ("Chakrabarti") in view of U.S. Patent No. 5,687,364 to Saund et al. ("Saund"); and rejects claims 10 and 13 under 35 U.S.C. §103(a) over Chakrabarti in view of Saund and further in view of an article "Experience with a New Boosting Algorithm" by Freund et al. ("Freund"). These rejections are respectfully traversed.

Chakrabarti is directed to ranking a document by relevance. See col. 1, lines 12-47. Chakrabarti discloses determining authoritativeness of a web page based on how frequent the web page is referred to via links by other web pages. See col. 2, lines 15-49, and col. 3,

lines 41-57. Chakrabarti discloses providing accurate authoritativeness by filtering self-promotion and related-page promotion. See col. 2, lines 34-38. In particular, Chakrabarti discloses that, when a root set is updated, the hyperlinks to a document and "what other documents say" about the document also need to be updated, especially to avoid self promotion or redundant hubs. See col. 14, line 58 - col. 15, line 8.

In view of the above, Chakrabarti only discloses determining authoritativeness of a document <u>based on what other documents say about this document</u>. That is, Chakrabarti discloses that the authoritativeness of a document is determined based on information outside of this document. Chakrabarti does not disclose or suggest determining the authoritativeness of a document <u>based on information within the document itself</u>. Therefore, Chakrabarti does not disclose or suggest determining an authoritativeness of a document based on a set of document content feature values that are determined based on textual contents <u>in the document</u>, as recited in claim 1, and similarly recited in claims 14 and 17.

Furthermore, as discussed above, Chakrabarti's "authoritativeness" is a measure of <u>relevance</u>. In particular, Chakrabarti discloses that a document is categorized based on the relevance of its content to different topics. See Fig. 2 and col. 10, lines 36-58. The document is ranked by relevance to the topics. See col. 1, lines 13-47. Chakrabarti does not disclose or suggest a reliability that is indicative of whether the information provided in the document regarding a subject is <u>reliable</u> regarding the subject (see the specification at, for example, paragraphs [0002], [0004], [0006], [0019] and [0062]). Therefore, Chakrabarti does not disclose or suggest a reliability that is indicative of whether the information, as provided in the document, is reliable regarding the subject, as recited in claim 1, and similarly recited in claims 14 and 17.

In view of the above, Chakrabarti does not disclose or suggest the subject matter recited in claims 1, 14 and 17. Also, Saund and Freund do not supply the subject matter

-9-

Xerox Docket No. D/A1707
Application No. 10/232,714

lacking in Chakrabarti. Thus, Chakrabarti, Saund and Freund, either individually or in combination, do not disclose or suggest the subject matter recited in claims 1, 14 and 17.

Claims 2-13, 15, 16 and 18-22 are each patentable over Chakrabarti, Saund and Freund at least in view of the patentability of claims 1, 14 and 17, from which they respectively depend, as well as for additional features they recite. For example, Chakrabarti, Saund and Freund do not disclose or suggest determining a set of document content feature values based <u>solely</u> on the information provided <u>in</u> the document, as recited in claim 20, and similarly recited in claims 21 and 22.

The Office Action asserts that Chakrabarti discloses at Figs. 2 and 13, and col. 10, lines 19-58, that "frame" is populated by adding documents having textual contents/attributes corresponding to the frame attributes. However, such an addition of documents to the frame is based on <u>relevance</u> of the document to the frame. Such an addition does not disclose or suggest determining a reliability that is indicative of whether information provided in the document is <u>reliable</u> regarding a subject. Thus, the cited disclosure of Chakrabarti is irrelevant to the subject matter recited in claims 20-22.

The Office Action also asserts that Saund discloses lexicon at col. 3, line 30 - col. 4, line 45. However, such lexicon is used to model a relationship between topics and words in a document. See col. 3, lines 30-37 of Saund. Such a relationship between topics and words is based on <u>relevance</u>. Saund does not disclose or suggest determining a reliability that is indicative of whether the information provided in the document is <u>reliable</u> regarding a subject. Therefore, the "relationship" disclosed in Saund is irrelevant to the subject matter recited in claims 20-22.

For at least the above reasons, withdrawal of the rejection of claims 1-22 under 35 U.S.C. §103(a) is respectfully requested.

-10-

Xerox Docket No. D/A1707
Application No. 10/232,714

Claims 23-25 are patentable in view of the patentability of claims 1, 14 and 17, from which they respectively depend, as well as for additional features they recite. For example, the applied references do not disclose or suggest that determining the reliability of the document comprises determining, from the information within the document, a background of an author of the document, an institutional affiliation of the author, whether the document reads as if the document is well-researched, and whether the document has been reviewed or examined by others, as recited in claims 23-25.

In view of the foregoing, it is respectfully submitted that this application is in condition for allowance. Favorable reconsideration and prompt allowance of claims 1-25 are earnestly solicited.

Should the Examiner believe that anything further would be desirable in order to place this application in even better condition for allowance, the Examiner is invited to contact the undersigned at the telephone number set forth below.

Respectfully submitted,

James A. Oliff
Registration No. 27,075

Gang Luo
Registration No. 50,559

JAO:GXL/brp
Attachment:
    Amendment Transmittal
Date: May 23, 2006

**OLIFF & BERRIDGE, PLC**
**P.O. Box 19928**
**Alexandria, Virginia 22320**
**Telephone: (703) 836-6400**

DEPOSIT ACCOUNT USE AUTHORIZATION
Please grant any extension necessary for entry;
Charge any fee due to our Deposit Account No. 24-0037