# EXHIBIT A

AO 120 (Rev. 08/10)

| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court ___Central District of California___ on the following

☐ Trademarks or  ☑ Patents.  ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>2:20-cv-10754 | DATE FILED<br>11/25/2020 | U.S. DISTRICT COURT<br>Central District of California |
|---|---|---|

| PLAINTIFF<br><br>PALO ALTO RESEARCH CENTER INC. | DEFENDANT<br><br>TWITTER, INC. |
|---|---|

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 U.S. 8,489,599 | 7/16/2013 | Palo Alto Research Center Incorporated |
| 2 U.S. 9,208,439 | 12/8/2015 | Palo Alto Research Center Incorporated |
| 3 U.S. 8,966,362 | 2/24/2015 | Palo Alto Research Center Incorporated |
| 4 U.S. 8,606,781 | 12/10/2013 | Palo Alto Research Center Incorporated |
| 5 U.S. 7,043,475 | 5/9/2006 | Palo Alto Research Center Incorporated |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | | |
|---|---|---|---|
| | ☐ Amendment  ☐ Answer  ☐ Cross Bill  ☑ Other Pleading | | |
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK | |
| 1 U.S. 7,167,871 | 1/23/2007 | Palo Alto Research Center Incorporated | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director   Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director   Copy 4—Case file copy**

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 01/23/2007 | 7167871 | 111745 | 8103 |

27074        7590        01/04/2007
OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA, VA 22320

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 550 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Ayman O. Farahat, San Francisco, CA;
Francine R. Chen, Menlo Park, CA;
Charles R. Mathis, Stanford, CA;
Geoffrey D. Nunberg, San Francisco, CA;

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**   Mail Stop ISSUE FEE
   Commissioner for Patents
   P.O. Box 1450
   Alexandria, Virginia 22313-1450
**or Fax**   (571)-273-2885

*NOV 29 2006*

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

27074      7590      11/15/2006

OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA, VA 22320

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $0 | $1700 | 02/15/2007 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PARDO, THUY N | 2165 | 707-102000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☒ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  Oliff & Berridge, PLC
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                (B) RESIDENCE: (CITY and STATE OR COUNTRY)

**Xerox Corporation**                **Stamford, Connecticut**

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☒ Corporation or other private group entity   ☐ Government

**4a. The following fee(s) are submitted:**
☒ Issue Fee
☒ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number **24-0037** (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.      ☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____      Date **November 29, 2006**

Typed or printed name **Gang Luo**      Registration No. **50,559**

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 27074 | 7590 | 11/15/2006 |
|---|---|---|

OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA, VA 22320

| EXAMINER |
|---|
| PARDO, THUY N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2165 | |

DATE MAILED: 11/15/2006

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $0 | $1700 | 02/15/2007 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN **THREE MONTHS** FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. **THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.

Page 1 of 3

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail** Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax** (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

27074    7590    11/15/2006

OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA, VA 22320

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

TITLE OF INVENTION: SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1400 | $300 | $0 | $1700 | 02/15/2007 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| PARDO, THUY N | 2165 | 707-102000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.
☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____    Date _____
Typed or printed name _____    Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 07/06) Approved for use through 04/30/2007.    OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

27074    7590    11/15/2006

OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA, VA 22320

| EXAMINER |
|---|
| PARDO, THUY N |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2165 | |

DATE MAILED: 11/15/2006

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 550 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 550 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702.  Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101   or (571)-272-4200.

PTOL-85  (Rev. 07/06) Approved for use through 04/30/2007.

| ***Notice of Allowability*** | Application No. | Applicant(s) | |
|---|---|---|---|
| | 10/232,714 | FARAHAT ET AL. | |
| | Examiner | Art Unit | |
| | Thuy N. Pardo | 2165 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *Terminal Disclaimer filed on September 18, 2006*.

2. ☒ The allowed claim(s) is/are *1-25*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None   of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the

           International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of

        Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☒ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

7. ☐ Examiner's Amendment/Comment

8. ☐ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

**THUY N. PARDO**
**PRIMARY EXAMINER**

Application/Control Number: 10/232,714                                              Page 2
Art Unit: 2165

## DETAILED ACTION

1.     Applicant's Terminal Disclaimer filed on September 18, 2006 in response to Examiner's

Office Action has been reviewed.


2.     Applicant's Terminal Disclaimer filed on September 18, 2006 has been approved and

entered in the record of the file.


3.     Claims 1-25 are allowed. The reasons for the indication of allowable subject matter of

these claims have been addressed in the previous Office Action.


4.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Thuy N. Pardo whose telephone number is 571-272-4082.  The

examiner can normally be reached on Mon-Fri.

       If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jeffrey Gaffin can be reached on 571-272-4146.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 10/232,714                                    Page 3
Art Unit: 2165

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

November 10, 2006

**THUY N. PARDO
PRIMARY EXAMINER**

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 10/232,714 | FARAHAT ET AL. |

| | Examiner | Art Unit | |
|---|---|---|---|
| | Thuy N. Pardo | 2165 | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-5,260,999 | 11-1993 | Wyman, Robert M. | 705/59 |
| * | B | US-5,438,508 | 08-1995 | Wyman, Robert M. | 705/8 |
| * | C | US-5,659,616 | 08-1997 | Sudia, Frank Wells | 705/76 |
| * | D | US-5,982,956 | 11-1999 | Lahmi, Paul | 382/306 |
| * | E | US-6,073,160 | 06-2000 | Grantham et al. | 709/200 |
| * | F | US-2003/0132854 | 07-2003 | Swan et al. | 340/825.49 |
| * | G | US-2003/0200299 | 10-2003 | Jamison, James D. III | 709/223 |
| * | H | US-2003/0227392 | 12-2003 | Ebert et al. | 340/825.49 |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | Boll et al., "ZyX- a multimedia document model for reuse and adaptation of multimedia content", IEEE, 2001, pp. 361-382 |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Issue Classification* | Application/Control No. 10/232,714 | Applicant(s)/Patent under Reexamination FARAHAT ET AL. |
|---|---|---|
| | Examiner Thuy N. Pardo | Art Unit 2165 |

# ISSUE CLASSIFICATION

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | |
|---|---|---|---|---|
| CLASS | SUBCLASS | CLAIMED | | NON-CLAIMED |
| 707 | 102 | G 06 F | 17 / 00 | / |

| CROSS REFERENCES | | | | | | |
|---|---|---|---|---|---|---|
| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | | / |
| 707 | 2 | 9 | 10 | 101 | | / |
| | 103.y | 104.1 | | | | / |
| | | | | | | / |
| | | | | | | / |
| | | | | | | / |

THUY N. PARDO

(Assistant Examiner)   (Date)

G. White   11/14/06
(Legal Instruments Examiner)   (Date)

THUY N. PARDO 10/06
(Primary Examiner)   (Date)
PRIMARY EXAMINER

**Total Claims Allowed: 25**

| O.G. Print Claim(s) | O.G. Print Fig. |
|---|---|
| 1 | 7 |

| ☐ Claims renumbered in the same order as presented by applicant | ☐ CPA | ☐ T.D. | ☐ R.1.47 |

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | | 31 | | 61 | | 91 | | 121 | | 151 | | 181 |
| 2 | 2 | | 32 | | 62 | | 92 | | 122 | | 152 | | 182 |
| 7 | 3 | | 33 | | 63 | | 93 | | 123 | | 153 | | 183 |
| 78 | 4 | | 34 | | 64 | | 94 | | 124 | | 154 | | 184 |
| 12 | 5 | | 35 | | 65 | | 95 | | 125 | | 155 | | 185 |
| 13 | 6 | | 36 | | 66 | | 96 | | 126 | | 156 | | 186 |
| 3 | 7 | | 37 | | 67 | | 97 | | 127 | | 157 | | 187 |
| 5 | 8 | | 38 | | 68 | | 98 | | 128 | | 158 | | 188 |
| 4 | 9 | | 39 | | 69 | | 99 | | 129 | | 159 | | 189 |
| 6 | 10 | | 40 | | 70 | | 100 | | 130 | | 160 | | 190 |
| 9 | 11 | | 41 | | 71 | | 101 | | 131 | | 161 | | 191 |
| 10 | 12 | | 42 | | 72 | | 102 | | 132 | | 162 | | 192 |
| 11 | 13 | | 43 | | 73 | | 103 | | 133 | | 163 | | 193 |
| 16 | 14 | | 44 | | 74 | | 104 | | 134 | | 164 | | 194 |
| 17 | 15 | | 45 | | 75 | | 105 | | 135 | | 165 | | 195 |
| 18 | 16 | | 46 | | 76 | | 106 | | 136 | | 166 | | 196 |
| 21 | 17 | | 47 | | 77 | | 107 | | 137 | | 167 | | 197 |
| 22 | 18 | | 48 | | 78 | | 108 | | 138 | | 168 | | 198 |
| 23 | 19 | | 49 | | 79 | | 109 | | 139 | | 169 | | 199 |
| 14 | 20 | | 50 | | 80 | | 110 | | 140 | | 170 | | 200 |
| 19 | 21 | | 51 | | 81 | | 111 | | 141 | | 171 | | 201 |
| 24 | 22 | | 52 | | 82 | | 112 | | 142 | | 172 | | 202 |
| 15 | 23 | | 53 | | 83 | | 113 | | 143 | | 173 | | 203 |
| 20 | 24 | | 54 | | 84 | | 114 | | 144 | | 174 | | 204 |
| 25 | 25 | | 55 | | 85 | | 115 | | 145 | | 175 | | 205 |
| | 26 | | 56 | | 86 | | 116 | | 146 | | 176 | | 206 |
| | 27 | | 57 | | 87 | | 117 | | 147 | | 177 | | 207 |
| | 28 | | 58 | | 88 | | 118 | | 148 | | 178 | | 208 |
| | 29 | | 59 | | 89 | | 119 | | 149 | | 179 | | 209 |
| | 30 | | 60 | | 90 | | 120 | | 150 | | 180 | | 210 |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 8103**

| SERIAL NUMBER 10/232,714 | FILING OR 371(c) DATE 09/03/2002 RULE | CLASS 707 | GROUP ART UNIT 2165 | ATTORNEY DOCKET NO. 111745 |
|---|---|---|---|---|

**APPLICANTS**
- Ayman O. Farahat, San Francisco, CA;
- Francine R. Chen, Menlo Park, CA;
- Charles R. Mathis, Stanford, CA;
- Geoffrey D. Nunberg, San Francisco, CA;

** CONTINUING DATA *********************
   This appln claims benefit of 60/380,876 05/17/2002
** FOREIGN APPLICATIONS *********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED
** 10/01/2002

| Foreign Priority claimed ☐ yes ☒ no | | STATE OR COUNTRY CA | SHEETS DRAWING 13 | TOTAL CLAIMS 19  25 | INDEPENDENT CLAIMS 3 |
|---|---|---|---|---|---|
| 35 USC 119 (a-d) conditions met ☐ yes ☒ no ☐ Met after Allowance | | | | | |
| Verified and Acknowledged   Examiner's Signature   Initials | | | | | |

**ADDRESS**
27074

**TITLE**
Systems and methods for authoritativeness grading, estimation and sorting of documents in large heterogeneous document collections

| FILING FEE RECEIVED 890 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |



### Search Notes

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/232,714 | FARAHAT ET AL. |
| **Examiner** | **Art Unit** |
| Thuy N. Pardo | 2165 |

**SEARCHED**

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 707 | 2 9 10 | 11/10/06 | TP |
|  | 101 |  |  |
|  | 102 |  |  |
|  | 103 Y |  |  |
|  | 104.1 |  |  |
| 709 | 223 |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**INTERFERENCE SEARCHED**

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 707 | 2 9 10 | 11/10/06 | TP |
|  | 101 102 |  |  |
|  | 103 Y (04.1) |  |  |
| 709 | 223 |  |  |

**SEARCH NOTES (INCLUDING SEARCH STRATEGY)**

| | DATE | EXMR |
|---|---|---|
| updated WEST IEEE | 11/10/06 | TP |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |



Home | Login | Logout | Access Information | Alerts |

**Welcome United States Patent and Trademark Office**

□ Search Results                    BROWSE          SEARCH          IEEE XPLORE GUIDE

Results for "((authori* and document* and model* and content*)<in>metadata)"        ✉ e-mail
Your search matched **23** of **1430374** documents.
A maximum of **100** results are displayed, **25** to a page, sorted by **Relevance** in **Descending** order.

---

**» Search Options**

<u>View Session History</u>

<u>New Search</u>

**» Other Resources**
(Available For Purchase)

**Top Book Results**

<u>Meme Media and Meme Market
Architectures</u>
by Tanaka, Y.;
Hardcover, Edition: 1

<u>View All 1 Result(s)</u>

**» Key**

| IEEE JNL | IEEE Journal or Magazine |
|---|---|
| IEE JNL | IEE Journal or Magazine |
| IEEE CNF | IEEE Conference Proceeding |
| IEE CNF | IEE Conference Proceeding |
| IEEE STD | IEEE Standard |

---

**Modify Search**

((authori* and document* and model* and content*)<in>metadata)        [ Search ]

☐ Check to search only within this results set

**Display Format:** ⦿ Citation    ○ Citation & Abstract

[ view selected items ]    <u>Select All</u> <u>Deselect All</u>

☐  1.  **Z_γX-a multimedia document model for reuse and adaptation of multimedi**
Boll, S.; Klas, W.;
<u>Knowledge and Data Engineering, IEEE Transactions on</u>
Volume 13, Issue 3, May-June 2001 Page(s):361 - 382
Digital Object Identifier 10.1109/69.929895

<u>AbstractPlus</u> | <u>References</u> | Full Text: <u>PDF</u>(868 KB)   IEEE JNL
<u>Rights and Permissions</u>

☐  2.  **Translating content-based authorizations for XML documents**
Chatvichienchai, S.; Iwaihara, M.; Kambayashi, Y.;
<u>Web Information Systems Engineering, 2003. WISE 2003. Proceedings of the</u>
<u>International Conference on</u>
10-12 Dec. 2003 Page(s):103 - 112
Digital Object Identifier 10.1109/WISE.2003.1254474

<u>AbstractPlus</u> | Full Text: <u>PDF</u>(316 KB)   IEEE CNF
<u>Rights and Permissions</u>

☐  3.  **Virtual authoring based on the shallow copy technique for a collection of**
**documents**
Jayawardana, C.; Hewagamage, K.P.; Hirakawa, M.;
<u>Multimedia Software Engineering, 2000. Proceedings. International Symposiur</u>
11-13 Dec. 2000 Page(s):77 - 84
Digital Object Identifier 10.1109/MMSE.2000.897195

<u>AbstractPlus</u> | Full Text: <u>PDF</u>(828 KB)   IEEE CNF
<u>Rights and Permissions</u>

☐  4.  **A content-based authorization model for digital libraries**
Adam, N.R.; Atluri, V.; Bertino, E.; Ferrari, E.;
<u>Knowledge and Data Engineering, IEEE Transactions on</u>
Volume 14, Issue 2, March-April 2002 Page(s):296 - 315
Digital Object Identifier 10.1109/69.991718

<u>AbstractPlus</u> | <u>References</u> | Full Text: <u>PDF</u>(596 KB)   IEEE JNL
<u>Rights and Permissions</u>

☐  5.  **Multimedia document models-sealed fate or setting out for new shores?**
Boll, S.; Klas, W.; Westermann, U.;
<u>Multimedia Computing and Systems, 1999. IEEE International Conference on</u>
Volume 1, 7-11 June 1999 Page(s):604 - 610 vol.1

Digital Object Identifier 10.1109/MMCS.1999.779269

AbstractPlus | Full Text: PDF(712 KB)   IEEE CNF
Rights and Permissions

6. **Towards translating authorizations for transformed XML documents**
Chatvichienchai, S.; Iwaihara, M.; Kambayashi, Y.;
Web Information Systems Engineering, 2002. WISE 2002. Proceedings of the
International Conference on
12-14 Dec. 2002 Page(s):291 - 300
Digital Object Identifier 10.1109/WISE.2002.1181665

AbstractPlus | Full Text: PDF(488 KB)   IEEE CNF
Rights and Permissions

7. **An abstract authorization system for the Internet**
Fernandez, E.B.; Nair, K.R.;
Database and Expert Systems Applications, 1998. Proceedings. Ninth Internat
on
26-28 Aug. 1998 Page(s):310 - 315
Digital Object Identifier 10.1109/DEXA.1998.707418

AbstractPlus | Full Text: PDF(52 KB)   IEEE CNF
Rights and Permissions

8. **A watermarking infrastructure for enterprise document management**
Cheung, S.C.; Chiu, D.K.W.;
System Sciences, 2003. Proceedings of the 36th Annual Hawaii International C
6-9 Jan 2003 Page(s):10 pp.
Digital Object Identifier 10.1109/HICSS.2003.1174246

AbstractPlus | Full Text: PDF(652 KB)   IEEE CNF
Rights and Permissions

9. **Adaptive content model for multimedia presentation**
Deng, L.Y.; Ruei-Xi Chen; Rong-Chi Chang; Teh-Sheng Huang;
Cyber Worlds, 2002. Proceedings. First International Symposium on
6-8 Nov. 2002 Page(s):209 - 216
Digital Object Identifier 10.1109/CW.2002.1180881

AbstractPlus | Full Text: PDF(452 KB)   IEEE CNF
Rights and Permissions

10. **Adaptive content model for distance education**
Ming-Chih Lu; Deng, L.Y.; Hsi-Chien Yu; Yi-Jen Liu;
Information Technology: Research and Education, 2005. ITRE 2005. 3rd Intern
Conference on
27-30 June 2005 Page(s):333 - 337
Digital Object Identifier 10.1109/ITRE.2005.1503136

AbstractPlus | Full Text: PDF(315 KB)   IEEE CNF
Rights and Permissions

11. **GDOC: a system for storage and authoring of documents through WEB t**
Grala, A.; Heuser, C.;
Computer Science Society, 1997. Proceedings., XVII International Conference
10-15 Nov. 1997 Page(s):115 - 124
Digital Object Identifier 10.1109/SCCC.1997.637083

AbstractPlus | Full Text: PDF(620 KB)   IEEE CNF
Rights and Permissions

12. **Retrieval of 3D objects using curvature maps and weighted walkthrough**
Assfalg, J.; Del Bimbo, A.; Pala, P.;
Image Analysis and Processing, 2003.Proceedings. 12th International Confere
17-19 Sept. 2003 Page(s):348 - 353

Digital Object Identifier 10.1109/ICIAP.2003.1234074

AbstractPlus | Full Text: PDF(328 KB)    IEEE CNF
Rights and Permissions

13. **XML-based specification for Web services document security**
Bhatti, R.; Bertino, E.; Ghafoor, A.; Joshi, J.B.D.;
Computer
Volume 37,  Issue 4,  April 2004 Page(s):41 - 49
Digital Object Identifier 10.1109/MC.2004.1297300

AbstractPlus | Full Text: PDF(480 KB)    IEEE JNL
Rights and Permissions

14. **An OO model to generate knowledge structures for authoring instruction**
Ainsley, H.; Ghaoui, C.; Whiteley, K.;
Euromicro Conference, 2000. Proceedings of the 26th
Volume 2,  5-7 Sept. 2000 Page(s):35 - 42 vol.2
Digital Object Identifier 10.1109/EURMIC.2000.874397

AbstractPlus | Full Text: PDF(652 KB)    IEEE CNF
Rights and Permissions

15. **Writing and correcting textual scenarios for system design**
Achour, C.B.;
Database and Expert Systems Applications, 1998. Proceedings. Ninth Internat
on
26-28 Aug. 1998 Page(s):166 - 170
Digital Object Identifier 10.1109/DEXA.1998.707398

AbstractPlus | Full Text: PDF(44 KB)    IEEE CNF
Rights and Permissions

16. **A multimedia information system for document authoring, indexing and** 
Li, Z.K.; Day, Y.F.; Fahmi, H.; Ghafoor, A.;
Computer Software and Applications Conference, 1997. COMPSAC '97. Proc
Twenty-First Annual International
13-15 Aug. 1997 Page(s):302 - 307
Digital Object Identifier 10.1109/CMPSAC.1997.624843

AbstractPlus | Full Text: PDF(576 KB)    IEEE CNF
Rights and Permissions

17. **EB2000: a structured approach to the creation of e-books**
Paiano, R.; Pandurino, A.;
Multimedia Software Engineering, 2004. Proceedings. IEEE Sixth International
13-15 Dec. 2004 Page(s):443 - 449
Digital Object Identifier 10.1109/MMSE.2004.43

AbstractPlus | Full Text: PDF(296 KB)    IEEE CNF
Rights and Permissions

18. **A learning objects approach to teaching programming**
Adamchik, V.; Gunawardena, A.;
Information Technology: Coding and Computing [Computers and Communicat
Proceedings. ITCC 2003. International Conference on
28-30 April 2003 Page(s):96 - 99

AbstractPlus | Full Text: PDF(238 KB)    IEEE CNF
Rights and Permissions

19. **A study on the effective protection of digital content based on real-time f**
**recognition mechanism in the digital library**
Yang-Koo Kang; Pyung-Jin Kwon; Heon Kim; Moon-Hyun Kim;
Computer Supported Cooperative Work in Design, 2005. Proceedings of the N
Conference on

Volume 1,  24-26 May 2005 Page(s):296 - 301 Vol. 1
AbstractPlus | Full Text: PDF(394 KB)   IEEE CNF
Rights and Permissions

☐  **20. Elimination of redundant information for Web data mining**
Taib, S.M.; Soon-Ja Yeom; Byeong-Ho Kang;
Information Technology: Coding and Computing, 2005. ITCC 2005. Internatior
Volume 1,  4-6 April 2005 Page(s):200 - 205 Vol. 1
Digital Object Identifier 10.1109/ITCC.2005.143

AbstractPlus | Full Text: PDF(120 KB)   IEEE CNF
Rights and Permissions

☐  **21. The organization and presentation of an intelligent database system outр
language**
Zhou Lizhu; Lu Yuchang; Zheng Tong;
Intelligent Processing Systems, 1997. ICIPS '97. 1997 IEEE International Conf
Volume 2,  28-31 Oct. 1997 Page(s):1602 - 1606 vol.2
Digital Object Identifier 10.1109/ICIPS.1997.669310

AbstractPlus | Full Text: PDF(421 KB)   IEEE CNF
Rights and Permissions

☐  **22. Internet multimedia databases**
Johnson, R.B.;
Multimedia Databases and MPEG-7 (Ref. No. 1999/056), IEE Colloquium on
29 Jan. 1999 Page(s):1/1 - 1/7

AbstractPlus | Full Text: PDF(512 KB)   IEE CNF

☐  **23. An extended object-oriented database approach to networked multimedi:**
Ishikawa, H.; Kato, K.; Ono, M.; Yoshizawa, N.; Kubota, K.; Kanaya, A.;
Data Engineering, 1998. Proceedings., 14th International Conference on
23-27 Feb. 1998 Page(s):259 - 266
Digital Object Identifier 10.1109/ICDE.1998.655785

AbstractPlus | Full Text: PDF(1192 KB)   IEEE CNF
Rights and Permissions

Help   Contact Us   Privacy & :

© Copyright 2006 IEEE –

Indexed by
団 Inspec®

# Freeform Search

**Database:**
US Pre-Grant Publication Full-Text Database
US Patents Full-Text Database
US OCR Full-Text Database
EPO Abstracts Database
JPO Abstracts Database
Derwent World Patents Index
IBM Technical Disclosure Bulletins

**Term:**   L8 and (authori$ near5 document near5 content$)

**Display:** 20   Documents in **Display Format:** [ ]   Starting with Number 1

**Generate:** ○ Hit List ◉ Hit Count ○ Side by Side ○ Image

[ Search ]   [ Clear ]   [ Interrupt ]

---

## Search History

**DATE: Saturday, November 11, 2006**   **Purge Queries**   Printable Copy   Create Case

| Set Name | Query | Hit Count | Set Name |
|---|---|---|---|
| side by side | | | result set |
| | *DB=PGPB,USPT,USOC,EPAB,JPAB,DWPI,TDBD; PLUR=YES; OP=ADJ* | | |
| L9 | L8 and (authori$ near5 document near5 content$) | 7 | L9 |
| L8 | L7 and (document$ near5 content$) | 129 | L8 |
| L7 | l2 and L6 | 136 | L7 |
| L6 | train$ near5 document$ | 2332 | L6 |
| L5 | l3 or L4 | 19 | L5 |
| L4 | L1 and (content$ near5 value$ near5 document$) | 9 | L4 |
| L3 | l1 and L2 | 10 | L3 |
| L2 | authori$ near5 model$ | 1476 | L2 |
| L1 | (authoriz$ and document$).ab. | 1116 | L1 |

END OF SEARCH HISTORY

| *Application Number* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/232,714 | FARAHAT ET AL. |
| | | |

| **Document Code - DISQ** | **Internal Document – DO NOT MAIL** |
|---|---|

| **TERMINAL DISCLAIMER** | ☒ APPROVED | ☐ DISAPPROVED |
|---|---|---|
| **Date Filed : 091806** | **This patent is subject to a Terminal Disclaimer** | |

**Approved/Disapproved by:**

jrm

U.S. Patent and Trademark Office

Xerox Docket No. D/A1707

**PATENT APPLICATION**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of

Ayman O. FARAHAT et al.                    Group Art Unit:  2165

Application No.:   10/232,714              Examiner:    T. PARDO

Filed:  September 3, 2002                  Docket No.:   111745

For:    SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING,
        ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS
        DOCUMENT COLLECTIONS

## REQUEST FOR RECONSIDERATION

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

In reply to the August 7, 2006 Office Action, in conjunction with the Terminal

Disclaimer concurrently filed herewith, reconsideration of the application is respectfully

requested in light of the following remarks.

Claims 1-25 are pending in this application.  Applicants appreciate the Office Action's

indication that 1-25 contain allowable subject matter.

The Office Action provisionally rejects claims 1-25 on the ground of non-statutory

obviousness-type double patenting over claims 1-30 of Copending Application

No. 10/232,709.  The enclosed Terminal Disclaimer is filed to address this rejection.

Accordingly, withdrawal of the provisional double patenting rejection is respectfully

requested.

Xerox Docket No. D/A1707
Application No. 10/232,714

In view of the foregoing, it is respectfully submitted that this application is in condition for allowance.  Favorable reconsideration and prompt allowance of claims 1-25 are earnestly solicited.

Should the Examiner believe that anything further would be desirable in order to place this application in even better condition for allowance, the Examiner is invited to contact the undersigned at the telephone number set forth below.

Respectfully submitted,

James A. Oliff
Registration No. 27,075

Gang Luo
Registration No. 50,559

JAO:GXL/sqb

Attachment:
     Terminal Disclaimer

Date:  September 18, 2006

**OLIFF & BERRIDGE, PLC**
**P.O. Box 19928**
**Alexandria, Virginia 22320**
**Telephone: (703) 836-6400**

DEPOSIT ACCOUNT USE
AUTHORIZATION
Please grant any extension
necessary for entry;
Charge any fee due to our
Deposit Account No. 24-0037

Xerox Docket No. D/A1707

**PATENT APPLICATION**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of

Ayman O. FARAHAT et al.                          Group Art Unit:     2165

Application No.:   10/232,714                     Examiner:     T. PARDO

Filed:   September 3, 2002                         Docket No.:     111745

For:   SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND
       SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

### TERMINAL DISCLAIMER--COPENDING APPLICATION

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

```
09/20/2006 MBERHE   00000024 240037   10232714
01 FC:1814           130.00 DA
```

Sir:

Your Petitioner, Xerox Corporation, represents that it is the owner of a 100% interest in the above-captioned patent application by virtue of an Assignment filed September 3, 2002 and recorded at Reel 013263, Frame 0228.  The undersigned also certifies that he is empowered to execute this Terminal Disclaimer on behalf of the assignee.

Your Petitioner hereby disclaims the terminal part of the statutory term of any patent granted on the above-captioned application, which would extend beyond the expiration of the full statutory term as presently shortened by any Terminal Disclaimer, of any U.S. Patent to issue on copending U.S. Patent Application No. 10/232,709 and hereby agrees that any patent so granted on the above-captioned application shall be enforceable only for and during such period that the legal title to said U.S. Patent shall be the same as the legal title to any patent issuing from the above-captioned application, this agreement to run with any patent granted on the above-captioned application and to be binding upon the grantee, its successors or assigns.

Petitioner does not disclaim any terminal part of any patent granted on the above-captioned application prior to the expiration of the full statutory term as presently shortened by any Terminal Disclaimer of said U.S. Patent in the event that it later:  expires for failure to pay a maintenance fee, is held unenforceable, is found invalid, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is otherwise terminated prior to the expiration of its full statutory term as presently shortened by any Terminal Disclaimer.

The Commissioner is hereby authorized to charge Deposit Account No. 24-0037 in the amount of $130.00 for the fee under 37 C.F.R. §1.20(d).

The Commissioner is hereby authorized to charge any additional fee (or credit any overpayment) associated with this communication to Deposit Account No. 24-0037.  Two duplicate copies of this paper are attached.

DATE   September 18, 2006          SIGNED:

                                   TYPED NAME:          Joel S. Armstrong

                                   TITLE OR REGISTRATION NO.
                                   OF ATTORNEY OF RECORD:     36,430



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

| 27074       7590       08/07/2006 | EXAMINER |
|---|---|
| OLIFF & BERRIDGE, PLC.<br>P.O. BOX 19928<br>ALEXANDRIA, VA  22320 | PARDO, THUY N |

|  | ART UNIT | PAPER NUMBER |
|---|---|---|
|  | 2165 |  |

DATE MAILED: 08/07/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| **Office Action Summary** | Application No. | Applicant(s) |
|---|---|---|
| | 10/232,714 | FARAHAT ET AL. |
| | Examiner | Art Unit |
| | Thuy N. Pardo | 2165 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>23 May 2006</u>.

2a)☐ This action is **FINAL**.   2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-25</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-25</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
   Paper No(s)/Mail Date <u>3/29/2006</u>.

4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application (PTO-152)

6) ☐ Other: _____ .

Application/Control Number: 10/232,714                                              Page 2
Art Unit: 2165

## DETAILED ACTION

1.     Applicant's amendment filed on May 23, 2006 in response to Examiner's Office Action

has been reviewed. Claims 1, 3, 14, 17 and 20-23 have been amended, and claims 23-25 have

been added.

2.     Claims 1-25 are presented for examination. ·

### *Double Patenting*

3.     The nonstatutory double patenting rejection is based on a judicially created doctrine

grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or

improper timewise extension of the "right to exclude" granted by a patent and to prevent possible

harassment by multiple assignees.   A nonstatutory obviousness-type double patenting rejection

is appropriate where the conflicting claims are not identical, but at least one examined

application claim is not patentably distinct from the reference claim(s) because the examined

application claim is either anticipated by, or would have been obvious over, the reference

claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re*

*Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225

USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re*

*Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and  *In re Thorington*, 418 F.2d 528, 163

USPQ 644 (CCPA 1969).

       A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may

be used to overcome an actual or provisional rejection based on a nonstatutory double patenting

Application/Control Number: 10/232,714                                        Page 3
Art Unit: 2165

ground provided the conflicting application or patent either is shown to be commonly owned

with this application, or claims an invention made as a result of activities undertaken within the

scope of a joint research agreement.

     Effective January 1, 1994, a registered attorney or agent of record may sign a terminal

disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR

3.73(b).

     Claims 1-25 are provisionally rejected on the ground of nonstatutory obviousness-type

double patenting as being unpatentable over claims 1-30 of copending Application No.

10/232,709.  Although the conflicting claims are not identical, they are not patentably distinct

from each other because they have the same subject matter of determining a set of document

content values based on textual contents in the document and determining at least one of the

textual authoritativeness value or textual authority class for the document based on the

determined set of document content values using a trained document textual authority model.

     This is a provisional obviousness-type double patenting rejection because the conflicting

claims have not in fact been patented.

### *Allowable Subject Matter*

4.    Claims 1-25 are allowed over the prior art of record

     Upon Applicant's arguments, see pages 8-11, filed on May 23, with respect to the

rejections of amended claims 1-25 have been fully considered and are persuasive, and updated

Application/Control Number: 10/232,714                                   Page 4
Art Unit: 2165

searches in a variety of databases, Examiner respectfully submits that claims 1-25 are allowable

over the prior art of record.

5.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Thuy N. Pardo whose telephone number is 571-272-4082. The

examiner can normally be reached on Mon-Fri.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Jeffrey Gaffin can be reached on 571-272-4146. The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

        Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

August 03, 2006

THUY N. PARDO
PRIMARY EXAMINER

Sheet ___1___ of ___1___

| Form PTO-1449 (REV. 1/06) | US Dept. of Commerce PATENT & TRADEMARK OFFICE | ATTY DOCKET NO. 111745 | | APPLICATION NO. 10/232,714 |
|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT (Use several sheets if necessary) | | APPLICANT(S) Ayman O. FARAHAT et al. | | |
| | | FILING DATE September 3, 2002 | | GROUP 2161 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number | Date | Name |
|---|---|---|---|---|
| TP | 1 | 6,233,575 | 05/15/01 | Rakesh AGRAWAI et al. |
| TP | 2 | 6,112,202 | 08/29/2000 | Jon Michael KLEINBERG |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number | Date | Country | With English Abstract | With English Translation |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### OTHER DOCUMENTS

| Examiner Initials | Cite No. | (Including Author, Title, Date, Pertinent Pages, etc.) |
|---|---|---|
| TP | 3 | Sean SLATTERY et al., "Discovering Test Set Regularities in Relational Domains", PROCEEDINGS OF THE SEVENTEENTH INTERNATIONAL CONFERENCE ON MACHINE LEARNING, September 17, 2000, pp. 895-902 |
| TP | 4 | Huan CHANG et al., "Learning to create Customized Authority Lists", CONFERENCE INFO: PROCEEDINGS OF THE SEVENTEENTH INTERNATIONAL CONFERENCE ON MACHINE LEARNING, June 29, 2000, pp. 127-134 |
| TP | 5 | David COHN, "Learning to Probabilistically Identify Authoritative Documents", CONFERENCE INFO: PROCEEDINGS OF THE SEVENTEENTH INTERNATIONAL CONFERENCE ON MACHINE LEARNING, June 29, 2000, pp. 167-174 |
| | | |

| EXAMINER | /Thuy Pardo/ | DATE CONSIDERED | 06/24/2006 |
|---|---|---|---|

Examiner: Initial if citation considered, whether or not citation is in conformance with M.P.E.P. 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Date: <u>March 29, 2006</u>



**Search Notes**

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/232,714 | FARAHAT ET AL. |
| Examiner | Art Unit |
| Thuy N. Pardo | 2165 |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 707 | 10 | 8/3/06 | TP |
| | 101 | | |
| | 102 | | |
| | 103R | | |
| | 104.1 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| WEST | 8/3/06 | TP |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## Index of Claims

| | |
|---|---|
| **Application/Control No.** | **Applicant(s)/Patent under Reexamination** |
| 10/232,714 | FARAHAT ET AL. |
| **Examiner** | **Art Unit** |
| Thuy N. Pardo | 2165 |

| | | | | | | |
|---|---|---|---|---|---|---|
| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| Final | Original | Date 8/3/06 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | | | | | | | |
| | 2 | | | | | | | | |
| | 3 | | | | | | | | |
| | 4 | | | | | | | | |
| | 5 | | | | | | | | |
| | 6 | | | | | | | | |
| | 7 | | | | | | | | |
| | 8 | | | | | | | | |
| | 9 | | | | | | | | |
| | 10 | | | | | | | | |
| | 11 | | | | | | | | |
| | 12 | | | | | | | | |
| | 13 | | | | | | | | |
| | 14 | | | | | | | | |
| | 15 | | | | | | | | |
| | 16 | | | | | | | | |
| | 17 | | | | | | | | |
| | 18 | | | | | | | | |
| | 19 | | | | | | | | |
| | 20 | | | | | | | | |
| | 21 | | | | | | | | |
| | 22 | | | | | | | | |
| | 23 | | | | | | | | |
| | 24 | | | | | | | | |
| | 25 | √ | | | | | | | |
| | 26 | | | | | | | | |
| | 27 | | | | | | | | |
| | 28 | | | | | | | | |
| | 29 | | | | | | | | |
| | 30 | | | | | | | | |
| | 31 | | | | | | | | |
| | 32 | | | | | | | | |
| | 33 | | | | | | | | |
| | 34 | | | | | | | | |
| | 35 | | | | | | | | |
| | 36 | | | | | | | | |
| | 37 | | | | | | | | |
| | 38 | | | | | | | | |
| | 39 | | | | | | | | |
| | 40 | | | | | | | | |
| | 41 | | | | | | | | |
| | 42 | | | | | | | | |
| | 43 | | | | | | | | |
| | 44 | | | | | | | | |
| | 45 | | | | | | | | |
| | 46 | | | | | | | | |
| | 47 | | | | | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |

| Final | Original | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 51 | | | | | | | | |
| | 52 | | | | | | | | |
| | 53 | | | | | | | | |
| | 54 | | | | | | | | |
| | 55 | | | | | | | | |
| | 56 | | | | | | | | |
| | 57 | | | | | | | | |
| | 58 | | | | | | | | |
| | 59 | | | | | | | | |
| | 60 | | | | | | | | |
| | 61 | | | | | | | | |
| | 62 | | | | | | | | |
| | 63 | | | | | | | | |
| | 64 | | | | | | | | |
| | 65 | | | | | | | | |
| | 66 | | | | | | | | |
| | 67 | | | | | | | | |
| | 68 | | | | | | | | |
| | 69 | | | | | | | | |
| | 70 | | | | | | | | |
| | 71 | | | | | | | | |
| | 72 | | | | | | | | |
| | 73 | | | | | | | | |
| | 74 | | | | | | | | |
| | 75 | | | | | | | | |
| | 76 | | | | | | | | |
| | 77 | | | | | | | | |
| | 78 | | | | | | | | |
| | 79 | | | | | | | | |
| | 80 | | | | | | | | |
| | 81 | | | | | | | | |
| | 82 | | | | | | | | |
| | 83 | | | | | | | | |
| | 84 | | | | | | | | |
| | 85 | | | | | | | | |
| | 86 | | | | | | | | |
| | 87 | | | | | | | | |
| | 88 | | | | | | | | |
| | 89 | | | | | | | | |
| | 90 | | | | | | | | |
| | 91 | | | | | | | | |
| | 92 | | | | | | | | |
| | 93 | | | | | | | | |
| | 94 | | | | | | | | |
| | 95 | | | | | | | | |
| | 96 | | | | | | | | |
| | 97 | | | | | | | | |
| | 98 | | | | | | | | |
| | 99 | | | | | | | | |
| | 100 | | | | | | | | |

| Final | Original | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 101 | | | | | | | | |
| | 102 | | | | | | | | |
| | 103 | | | | | | | | |
| | 104 | | | | | | | | |
| | 105 | | | | | | | | |
| | 106 | | | | | | | | |
| | 107 | | | | | | | | |
| | 108 | | | | | | | | |
| | 109 | | | | | | | | |
| | 110 | | | | | | | | |
| | 111 | | | | | | | | |
| | 112 | | | | | | | | |
| | 113 | | | | | | | | |
| | 114 | | | | | | | | |
| | 115 | | | | | | | | |
| | 116 | | | | | | | | |
| | 117 | | | | | | | | |
| | 118 | | | | | | | | |
| | 119 | | | | | | | | |
| | 120 | | | | | | | | |
| | 121 | | | | | | | | |
| | 122 | | | | | | | | |
| | 123 | | | | | | | | |
| | 124 | | | | | | | | |
| | 125 | | | | | | | | |
| | 126 | | | | | | | | |
| | 127 | | | | | | | | |
| | 128 | | | | | | | | |
| | 129 | | | | | | | | |
| | 130 | | | | | | | | |
| | 131 | | | | | | | | |
| | 132 | | | | | | | | |
| | 133 | | | | | | | | |
| | 134 | | | | | | | | |
| | 135 | | | | | | | | |
| | 136 | | | | | | | | |
| | 137 | | | | | | | | |
| | 138 | | | | | | | | |
| | 139 | | | | | | | | |
| | 140 | | | | | | | | |
| | 141 | | | | | | | | |
| | 142 | | | | | | | | |
| | 143 | | | | | | | | |
| | 144 | | | | | | | | |
| | 145 | | | | | | | | |
| | 146 | | | | | | | | |
| | 147 | | | | | | | | |
| | 148 | | | | | | | | |
| | 149 | | | | | | | | |
| | 150 | | | | | | | | |



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

| | | |
|---|---|---|
| 27074      7590      05/24/2006 | EXAMINER | |
| OLIFF & BERRIDGE, PLC. | PARDO, THUY N | |
| P.O. BOX 19928 | ART UNIT | PAPER NUMBER |
| ALEXANDRIA, VA  22320 | 2165 | |

DATE MAILED: 05/24/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

| ***Interview Summary*** | Application No. | Applicant(s) |
|---|---|---|
| | 10/232,714 | FARAHAT ET AL. |
| | **Examiner** | **Art Unit** | |
| | Thuy Pardo | 2165 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Thuy Pardo*.                                   (3)_____.

(2) *Gang Luo*                                      (4)_____.

Date of Interview: *May 16, 2006*

Type:   a)☐ Telephonic   b)☐ Video Conference
        c)☒ Personal [copy given to:  1)☐ applicant    2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒ No.
        If Yes, brief description: _____.

Claim(s) discussed: *1 - 22*

Identification of prior art discussed: *References of record.*

Agreement with respect to the claims f)☐ was reached.   g)☐ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *We discuss the claims in view of references*

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

**THUY N. PARDO**
**PRIMARY EXAMINER**

Examiner Note:  You must sign this form unless it is an Attachment to a signed Office action.

Examiner's signature, if required

U.S. Patent and Trademark Office
PTOL-413 (Rev. 04-03)                           Interview Summary                           Paper No. 051406

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
Paragraph (b)
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant.  An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR §1.2  Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing.  The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary.  The action of the Patent and Trademark Office will be based exclusively on the written record in the Office.  No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so.  It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks.  Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below.  Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper.  In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview.  In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
− Application Number (Series Code and Serial Number)
− Name of applicant
− Name of examiner
− Date of interview
− Type of interview (telephonic, video-conference, or personal)
− Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
− An indication whether or not an exhibit was shown or a demonstration conducted
− An identification of the specific prior art discussed
− An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable).  Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
− The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
    (The identification of arguments need not be lengthy or elaborate.  A verbatim or highly detailed description of the arguments is not required.  The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file.  Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview.  If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her.  If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

Xerox Docket No. D/A1707

**PATENT APPLICATION**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

**OLIFF & BERRIDGE, PLC**
Telephone: (703) 836-6400
Facsimile: (703) 836-2787

ATTORNEY DOCKET NO.: <u>111745</u>

DATE: <u>May 23, 2006</u>

**CUSTOMER NUMBER 27074**

**AMENDMENT TRANSMITTAL**

In re the Application of:

Ayman O. FARAHAT et al.

Application No.: 10/232,714

Filed: September 3, 2002

Group Art Unit: 2161

Examiner: T. PARDO

For: SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Transmitted herewith is an Amendment in the above-identified application.

Any additional claim fees have been calculated as shown below:

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | (Column 2) HIGHEST NO. PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | | RATE | ADD'L FEE |
|---|---|---|---|---|---|---|
| TOTAL CLAIMS | *25 MINUS | **22 | =3 | | x 50 | $ 150.00 |
| INDEP CLAIMS | *3 MINUS | ***3 | =0 | | x 200 | $ |
| ☐ FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | + 360 | $ |
| | | | | | | $ 150.00 |

\*     If the entry in Column 1 is less than the entry in Column 2, write "0" in Column 3.

\*\*    If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, write "20" in this space.

\*\*\*   If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, write "3" in this space.

The "Highest Number Previously Paid For" in this space (Total or Independent) is the highest number found from the equivalent box in Column 1 of a prior Amendment or the number of claims originally filed.

☒ Please charge my Deposit Account No. 24-0037 in the amount of $150.00. Two duplicate copies of this sheet are attached.

☒ The Commissioner is hereby authorized to charge any other fees that may be required to complete this filing, or to credit any overpayment, to Deposit Account. 24-0037. Two duplicate copies of this sheet are attached.

DEPOSIT ACCOUNT USE AUTHORIZATION
Please grant any extension necessary for entry;
Charge any fee due to our Deposit Account No. 24-0037

Respectfully submitted,

James A. Oliff
Registration No. 27,075

Gang Luo
Registration No. 50,559

JAO:GXL/sqb

Xerox Docket No. D/A1707

**PATENT APPLICATION**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of

Ayman O. FARAHAT et al.                    Group Art Unit:  2165

Application No.:    10/232,714             Examiner:    T. PARDO

Filed:  September 3, 2002                  Docket No.:    111745

For:    SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING,
        ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS
        DOCUMENT COLLECTIONS

**AMENDMENT**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

　　　　In reply to the March 6, 2006 Office Action, please consider the following:

　　　　**Amendments to the Claims** as reflected in the listing of claims; and

　　　　**Remarks**.

05/24/2006 JADD01    00000077 240037    10232714
01 FC:1202           150.00 DA

Xerox Docket No. D/A1707
Application No. 10/232,714

**Amendments to the Claims**:

The following listing of claims will replace all prior versions, and listings, of claims in the application:

1.      (Currently Amended)  A method for determining an authoritativeness of a document having a plurality of document content features, the method comprising:

determining a set of document content feature values of a document based on textual contents in the ~~document~~ document, the document providing information regarding a subject; ~~and~~

determining an authoritativeness for the document based on the determined set of document content feature values using a trained document textual authority ~~model.~~ model, wherein determining the authoritativeness comprises determining a reliability of the document, the reliability indicative of whether the information, as provided in the document, is reliable regarding the subject; and

outputting the determined authoritativeness in association with the document.

2.      (Original)  The method of claim 1, wherein determining the set of document content feature values comprises extracting a subset of document content features from the plurality of document content features.

3.      (Currently Amended)  The method of claim 1, wherein determining the set of document content feature values comprises determining the set of document content ~~features~~ feature values using one or more parsing techniques or methods.

4.      (Original)  The method of claim 1, wherein determining the authoritativeness for the document comprises:

providing the set of document content feature values to the trained document textual authority model; and

Xerox Docket No. D/A1707
Application No. 10/232,714

determining a document textual authoritativeness value based at least on the set of document content feature values determined.

5.      (Original)  The method of claim 1, wherein determining an authoritativeness for the document further comprising determining a textual authority class for the document.

6.      (Previously Presented)  The method of claim 1, wherein the plurality of document content features includes at least one or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features or readability indices features.

7.      (Original)  The method of claim 2, wherein extracting a subset of document content features is performed using one or more regression techniques or methods.

8.      (Original)  The method of claim 2, wherein extracting a subset of document content features is performed using one or more variable selection techniques or methods.

9.      (Original)  The method of claim 7, wherein one or more regression techniques or methods comprises a stepwise regression technique.

10.     (Original)  The method of claim 8, wherein one or more variable selection techniques or methods comprises one or more of mutual information technique and AdaBoost technique.

11.     (Original)  The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more statistical processes or techniques.

12.     (Original)  The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more metric-regression algorithms or methods.

Xerox Docket No. D/A1707
Application No. 10/232,714

13.    (Original)  The method of claim 4, wherein determining a document textual
authoritativeness value is performed by processing the set of document content feature values
using an AdaBoost algorithm model or method.

14.    (Currently Amended)  A machine-readable medium that provides instructions
for determining the authority of a document having a plurality of document content features,
instructions, which when executed by a processor, cause the processor to perform operations
comprising:

determining a set of document content feature values of a document based on
textual contents in the document; document, the document providing information regarding a
subject; and

determining at least one of textual authoritativeness value or textual authority
class for the document based on the determined set of document content feature values using
a trained document textual authority model. model, wherein determining the authoritativeness
comprises determining a reliability of the document, the reliability indicative of whether the
information, as provided in the document, is reliable regarding the subject; and

outputting the determined authoritativeness in association with the document.

15.    (Previously Presented)  The machine-readable medium according to claim 14,
wherein the plurality of document content features includes at least one or more question
marks, semicolons, numerals, words with learned prefixes, words with learned suffixes,
words in certain grammatical locations, HTML features, abbreviations and classes of
abbreviations, text characteristics features, speech tagging features or readability indices
features.

16.    (Original)  The machine-readable medium according to claim 14, wherein
determining the textual authoritativeness value or a textual authority class for the document
comprises:

Xerox Docket No. D/A1707
Application No. 10/232,714

extracting a plurality of document content features from each document;

determining a set of document content feature values for each document using one or more parsing techniques or methods; and

determining a textual authoritativeness value or a textual authority class for the document by using one or more of metric regression or boosted decision tree algorithms or methods.

17.    (Currently Amended)  A textual authority determining system that determines an authority of a document having a plurality of document content features, comprising:

a memory; and

a document textual authoritativeness value determination circuit or routine ~~that~~

<u>that:</u>

_____determines at least a textual authoritativeness value for the document based on textual contents in the document by processing a set of document content feature values determined for a subset of document content features extracted from the plurality of document content features using one or more of metric regression or boosted decision tree algorithms or ~~methods,~~ <u>methods, the document providing information regarding a subject, wherein determining the authoritativeness comprises determining a reliability of the document, the authoritativeness indicative of whether the information, as provided in the document, is reliable regarding the subject; and</u>

_____<u>outputs the determined authoritativeness in association with the document.</u>

18.    (Previously Presented)  The textual authority determining system of claim 17, wherein the plurality of document content features includes at least one or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of

Xerox Docket No. D/A1707
Application No. 10/232,714

abbreviations, text characteristics features, speech tagging features or readability indices features.

19.     (Original)  The textual authority determining system of claim 17, further comprising a document content features extraction circuit or routine that determines a subset of document content features from the plurality of document content features using a stepwise regression process.

20.     (Currently Amended)  The method of claim 1, wherein determining the set of document content feature values comprises determining the set of document content feature values based solely on the ~~textual contents~~ information provided in the document.

21.     (Currently Amended)  The machine-readable medium according to claim 14, wherein determining the set of document content feature values comprises determining the set of document content feature values based solely on the ~~textual contents~~ information provided in the document.

22.     (Currently Amended)  The textual authority determining system of claim 17, wherein the document textual authoritativeness value determination circuit or routine determines the document content feature values based solely on the ~~textual contents~~ information provided in the document.

23.     (New)  The method of claim 1, wherein determining the reliability of the document comprises determining, from the information within the document, a background of an author of the document, an institutional affiliation of the author, whether the document reads as if the document is well-researched, and whether the document has been reviewed or examined by others.

24.     (New)  The machine-readable medium according to claim 14, wherein determining the reliability of the document comprises determining, from the information within the document, a background of an author of the document, an institutional affiliation

Xerox Docket No. D/A1707
Application No. 10/232,714

of the author, whether the document reads as if the document is well-researched, and whether the document has been reviewed or examined by others.

25.　(New)  The textual authority determining system of claim 17, wherein determining the reliability of the document comprises determining, from the information within the document, a background of an author of the document, an institutional affiliation of the author, whether the document reads as if the document is well-researched, and whether the document has been reviewed or examined by others.

Xerox Docket No. D/A1707
Application No. 10/232,714

## REMARKS

Claims 1-25 are pending in this application.

By this Amendment, claims 1, 14 and 17 are amended and claims 23-25 are added to recite additional features disclosed in the specification at, for example, paragraphs [0002], [0004], [0006], [0019] and [0062]. Claims 20-22 are amended for better clarity. Claim 3 is amended to obviate an informality.

Reconsideration of the application is respectfully requested.

Applicants thank Examiner Pardo for the courtesy extended to Applicants' representative, Mr. Luo, during the May 16, 2006 personal interview. The substance of the personal interview is incorporated in the following remarks.

The Examiner is respectfully requested to acknowledge consideration of the references listed on, and to return an initialed copy of, the Form PTO-1449 submitted with the March 29, 2006 Information Disclosure Statement.

The Office Action rejects claims 20-22 under 35 U.S.C. §112, first paragraph. Claims 20-22 are amended for better clarity. Accordingly, withdrawal of the rejection of claims 20-22 under 35 U.S.C. §112, first paragraph, is respectfully requested.

The Office Action rejects claims 1-9, 11, 12 and 14-22 under 35 U.S.C. §103(a) over U.S. Patent No. 6,336,112 to Chakrabarti et al. ("Chakrabarti") in view of U.S. Patent No. 5,687,364 to Saund et al. ("Saund"); and rejects claims 10 and 13 under 35 U.S.C. §103(a) over Chakrabarti in view of Saund and further in view of an article "Experience with a New Boosting Algorithm" by Freund et al. ("Freund"). These rejections are respectfully traversed.

Chakrabarti is directed to ranking a document by relevance. See col. 1, lines 12-47. Chakrabarti discloses determining authoritativeness of a web page based on how frequent the web page is referred to via links by other web pages. See col. 2, lines 15-49, and col. 3,

lines 41-57.  Chakrabarti discloses providing accurate authoritativeness by filtering self-promotion and related-page promotion.  See col. 2, lines 34-38.  In particular, Chakrabarti discloses that, when a root set is updated, the hyperlinks to a document and "what other documents say" about the document also need to be updated, especially to avoid self promotion or redundant hubs.  See col. 14, line 58 - col. 15, line 8.

In view of the above, Chakrabarti only discloses determining authoritativeness of a document <u>based on what other documents say about this document</u>.  That is, Chakrabarti discloses that the authoritativeness of a document is determined based on information outside of this document.  Chakrabarti does not disclose or suggest determining the authoritativeness of a document <u>based on information within the document itself</u>.  Therefore, Chakrabarti does not disclose or suggest determining an authoritativeness of a document based on a set of document content feature values that are determined based on textual contents <u>in the document</u>, as recited in claim 1, and similarly recited in claims 14 and 17.

Furthermore, as discussed above, Chakrabarti's "authoritativeness" is a measure of <u>relevance</u>.  In particular, Chakrabarti discloses that a document is categorized based on the relevance of its content to different topics.  See Fig. 2 and col. 10, lines 36-58.  The document is ranked by relevance to the topics.  See col. 1, lines 13-47.  Chakrabarti does not disclose or suggest a reliability that is indicative of whether the information provided in the document regarding a subject is <u>reliable</u> regarding the subject (see the specification at, for example, paragraphs [0002], [0004], [0006], [0019] and [0062]).  Therefore, Chakrabarti does not disclose or suggest a reliability that is indicative of whether the information, as provided in the document, is reliable regarding the subject, as recited in claim 1, and similarly recited in claims 14 and 17.

In view of the above, Chakrabarti does not disclose or suggest the subject matter recited in claims 1, 14 and 17.  Also, Saund and Freund do not supply the subject matter

Xerox Docket No. D/A1707
Application No. 10/232,714

lacking in Chakrabarti. Thus, Chakrabarti, Saund and Freund, either individually or in combination, do not disclose or suggest the subject matter recited in claims 1, 14 and 17.

Claims 2-13, 15, 16 and 18-22 are each patentable over Chakrabarti, Saund and Freund at least in view of the patentability of claims 1, 14 and 17, from which they respectively depend, as well as for additional features they recite. For example, Chakrabarti, Saund and Freund do not disclose or suggest determining a set of document content feature values based solely on the information provided in the document, as recited in claim 20, and similarly recited in claims 21 and 22.

The Office Action asserts that Chakrabarti discloses at Figs. 2 and 13, and col. 10, lines 19-58, that "frame" is populated by adding documents having textual contents/attributes corresponding to the frame attributes. However, such an addition of documents to the frame is based on relevance of the document to the frame. Such an addition does not disclose or suggest determining a reliability that is indicative of whether information provided in the document is reliable regarding a subject. Thus, the cited disclosure of Chakrabarti is irrelevant to the subject matter recited in claims 20-22.

The Office Action also asserts that Saund discloses lexicon at col. 3, line 30 - col. 4, line 45. However, such lexicon is used to model a relationship between topics and words in a document. See col. 3, lines 30-37 of Saund. Such a relationship between topics and words is based on relevance. Saund does not disclose or suggest determining a reliability that is indicative of whether the information provided in the document is reliable regarding a subject. Therefore, the "relationship" disclosed in Saund is irrelevant to the subject matter recited in claims 20-22.

For at least the above reasons, withdrawal of the rejection of claims 1-22 under 35 U.S.C. §103(a) is respectfully requested.

-10-

Xerox Docket No. D/A1707
Application No. 10/232,714

Claims 23-25 are patentable in view of the patentability of claims 1, 14 and 17, from which they respectively depend, as well as for additional features they recite. For example, the applied references do not disclose or suggest that determining the reliability of the document comprises determining, from the information within the document, a background of an author of the document, an institutional affiliation of the author, whether the document reads as if the document is well-researched, and whether the document has been reviewed or examined by others, as recited in claims 23-25.

In view of the foregoing, it is respectfully submitted that this application is in condition for allowance. Favorable reconsideration and prompt allowance of claims 1-25 are earnestly solicited.

Should the Examiner believe that anything further would be desirable in order to place this application in even better condition for allowance, the Examiner is invited to contact the undersigned at the telephone number set forth below.

Respectfully submitted,

James A. Oliff
Registration No. 27,075

Gang Luo
Registration No. 50,559

JAO:GXL/brp
Attachment:
     Amendment Transmittal
Date: May 23, 2006

**OLIFF & BERRIDGE, PLC**
**P.O. Box 19928**
**Alexandria, Virginia 22320**
**Telephone: (703) 836-6400**

DEPOSIT ACCOUNT USE
AUTHORIZATION
Please grant any extension
necessary for entry;
Charge any fee due to our
Deposit Account No. 24-0037

-11-

PTO/SB/06 (08-0)
Approved for use through 7/31/2006. OMB 0651-00
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

Application or Docket Number
10/232714

## CLAIMS AS FILED – PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| | | | RATE | FEE | | RATE | FEE |
| BASIC FEE (37 CFR 1.16(a)) | | | | $ | OR | | $ |
| TOTAL CLAIMS (37 CFR 1.16(c)) | | minus 20 = * | X $ = | | OR | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(b)) | | minus 3 = * | X $ = | | OR | X $ = | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(d)) | | | + $ = | | OR | + $ = | |
| | | | TOTAL | | OR | TOTAL | |

* If the difference in column 1 is less than zero, enter "0" in column 2.

## CLAIMS AS AMENDED – PART II

5/23/06

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | | | | | | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| | Total (37 CFR 1.16(c)) | * 25 | Minus | ** 22 | = 3 | X 25 = | | OR | X 72 = | 150.00 |
| | Independent (37 CFR 1.16(b)) | * 3 | Minus | *** 3 | = 0 | X 100 = | | OR | X 200 = | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | 150.00 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDITIONAL FEE | OR | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | | | | | | | | | | |
| | Total (37 CFR 1.16(c)) | * | Minus | ** | = | X 25 = | | OR | X 50 = | |
| | Independent (37 CFR 1.16(b)) | * | Minus | *** | = | X 100 = | | OR | X 200 = | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT C | | | | | | | | | | |
| | Total (37 CFR 1.16(c)) | | Minus | ** | = | X 25 = | | | X 50 = | |
| | Independent (37 CFR 1.16(b)) | | Minus | *** | = | X 100 = | | | X 200 = | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(d)) | | | | | + $ = | | OR | + $ = | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.



Xerox Docket No. D/A1707

PATENT APPLICATION

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of

Ayman O. FARAHAT et al.                    Group Art Unit:  2161

Application No.:  10/232,714               Examiner:   B. GODDARD

Filed:  September 3, 2002                   Docket No.:  111745

For:    SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION
        AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT
        COLLECTIONS

## INFORMATION DISCLOSURE STATEMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

Pursuant to 37 CFR §1.56, the attention of the Patent and Trademark Office is hereby
directed to the reference(s) listed on the attached PTO-1449.  Unless otherwise indicated herein,
one copy of each reference is attached.  It is respectfully requested that the information be
expressly considered during the prosecution of this application, and that the reference(s) be made
of record therein and appear among the "References Cited" on any patent to issue therefrom.

☒   1.    This Information Disclosure Statement is being filed more than three months after
          the U.S. filing date AND after the mailing date of the first Office Action on the merits,
          but before the mailing date of a Final Rejection, Notice of Allowance or other action that
          closes prosecution (e.g., Quayle Action).

    ☒    a.    I hereby certify that each item of information contained in this
              Information Disclosure Statement was first cited in any communication from a
              foreign patent office in a counterpart foreign application not more than three
              months prior to the filing of this Information Disclosure Statement.  37 CFR
              §1.97(e)(1).

☒   2.    One or more reference cited herein was cited in a counterpart foreign application.
          An English language version of the foreign search report is attached for the Examiner's
          information.  See References 1-5.

Xerox Docket No. D/A1707
Application No. 10/232,714

☒   3.      In accordance with 37 CFR §1.98(a)(2)(ii), copies of any U.S. patents and patent application publications are not attached.

Respectfully submitted,

James A. Oliff
Registration No. 27,075

Gang Luo
Registration No. 50,559

JAO:GXL/sqb

Date:  March 29, 2006

**Oliff & Berridge, plc**
**P.O. Box 19928**
**Alexandria, Virginia 22320**
**Telephone: (703) 836-6400**

DEPOSIT ACCOUNT USE
AUTHORIZATION
Please grant any extension
necessary for entry;
Charge any fee due to our
Deposit Account No. 24-0037

-2-

Sheet __1__ of __1__

| Form PTO-1449 (REV. 1/06) | US Dept. of Commerce PATENT & TRADEMARK OFFICE | ATTY DOCKET NO. 111745 | | APPLICATION NO. 10/232,714 |
|---|---|---|---|---|
| | INFORMATION DISCLOSURE STATEMENT *(Use several sheets if necessary)* | APPLICANT(S) Ayman O. FARAHAT et al. | | |
| | | FILING DATE September 3, 2002 | | GROUP 2161 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number | Date | Name |
|---|---|---|---|---|
| | 1 | 6,233,575 | 05/15/01 | Rakesh AGRAWAI et al. |
| | 2 | 6,112,202 | 08/29/2000 | Jon Michael KLEINBERG |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number | Date | Country | With English Abstract | With English Translation |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### OTHER DOCUMENTS

| Examiner Initials | Cite No. | (Including Author, Title, Date, Pertinent Pages, etc.) |
|---|---|---|
| | 3 | Sean SLATTERY et al., "Discovering Test Set Regularities in Relational Domains", PROCEEDINGS OF THE SEVENTEENTH INTERNATIONAL CONFERENCE ON MACHINE LEARNING, September 17, 2000, pp. 895-902 |
| | 4 | Huan CHANG et al., "Learning to create Customized Authority Lists", CONFERENCE INFO: PROCEEDINGS OF THE SEVENTEENTH INTERNATIONAL CONFERENCE ON MACHINE LEARNING, June 29, 2000, pp. 127-134 |
| | 5 | David COHN, "Learning to Probabilistically Identify Authoritative Documents", CONFERENCE INFO: PROCEEDINGS OF THE SEVENTEENTH INTERNATIONAL CONFERENCE ON MACHINE LEARNING, June 29, 2000, pp. 167-174 |
| | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

Examiner: Initial if citation considered, whether or not citation is in conformance with M.P.E.P. 609; draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Date: __March 29, 2006__

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

27074        7590        03/06/2006

OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA, VA  22320

| EXAMINER |
|---|
| GODDARD, BRIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2161 | |

DATE MAILED: 03/06/2006

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 10/232,714 | FARAHAT ET AL. |
| | **Examiner** | **Art Unit** | |
| | Brian Goddard | 2161 | |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

> A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
> - Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
> - If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
> - Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
>   Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>22 November 2005</u>.

2a) ☐ This action is **FINAL**.   2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) <u>1-22</u> is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) <u>1-22</u> is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☒ The drawing(s) filed on <u>03 September 2002</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11) ☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All   b)☐ Some * c)☐ None of:

   1. ☐ Certified copies of the priority documents have been received.

   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☐ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
   Paper No(s)/Mail Date _____ .

4) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____ .

5) ☐ Notice of Informal Patent Application (PTO-152)

6) ☐ Other: _____ .

Application/Control Number: 10/232,714                                      Page 2
Art Unit: 2161

## DETAILED ACTION

### *Continued Examination Under 37 CFR 1.114*

1.      A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection.  Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114.  Applicant's submission filed on 22

November 2005 has been entered.

2.      Claims 1-22 are currently pending in this application.  Claims 1, 14 and 17 are

independent claims.  In the Amendment filed 22 November 2005, claims 1, 14 and 17

were amended.  This action is non-final.

### *Claim Rejections - 35 USC § 112*

The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

3.      Claims 20-22 are rejected under 35 U.S.C. 112, first paragraph, as failing to

comply with the written description requirement.  The claim(s) contains subject matter

which was not described in the specification in such a way as to reasonably convey to

one skilled in the relevant art that the inventor(s), at the time the application was filed,

had possession of the claimed invention.

Application/Control Number: 10/232,714                                          Page 3
Art Unit: 2161

     The limitations added in new claims 20-22 constitute new matter that does not
have proper written description in the specification as originally filed.  Namely, claims
20-22 recite "determining the set of document content feature values based **solely** on
the textual contents in the document." (emphasis added)  Figure 3 (element 322) and its
corresponding portion of the instant specification describe document content feature
values based on HTML features (hyperlinks, tables, images, page color).  HTML
features are not "textual" contents of a document.  The specification as originally filed
does not describe or state that the set of document content feature values is based
**solely** on the textual contents in the document.

### Claim Rejections - 35 USC § 103

4.    Claims 1-9, 11-12 and 14-22 are rejected under 35 U.S.C. 103(a) as being
unpatentable over U.S. Patent No. 6,336,112 to Chakrabarti et al. in view of U.S. Patent
No. 5,687,364 to Saund et al.

     Referring to claims 1 and 6, Chakrabarti discloses a method for determining an
authoritativeness of a document substantially as claimed.  See Figures 2-9 and the
corresponding portions of Chakrabarti's specification for this disclosure.  In particular,
Chakrabarti teaches a method [See Fig. 9] for determining an authoritativeness of a
document having a plurality of document content features [attributes], the method
comprising:

     determining a set of document content feature values [hyperlinks and attribute
values (i.e. keywords, terms, topics) - See Column 10, lines 19-58 and Fig. 2] of a

Application/Control Number: 10/232,714                                    Page 4
Art Unit: 2161

document based on textual contents in the document [See Fig. 13: 'Frame' is populated

by adding documents having textual contents/attributes corresponding to the Frame

attributes]; and

determining an authoritativeness for the document [See Abstract, Summary &

Fig. 9] based on the determined set of document content feature values using a

document textual authority model [See Column 10, lines 19-58 and Fig. 9 (Details in

Figs. 12-18)].

Claim 6, which further limits claim 1, recites "wherein the plurality of document

content features includes at least one or more…HTML features."  The instant

specification at paragraph 0017 (and elsewhere) describes "HTML features" as

"hyperlinks, tables, images, page color and the like."  Thus, it is clear that the document

content features of claim 1 include hyperlinks.  Chakrabarti's measure of

authoritativeness is based in part on hyperlinks in the document.  Therefore,

Chakrabarti's hyperlinks are "document content feature values" as claimed, and

Chakrabarti's authoritativeness for the document is based on the determined set of

document content feature values [hyperlinks in the document] as claimed.

Chakrabarti does not explicitly teach that the document textual authority model is

"trained" as claimed.  Saund discloses a system and method similar to that of

Chakrabarti, including determining a set of document content feature values [a lexicon

that indicates topical content (See Column 3, line 30 – Column 4, line 45)], training the

system to created a trained document textual authority model [See Abstract, Summary,

etc.], and using the trained model based on the determined set of document content

Application/Control Number: 10/232,714                                                    Page 5
Art Unit: 2161

feature values to predict topical content and association strength values [See Column 4, lines 20-63 and Column 5, line 21 – Column 6, line 18].

It would have been obvious to one of ordinary skill in the art at the time the invention was made to add Saund's training functionality and usage of the trained document model to the system and method of Chakrabarti, using Saund's trained document model as the topical model of Chakrabarti's methodology. One would have been motivated to do so in order to provide a more flexible and adaptive approach to developing the model with less user interaction, as described by Saund.

Referring to claim 2, Chakrabarti/Saund teaches the method of claim 1, as above, wherein determining the set of document content feature values comprises extracting a subset of document content features [Saund: lexicon (See Column 3, line 30 – Column 4, line 45)] from the plurality of document content features [the entire text of the document] as claimed.

Referring to claim 3, Chakrabarti/Saund teaches the method of claim 1, as above, wherein determining the set of document content feature values comprises…using one or more parsing techniques or methods [Chakrabarti: See Fig. 13; Saund: See Step 76] as claimed.

Referring to claim 4, Chakrabarti/Saund teaches the method of claim 1, as above, wherein determining the authoritativeness for the document comprises: providing the set of document content feature values to the trained document textual authority model [Chakrabarti: See Fig. 9 in light of combination in claim 1]; and

Application/Control Number: 10/232,714                                    Page 6
Art Unit: 2161

determining a document textual authoritativeness value [Chakrabarti: 'authority value' or

'authority score']…as claimed.

Referring to claim 5, Chakrabarti/Saund teaches the method of claim 1, as

above, wherein determining an authoritativeness for the document further comprises

determining a textual authority class for the document [Chakrabarti: 'classification' or

'category'; Saund: 'topic'] as claimed.

Referring to claim 6, Chakrabarti/Saund teaches the method of claim 1, as

above, wherein the plurality of document content features includes…[Saund: See

Column 3, line 30 – Column 4, line 45 and Column 5, line 21 – Column 6, line 18] as

claimed.

Referring to claims 7-9, Chakrabarti/Saund teaches the method of claim 2, as

above, wherein extracting a subset of document content features is performed using a

stepwise regression technique and a variable selection technique [Saund: See Column

3, line 15 – Column 5, line 20] as claimed.

Claims 11 and 12 are rejected on substantially the same basis as claims 7-9

above.  See the discussions regarding claims 1-9, as well as the portions of Saund cited

therein, for this disclosure.

Claim 14 is rejected on the same basis as claim 1.  See the discussion regarding

claim 1 above for this disclosure.

Claim 15 is rejected on the same basis as claim 6, in light of the basis for claim

14.  See the discussions regarding claims 1, 6 and 14 above for this disclosure.

Application/Control Number: 10/232,714                                          Page 7
Art Unit: 2161

Claim 16 is rejected on the same basis as claims 2 and 3, in light of the basis for
claim 14.  See the discussions regarding claims 1-3 and 14 above for this disclosure.

Claim 17 is rejected on the same basis as claims 2 and 12.  See the discussions
regarding claims 1-2 and 12 for the details of this disclosure.

Claim 18 is rejected on the same basis as claim 6, in light of the basis for claim
17.  See the discussions regarding claims 1-2, 6, 12 and 17 above for this disclosure.

Claim 19 is rejected on the same basis as claim 9, in light of the basis for claim
17.  See the discussions regarding claims 1-2, 9, 12 and 17 above for this disclosure.

Referring to claims 20-22, Chakrabarti/Saund teaches the method of claim 1,
medium of claim 14, and system of claim 17, as above, wherein determining the set of
document content feature values [See above] comprises determining the set of
document content feature values based solely on the textual contents in the document
[Chakrabarti: See Column 10, lines 19-58 and Figs. 2 & 13:  'Frame' is populated by
adding documents having textual contents/attributes corresponding to the Frame
attributes;  Saund: lexicon (See Column 3, line 30 – Column 4, line 45)] as claimed.


5.      Claims 10 and 13 are rejected under 35 U.S.C. 103(a) as being unpatentable
over Chakrabarti in view of Saund as applied to claims 4 and 8 above, and further in
view of the article entitled "Experiments with a New Boosting Algorithm" by Freund et al.

Referring to both claims 10 and 13, neither Chakrabarti nor Saund expressly use
the AdaBoost technique as claimed.  However, Freund discloses methods similar to
those of Chakrabarti and Saund, wherein the learning process uses the AdaBoost

Application/Control Number: 10/232,714                                    Page 8
Art Unit: 2161

algorithm/technique in the classification process.  See the Abstract and the entirety of

the article for this disclosure.  It would have been obvious to one of ordinary skill in the

art at the time the invention was made to add Freund's AdaBoost algorithm to the

systems and methods of Chakrabarti/Saund to obtain the invention as claimed.  One

would have been motivated to do so in order to reduce error and improve the learning

model, as disclosed by Freund.

### *Response to Arguments*

6.      Applicant's arguments filed 22 November 2005 have been fully considered but

they are not persuasive.

        First, the examiner notes that no agreement was reached regarding the

allowability of any claims in the telephonic interview of 04 November 2005, contrary to

applicant's assertion.  The examiner clearly indicated that further search and

consideration would be necessary upon official submission of the proposed

amendment.  No statement was made regarding allowability of any claims, pending or

proposed.

        Second, upon further consideration the examiner has determined that the

amendment is not sufficient to overcome the Section 103 rejections over Chakrabarti in

view of Saund.  Claim 6, which further limits Claim 1, recites "wherein the plurality of

document content features includes at least one or more…HTML features."  The instant

specification at paragraph 0017 (and elsewhere) describes "HTML features" as

"hyperlinks, tables, images, page color and the like."  Thus, it is clear that the document

Application/Control Number: 10/232,714                                    Page 9
Art Unit: 2161

content features of claim 1 include hyperlinks.  Chakrabarti's measure of

authoritativeness for a document is based in part on hyperlinks in the document.

Therefore, Chakrabarti's hyperlinks are "document content feature values" as claimed,

and Chakrabarti's authoritativeness for the document is based on the determined set of

document content feature values [hyperlinks in the document] as claimed.  The claimed

invention, as one of ordinary skill in the art would reasonably interpret Claims 1 and 6 in

light of the instant specification, is broad enough to read on the conventional calculation

of authoritativeness based on hyperlinks.  The combination of Chakrabarti and Saund

does obviate the invention **as claimed**.

Finally, applicant has not responded to the Section 112, first paragraph rejections

that were presented in the Final Office Action of 13 September 2005, and are repeated

above.  These rejections are directed to a similar issue.  There is a discrepancy present

in the instant application based on the inclusion of "HTML features" including hyperlinks

as "document content features" used to calculate authoritativeness.  This discrepancy

has not yet been remedied, and the rejections therefore stand.

### *Conclusion*

7.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Brian Goddard whose telephone number is 571-272-

4020.  The examiner can normally be reached on M-F, 9 AM - 5 PM.

Application/Control Number: 10/232,714                              Page 10
Art Unit: 2161

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Safet Metjahic can be reached on 571-272-4023.  The fax phone number for

the organization where this application or proceeding is assigned is 571-273-8300.

    Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).


bdg
01 March 2006


SAFET METJAHIC
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/232,714 | FARAHAT ET AL. |
| | Examiner | Art Unit |
| | Brian Goddard | 2161 |

| √ | Rejected | | – | (Through numeral) Cancelled | | N | Non-Elected | | A | Appeal |
|---|---|---|---|---|---|---|---|---|---|---|
| = | Allowed | | ÷ | Restricted | | I | Interference | | O | Objected |

| Final | Original | 3/1/06 | | | | | | Date | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | | | | | | | | | |
| | 2 | | | | | | | | | | |
| | 3 | | | | | | | | | | |
| | 4 | | | | | | | | | | |
| | 5 | | | | | | | | | | |
| | 6 | | | | | | | | | | |
| | 7 | | | | | | | | | | |
| | 8 | | | | | | | | | | |
| | 9 | | | | | | | | | | |
| | 10 | | | | | | | | | | |
| | 11 | | | | | | | | | | |
| | 12 | | | | | | | | | | |
| | 13 | | | | | | | | | | |
| | 14 | | | | | | | | | | |
| | 15 | | | | | | | | | | |
| | 16 | | | | | | | | | | |
| | 17 | | | | | | | | | | |
| | 18 | | | | | | | | | | |
| | 19 | | | | | | | | | | |
| | 20 | | | | | | | | | | |
| | 21 | | | | | | | | | | |
| | 22 | √ | | | | | | | | | |
| | 23 | | | | | | | | | | |
| | 24 | | | | | | | | | | |
| | 25 | | | | | | | | | | |
| | 26 | | | | | | | | | | |
| | 27 | | | | | | | | | | |
| | 28 | | | | | | | | | | |
| | 29 | | | | | | | | | | |
| | 30 | | | | | | | | | | |
| | 31 | | | | | | | | | | |
| | 32 | | | | | | | | | | |
| | 33 | | | | | | | | | | |
| | 34 | | | | | | | | | | |
| | 35 | | | | | | | | | | |
| | 36 | | | | | | | | | | |
| | 37 | | | | | | | | | | |
| | 38 | | | | | | | | | | |
| | 39 | | | | | | | | | | |
| | 40 | | | | | | | | | | |
| | 41 | | | | | | | | | | |
| | 42 | | | | | | | | | | |
| | 43 | | | | | | | | | | |
| | 44 | | | | | | | | | | |
| | 45 | | | | | | | | | | |
| | 46 | | | | | | | | | | |
| | 47 | | | | | | | | | | |
| | 48 | | | | | | | | | | |
| | 49 | | | | | | | | | | |
| | 50 | | | | | | | | | | |

| Final | Original | | | | | | Date | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 51 | | | | | | | | | | |
| | 52 | | | | | | | | | | |
| | 53 | | | | | | | | | | |
| | 54 | | | | | | | | | | |
| | 55 | | | | | | | | | | |
| | 56 | | | | | | | | | | |
| | 57 | | | | | | | | | | |
| | 58 | | | | | | | | | | |
| | 59 | | | | | | | | | | |
| | 60 | | | | | | | | | | |
| | 61 | | | | | | | | | | |
| | 62 | | | | | | | | | | |
| | 63 | | | | | | | | | | |
| | 64 | | | | | | | | | | |
| | 65 | | | | | | | | | | |
| | 66 | | | | | | | | | | |
| | 67 | | | | | | | | | | |
| | 68 | | | | | | | | | | |
| | 69 | | | | | | | | | | |
| | 70 | | | | | | | | | | |
| | 71 | | | | | | | | | | |
| | 72 | | | | | | | | | | |
| | 73 | | | | | | | | | | |
| | 74 | | | | | | | | | | |
| | 75 | | | | | | | | | | |
| | 76 | | | | | | | | | | |
| | 77 | | | | | | | | | | |
| | 78 | | | | | | | | | | |
| | 79 | | | | | | | | | | |
| | 80 | | | | | | | | | | |
| | 81 | | | | | | | | | | |
| | 82 | | | | | | | | | | |
| | 83 | | | | | | | | | | |
| | 84 | | | | | | | | | | |
| | 85 | | | | | | | | | | |
| | 86 | | | | | | | | | | |
| | 87 | | | | | | | | | | |
| | 88 | | | | | | | | | | |
| | 89 | | | | | | | | | | |
| | 90 | | | | | | | | | | |
| | 91 | | | | | | | | | | |
| | 92 | | | | | | | | | | |
| | 93 | | | | | | | | | | |
| | 94 | | | | | | | | | | |
| | 95 | | | | | | | | | | |
| | 96 | | | | | | | | | | |
| | 97 | | | | | | | | | | |
| | 98 | | | | | | | | | | |
| | 99 | | | | | | | | | | |
| | 100 | | | | | | | | | | |

| Final | Original | | | | | | Date | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 101 | | | | | | | | | | |
| | 102 | | | | | | | | | | |
| | 103 | | | | | | | | | | |
| | 104 | | | | | | | | | | |
| | 105 | | | | | | | | | | |
| | 106 | | | | | | | | | | |
| | 107 | | | | | | | | | | |
| | 108 | | | | | | | | | | |
| | 109 | | | | | | | | | | |
| | 110 | | | | | | | | | | |
| | 111 | | | | | | | | | | |
| | 112 | | | | | | | | | | |
| | 113 | | | | | | | | | | |
| | 114 | | | | | | | | | | |
| | 115 | | | | | | | | | | |
| | 116 | | | | | | | | | | |
| | 117 | | | | | | | | | | |
| | 118 | | | | | | | | | | |
| | 119 | | | | | | | | | | |
| | 120 | | | | | | | | | | |
| | 121 | | | | | | | | | | |
| | 122 | | | | | | | | | | |
| | 123 | | | | | | | | | | |
| | 124 | | | | | | | | | | |
| | 125 | | | | | | | | | | |
| | 126 | | | | | | | | | | |
| | 127 | | | | | | | | | | |
| | 128 | | | | | | | | | | |
| | 129 | | | | | | | | | | |
| | 130 | | | | | | | | | | |
| | 131 | | | | | | | | | | |
| | 132 | | | | | | | | | | |
| | 133 | | | | | | | | | | |
| | 134 | | | | | | | | | | |
| | 135 | | | | | | | | | | |
| | 136 | | | | | | | | | | |
| | 137 | | | | | | | | | | |
| | 138 | | | | | | | | | | |
| | 139 | | | | | | | | | | |
| | 140 | | | | | | | | | | |
| | 141 | | | | | | | | | | |
| | 142 | | | | | | | | | | |
| | 143 | | | | | | | | | | |
| | 144 | | | | | | | | | | |
| | 145 | | | | | | | | | | |
| | 146 | | | | | | | | | | |
| | 147 | | | | | | | | | | |
| | 148 | | | | | | | | | | |
| | 149 | | | | | | | | | | |
| | 150 | | | | | | | | | | |



| Search Notes | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/232,714 | FARAHAT ET AL. |
| | Examiner | Art Unit | |
| | Brian Goddard | 2161 | |

## SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| Prior Searches Updated 2/28/06 BG | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

## SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| EAST (USPAT, USPGPUB, EPO, JPO, IBM_TDB, Derwent) - prior searches updated | 2/28/2006 | BG |
| ACM - keyword search: authority, authoritative, document, page, content, text, language, grammar, AdaBoost, regression | 2/28/2006 | BG |
| IEEE - keyword search: same keywords as above | 2/28/2006 | BG |
| ProQuest - keyword search: same keywords as above | 2/28/2006 | BG |
| INSPEC - keyword search: same keywords as above | 2/28/2006 | BG |
| Google - keyword search: same keywords as above | 2/28/2006 | BG |
| Consulted Luke Wassum (707) | 2/28/2006 | BG |

U.S. Patent and Trademark Office

Part of Paper No.  20060301

**PATENT APPLICATION**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of

Ayman O. FARAHAT et al.                           Group Art Unit:  2161

Application No.:    10/232,714                      Examiner:    B. GODDARD

Filed:  September 3, 2002                            Docket No.:    111745

For:    SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING,
        ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS
        DOCUMENT COLLECTIONS

**AMENDMENT FILED WITH RCE**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

      In reply to the September 13, 2005 Office Action, further to the November 4, 2005

telephone interview, in conjunction with a Request for Continued Examination concurrently

filed herewith, please consider the following:

      **Amendments to the Claims** as reflected in the listing of claims; and

      **Remarks**.

Application No. 10/232,714
Xerox Docket No. D/A1707

**Amendments to the Claims**:

The following listing of claims will replace all prior versions, and listings, of claims in the application:

1. (Currently Amended)  A method for determining an authoritativeness of a document having a plurality of document content features, the method comprising:

determining a set of document content feature values of a document based on textual contents in the document; and

determining an authoritativeness for the document ~~using a trained document textual authority model~~ based on the determined set of document content feature values using a trained document textual authority model.

2. (Original)  The method of claim 1, wherein determining the set of document content feature values comprises extracting a subset of document content features from the plurality of document content features.

3. (Original)  The method of claim 1, wherein determining the set of document content feature values comprises determining the set of document content features values using one or more parsing techniques or methods.

4. (Original)  The method of claim 1, wherein determining the authoritativeness for the document comprises:

providing the set of document content feature values to the trained document textual authority model; and

determining a document textual authoritativeness value based at least on the set of document content feature values determined.

5. (Original)  The method of claim 1, wherein determining an authoritativeness for the document further comprising determining a textual authority class for the document.

Application No. 10/232,714
Xerox Docket No. D/A1707

6.      (Previously Presented)  The method of claim 1, wherein the plurality of document content features includes at least one or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features or readability indices features.

7.      (Original)  The method of claim 2, wherein extracting a subset of document content features is performed using one or more regression techniques or methods.

8.      (Original)  The method of claim 2, wherein extracting a subset of document content features is performed using one or more variable selection techniques or methods.

9.      (Original)  The method of claim 7, wherein one or more regression techniques or methods comprises a stepwise regression technique.

10.     (Original)  The method of claim 8, wherein one or more variable selection techniques or methods comprises one or more of mutual information technique and AdaBoost technique.

11.     (Original)  The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more statistical processes or techniques.

12.     (Original)  The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more metric-regression algorithms or methods.

13.     (Original)  The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using an AdaBoost algorithm model or method.

Application No. 10/232,714
Xerox Docket No. D/A1707

14.     (Currently Amended)  A machine-readable medium that provides instructions for determining the authority of a document having a plurality of document content features, instructions, which when executed by a processor, cause the processor to perform operations comprising:

determining a set of document content feature values of a document based on textual contents in the document; and

determining at least one of textual authoritativeness value or textual authority class for the document ~~using a trained document textual authority model~~ based on the determined set of document content feature values using a trained document textual authority model.

15.     (Previously Presented)  The machine-readable medium according to claim 14, wherein the plurality of document content features includes at least one or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features or readability indices features.

16.     (Original)  The machine-readable medium according to claim 14, wherein determining the textual authoritativeness value or a textual authority class for the document comprises:

extracting a plurality of document content features from each document;

determining a set of document content feature values for each document using one or more parsing techniques or methods; and

Application No. 10/232,714
Xerox Docket No. D/A1707

determining a textual authoritativeness value or a textual authority class for the document by using one or more of metric regression or boosted decision tree algorithms or methods.

17.    (Currently Amended)  A textual authority determining system that determines an authority of a document having a plurality of document content features, comprising:

a memory; and

a document textual authoritativeness value determination circuit or routine that determines at least a textual authoritativeness value for the document <u>based on textual contents in the document</u> by processing a set of document content feature values determined for a subset of document content features extracted from the plurality of document content features using one or more of metric regression or boosted decision tree algorithms or methods, ~~the document content feature values being determined based on textual contents in the document~~.

18.    (Previously Presented)  The textual authority determining system of claim 17, wherein the plurality of document content features includes at least one or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features or readability indices features.

19.    (Original)  The textual authority determining system of claim 17, further comprising a document content features extraction circuit or routine that determines a subset of document content features from the plurality of document content features using a stepwise regression process.

Application No. 10/232,714
Xerox Docket No. D/A1707

20.     (Previously Presented)  The method of claim 1, wherein determining the set of document content feature values comprises determining the set of document content feature values based solely on the textual contents in the document.

21.     (Previously Presented)  The machine-readable medium according to claim 14, wherein determining the set of document content feature values comprises determining the set of document content feature values based solely on the textual contents in the document.

22.     (Previously Presented)  The textual authority determining system of claim 17, wherein the document textual authoritativeness value determination circuit or routine determines the document content feature values based solely on the textual contents in the document.

Application No. 10/232,714
Xerox Docket No. D/A1707

## REMARKS

Claims 1-22 are pending in this application.  By this Amendment, claims 1, 14  and 17 are amended.  Reconsideration of the application in light of the foregoing claim amendments and following remarks is respectfully requested.

Applicants thank Examiner Goddard for the courtesy extended to Applicants' representative, Mr. Luo, during the November 4, 2005 telephone interview.  As agreed to during the telephone interview, the above-outlined claim amendments overcome all outstanding claim rejections and place the application in condition for allowance.

In view of the foregoing, it is respectfully submitted that this application is in condition for allowance.  Favorable reconsideration and prompt allowance of the claims are earnestly solicited.

Should the Examiner believe that anything further would be desirable in order to place this application in even better condition for allowance, the Examiner is invited to contact the undersigned at the telephone number set forth below.

Respectfully submitted,

James A. Oliff
Registration No. 27,075

Gang Luo
Registration No. 50,559

JAO:GXL/sqb
Attachment:
        Request for Continued Examination
Date:  November 22, 2005

**OLIFF & BERRIDGE, PLC**
**P.O. Box 19928**
**Alexandria, Virginia 22320**
**Telephone: (703) 836-6400**

DEPOSIT ACCOUNT USE
AUTHORIZATION
Please grant any extension
necessary for entry;
Charge any fee due to our
Deposit Account No. 24-0037

-7-

Xerox Docket No. D/A1707

**PATENT APPLICATION**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of

Ayman O. FARAHAT et al.                          Group Art Unit:   2161

Application No.: 10/232,714                       Examiner:    B. GODDARD

Filed: September 3, 2002                           Docket No.:   111745

For:    SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION
        AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT
        COLLECTIONS

**LARGE ENTITY REQUEST FOR**
**CONTINUED EXAMINATION UNDER 37 C.F.R. §1.114**

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

  In accordance with the provisions of 37 C.F.R. §1.114, Applicant(s) hereby request(s)
continued examination.

  ☒ Applicants further request entry and consideration of the attached submission.

  The above-identified application was filed on or after June 8, 1995.  Thus, entry is proper
under 37 C.F.R. §1.114(d).

  Please charge **Deposit Account No. 24-0037** in the amount of ☒ $790.00 as payment of the
fees set forth in 37 C.F.R. §1.17(e).  The Commissioner is hereby authorized to charge any additional
fees or credit any overpayment associated with this communication to **Deposit Account No. 24-0037**.
Two duplicate copies of this page are enclosed.

Respectfully submitted,

James A. Oliff
Registration No. 27,075

Gang Luo
Registration No. 50,559

11/23/2005 SSESHE1  00000034 240037   10232714
01 FC:1801      790.00 DA

JAO:GXL/sqb

Date:  November 22, 2005

**OLIFF & BERRIDGE, PLC**
**P.O. Box 19928**
**Alexandria, Virginia 22320**
**Telephone: (703) 836-6400**

DEPOSIT ACCOUNT USE
AUTHORIZATION
Please grant any extension
necessary for entry;
Charge any fee due to our
Deposit Account No. 24-0037

PTO/SB/06 (12-04)
Approved for use through 7/31/2006. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875    Effective December 8, 2004

Application or Docket Number

## APPLICATION AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE ($) | SMALL ENTITY FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY FEE ($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 150.00 | | N/A | 300.00 |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | $250 | | N/A | $500 |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | $100 | | N/A | $200 |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | | X$ 25 | | OR | X$50 | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | | X100 | | | X200 | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $250 ($125 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | +180= | | | +360= | |
| | | | TOTAL | | | TOTAL | |

* If the difference in column 1 is less than zero, enter "0" in column 2.

## APPLICATION AS AMENDED – PART II

### AMENDMENT A

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE ($) | SMALL ENTITY ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus ** | = | X$ 25 | | OR | X$50 | |
| Independent (37 CFR 1.16(h)) | * | Minus *** | = | X100 | | OR | X200 | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | +180= | | OR | +360= | |
| | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

### AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE ($) | SMALL ENTITY ADDITIONAL FEE ($) | OR | OTHER THAN SMALL ENTITY RATE ($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | 22 | Minus ** 19 | = | X$ 25 | | OR | X$50 | |
| Independent (37 CFR 1.16(h)) | 3 | Minus *** 3 | = | X100 | | OR | X200 | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | +180= | | OR | +360= | |
| | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2*

## .CLAIMS ONLY

Application Number 10232 714

Filing Date

Applicant(s)

* May be used for additional claims or amendments

| CLAIMS | AS FILED | | AFTER FIRST AMENDMENT | | AFTER SECOND AMENDMENT | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Indep | Depend | Indep | Depend | Indep | Depend | | Indep | Depend | Indep | Depend | Indep | Depend |
| 1 | | | | | | | 51 | | | | | | |
| 2 | | | | | | | 52 | | | | | | |
| 3 | | | | | | | 53 | | | | | | |
| 4 | | | | | | | 54 | | | | | | |
| 5 | | | | | | | 55 | | | | | | |
| 6 | | | | | | | 56 | | | | | | |
| 7 | | | | | | | 57 | | | | | | |
| 8 | | | | | | | 58 | | | | | | |
| 9 | | | | | | | 59 | | | | | | |
| 10 | | | | | | | 60 | | | | | | |
| 11 | | | | | | | 61 | | | | | | |
| 12 | | | | | | | 62 | | | | | | |
| 13 | | | | | | | 63 | | | | | | |
| 14 | | | | | | | 64 | | | | | | |
| 15 | | | | | | | 65 | | | | | | |
| 16 | | | | | | | 66 | | | | | | |
| 17 | | | | | | | 67 | | | | | | |
| 18 | | | | | | | 68 | | | | | | |
| 19 | | | | | | | 69 | | | | | | |
| 20 | | | | | | | 70 | | | | | | |
| 21 | | | | | | | 71 | | | | | | |
| 22 | | | | | | | 72 | | | | | | |
| 23 | | | | | | | 73 | | | | | | |
| 24 | | | | | | | 74 | | | | | | |
| 25 | | | | | | | 75 | | | | | | |
| 26 | | | | | | | 76 | | | | | | |
| 27 | | | | | | | 77 | | | | | | |
| 28 | | | | | | | 78 | | | | | | |
| 29 | | | | | | | 79 | | | | | | |
| 30 | | | | | | | 80 | | | | | | |
| 31 | | | | | | | 81 | | | | | | |
| 32 | | | | | | | 82 | | | | | | |
| 33 | | | | | | | 83 | | | | | | |
| 34 | | | | | | | 84 | | | | | | |
| 35 | | | | | | | 85 | | | | | | |
| 36 | | | | | | | 86 | | | | | | |
| 37 | | | | | | | 87 | | | | | | |
| 38 | | | | | | | 88 | | | | | | |
| 39 | | | | | | | 89 | | | | | | |
| 40 | | | | | | | 90 | | | | | | |
| 41 | | | | | | | 91 | | | | | | |
| 42 | | | | | | | 92 | | | | | | |
| 43 | | | | | | | 93 | | | | | | |
| 44 | | | | | | | 94 | | | | | | |
| 45 | | | | | | | 95 | | | | | | |
| 46 | | | | | | | 96 | | | | | | |
| 47 | | | | | | | 97 | | | | | | |
| 48 | | | | | | | 98 | | | | | | |
| 49 | | | | | | | 99 | | | | | | |
| 50 | | | | | | | 100 | | | | | | |
| Total Indep | | | | | | | Total Indep | | | | | | |
| Total Depend | | | | | | | Total Depend | | | | | | |
| Total Claims | | | | | | | Total Claims | | | | | | |



### UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

| | | |
|---|---|---|
| 27074 | 7590 | 11/09/2005 |

OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA, VA  22320

| EXAMINER |
|---|
| GODDARD, BRIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2161 | |

DATE MAILED: 11/09/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| | Application No. | Applicant(s) |
|---|---|---|
| ***Interview Summary*** | 10/232,714 | FARAHAT ET AL. |
| | Examiner | Art Unit | |
| | Brian Goddard | 2161 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Brian Goddard_.                              (3)_____.

(2) _Gang Luo_.                                   (4)_____.

Date of Interview: _04 November 2005_.

Type:  a)☒ Telephonic  b)☐ Video Conference
       c)☐ Personal [copy given to: 1)☐ applicant  2)☐ applicant's representative]

Exhibit shown or demonstration conducted:  d)☐ Yes  e)☒ No.
   If Yes, brief description: _____.

Claim(s) discussed: _1_.

Identification of prior art discussed: _Chakrabarti (US 6,336,112) & Saund (US 5,687,364)_.

Agreement with respect to the claims f)☒ was reached.  g)☐ was not reached.  h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _See Continuation Sheet_.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

SAFET METJAHIC
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER

Examiner's signature, if required

Examiner Note:  You must sign this form unless it is an Attachment to a signed Office action.

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
**Paragraph (b)**
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR §1.2 Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
(The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

**Continuation Sheet (PTOL-413)**                                    **Application No.   10/232,714**

Continuation of Substance of Interview including description of the general nature of what was agreed to if an
agreement was reached, or any other comments:

The claimed subject matter was discussed in light of the prior art, as well as the examiner's interpretations of both.
Applicants' representative presented a proposed amendment (specifically to claim 1, but presumably for all
independent claims) to clarify the determination of an authoritativeness for a document.  Specifically, the proposed
amendment would read, "determining an authoritativeness for the document based on the determined set of document
content feature values using a trained document textual authority model."  The examiner agreed that such an
amendment, if submitted formally, would distinguish from the Chakrabarti/Saund combination, but would require further
search and consideration.



**UNITED STATES PATENT AND TRADEMARK OFFICE**



UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

27074       7590       09/13/2005

OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA, VA  22320

| EXAMINER |
|---|
| GODDARD, BRIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2161 | |

DATE MAILED: 09/13/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

| **Office Action Summary** | **Application No.** 10/232,714 | **Applicant(s)** FARAHAT ET AL. |
|---|---|---|
| | **Examiner** Brian Goddard | **Art Unit** 2161 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>23 June 2005</u>.

2a)☒ This action is **FINAL**.    2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) <u>1-22</u> is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) <u>1-22</u> is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on <u>03 September 2002</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All  b)☐ Some * c)☐ None of:

      1.☐ Certified copies of the priority documents have been received.

      2.☐ Certified copies of the priority documents have been received in Application No. _____.

      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☐ Information Disclosure Statement (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date _____.

4)☐ Interview Summary (PTO-413)
    Paper(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____.

Application/Control Number: 10/232,714                                      Page 2
Art Unit: 2161

## DETAILED ACTION

1.     This communication is responsive to the Amendment filed 23 June 2005.

2.     Claims 1-22 are currently pending in this application.  Claims 1, 14 and 17 are

independent claims.  In the Amendment filed 23 June 2005, claims 20-22 were added

and claims 1, 6, 14, 15, 17 and 18 were amended.  This action is made Final.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of
> making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the
> art to which it pertains, or with which it is most nearly connected, to make and use the same and shall
> set forth the best mode contemplated by the inventor of carrying out his invention.

3.     Claims 20-22 are rejected under 35 U.S.C. 112, first paragraph, as failing to

comply with the written description requirement.  The claim(s) contains subject matter

which was not described in the specification in such a way as to reasonably convey to

one skilled in the relevant art that the inventor(s), at the time the application was filed,

had possession of the claimed invention.

The limitations added in new claims 20-22 constitute new matter that does not

have proper written description in the specification as originally filed.  Namely, claims

20-22 recite "determining the set of document content feature values based **solely** on

the textual contents in the document." (emphasis added)  Figure 3 (element 322) and its

corresponding portion of the instant specification describe document content feature

values based on HTML features (hyperlinks, tables, images, page color).  HTML

Application/Control Number: 10/232,714                                              Page 3
Art Unit: 2161

features are not "textual" contents of a document.  The specification as originally filed

does not describe or state that the set of document content feature values is based

**solely** on the textual contents in the document.


### *Claim Rejections - 35 USC § 103*

The text of those sections of Title 35, U.S. Code not included in this action can

be found in a prior Office action.

4.      Claims 1-9, 11-12 and 14-22 are rejected under 35 U.S.C. 103(a) as being

unpatentable over U.S. Patent No. 6,336,112 to Chakrabarti et al. in view of U.S. Patent

No. 5,687,364 to Saund et al.

Referring to claim 1, Chakrabarti discloses a method for determining an

authoritativeness of a document substantially as claimed.  See Figures 2-9 and the

corresponding portions of Chakrabarti's specification for this disclosure.  In particular,

Chakrabarti teaches a method [See Fig. 9] for determining an authoritativeness of a

document having a plurality of document content features [attributes], the method

comprising:

determining a set of document content feature values [attribute values (i.e.

keywords, terms, topics) - See Column 10, lines 19-58 and Fig. 2] of a document based

on textual contents in the document [See Fig. 13: 'Frame' is populated by adding

documents having textual contents/attributes corresponding to the Frame attributes];

and

Application/Control Number: 10/232,714                                    Page 4
Art Unit: 2161

determining an authoritativeness for the document [See Abstract, Summary &

Fig. 9] using a document textual authority model based on the determined set of

document content feature values [See Column 10, lines 19-58 and Fig. 9 (Details in

Figs. 12-18)].

Chakrabarti does not explicitly teach that the document textual authority model is

"trained" as claimed.  Saund discloses a system and method similar to that of

Chakrabarti, including determining a set of document content feature values [a lexicon

that indicates topical content (See Column 3, line 30 – Column 4, line 45)], training the

system to created a trained document textual authority model [See Abstract, Summary,

etc.], and using the trained model based on the determined set of document content

feature values to predict topical content and association strength values [See Column 4,

lines 20-63 and Column 5, line 21 – Column 6, line 18].

It would have been obvious to one of ordinary skill in the art at the time the

invention was made to add Saund's training functionality and usage of the trained

document model to the system and method of Chakrabarti, using Saund's trained

document model as the topical model of Chakrabarti's methodology.  One would have

been motivated to do so in order to provide a more flexible and adaptive approach to

developing the model with less user interaction, as described by Saund.

Referring to claim 2, Chakrabarti/Saund teaches the method of claim 1, as

above, wherein determining the set of document content feature values comprises

extracting a subset of document content features [Saund: lexicon (See Column 3, line

Application/Control Number: 10/232,714                                    Page 5
Art Unit: 2161

30 – Column 4, line 45)] from the plurality of document content features [the entire text of the document] as claimed.

Referring to claim 3, Chakrabarti/Saund teaches the method of claim 1, as above, wherein determining the set of document content feature values comprises…using one or more parsing techniques or methods [Chakrabarti: See Fig. 13; Saund: See Step 76] as claimed.

Referring to claim 4, Chakrabarti/Saund teaches the method of claim 1, as above, wherein determining the authoritativeness for the document comprises: providing the set of document content feature values to the trained document textual authority model [Chakrabarti: See Fig. 9 in light of combination in claim 1]; and determining a document textual authoritativeness value [Chakrabarti: 'authority value' or 'authority score']…as claimed.

Referring to claim 5, Chakrabarti/Saund teaches the method of claim 1, as above, wherein determining an authoritativeness for the document further comprises determining a textual authority class for the document [Chakrabarti: 'classification' or 'category'; Saund: 'topic'] as claimed.

Referring to claim 6, Chakrabarti/Saund teaches the method of claim 1, as above, wherein the plurality of document content features includes…[Saund: See Column 3, line 30 – Column 4, line 45 and Column 5, line 21 – Column 6, line 18] as claimed.

Referring to claims 7-9, Chakrabarti/Saund teaches the method of claim 2, as above, wherein extracting a subset of document content features is performed using a

Application/Control Number: 10/232,714                                           Page 6
Art Unit: 2161

stepwise regression technique and a variable selection technique [Saund: See Column

3, line 15 – Column 5, line 20] as claimed.

Claims 11 and 12 are rejected on substantially the same basis as claims 7-9

above.  See the discussions regarding claims 1-9, as well as the portions of Saund cited

therein, for this disclosure.

Claim 14 is rejected on the same basis as claim 1.  See the discussion regarding

claim 1 above for this disclosure.

Claim 15 is rejected on the same basis as claim 6, in light of the basis for claim

14.  See the discussions regarding claims 1, 6 and 14 above for this disclosure.

Claim 16 is rejected on the same basis as claims 2 and 3, in light of the basis for

claim 14.  See the discussions regarding claims 1-3 and 14 above for this disclosure.

Claim 17 is rejected on the same basis as claims 2 and 12.  See the discussions

regarding claims 1-2 and 12 for the details of this disclosure.

Claim 18 is rejected on the same basis as claim 6, in light of the basis for claim

17.  See the discussions regarding claims 1-2, 6, 12 and 17 above for this disclosure.

Claim 19 is rejected on the same basis as claim 9, in light of the basis for claim

17.  See the discussions regarding claims 1-2, 9, 12 and 17 above for this disclosure.

Referring to claims 20-22, Chakrabarti/Saund teaches the method of claim 1,

medium of claim 14, and system of claim 17, as above, wherein determining the set of

document content feature values [See above] comprises determining the set of

document content feature values based solely on the textual contents in the document

[Chakrabarti: See Column 10, lines 19-58 and Figs. 2 & 13:  'Frame' is populated by

Application/Control Number: 10/232,714                                    Page 7
Art Unit: 2161

adding documents having textual contents/attributes corresponding to the Frame

attributes;  Saund: lexicon (See Column 3, line 30 – Column 4, line 45)] as claimed.


5.      Claims 10 and 13 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Chakrabarti in view of Saund as applied to claims 4 and 8 above, and further in

view of the article entitled "Experiments with a New Boosting Algorithm" by Freund et al.

        Referring to both claims 10 and 13, neither Chakrabarti nor Saund expressly use

the AdaBoost technique as claimed.  However, Freund discloses methods similar to

those of Chakrabarti and Saund, wherein the learning process uses the AdaBoost

algorithm/technique in the classification process.  See the Abstract and the entirety of

the article for this disclosure.  It would have been obvious to one of ordinary skill in the

art at the time the invention was made to add Freund's AdaBoost algorithm to the

systems and methods of Chakrabarti/Saund to obtain the invention as claimed.  One

would have been motivated to do so in order to reduce error and improve the learning

model, as disclosed by Freund.


                              ***Response to Arguments***

6.      Applicant's arguments with respect to claims 1-22 have been considered but are

moot in view of the new ground(s) of rejection.

        Referring to applicant's remarks on pages 7-9 regarding the Section 103

rejections of claims 1-19:  Applicant argued that Chakrabarti, Saund and Freund do not

disclose or suggest determining a set of document content feature values of a

Application/Control Number: 10/232,714                                                    Page 8
Art Unit: 2161

document based on textual contents in the document, and determining an

authoritativeness for the document...based on the determined set of document content

feature values.

The examiner disagrees for the following reasons:

First, applicant's arguments do not properly reflect the language of the claims.  In

response to applicant's argument that the references fail to show certain features of

applicant's invention, it is noted that the features upon which applicant relies (i.e., that

determination of an authoritativeness for the document is "based on the determined set

of document content feature values") are not recited in the rejected claim(s).  Although

the claims are interpreted in light of the specification, limitations from the specification

are not read into the claims.  See *In re Van Geuns*, 988 F.2d 1181, 26 USPQ2d 1057

(Fed. Cir. 1993).  Claim 1 actually states "determining an authoritativeness for the

document **using a trained document textual authority model** based on the

determined set of document content feature values." (emphasis added)  The examiner

has interpreted this to mean that the "trained document textual authority model" is

based on the determined set of document content feature values, and the

authoritativeness for a document is determined "using" the "trained document textual

authority model."  Applicant has failed to address this key intermediate element required

by the claims.

In the combination of Chakrabarti and Saund, both Chakrabarti and Saund

determine a set of document content feature values of a document based on textual

contents in the document.  Chakrabarti describes populating (and

Application/Control Number: 10/232,714                                                  Page 9
Art Unit: 2161

updating/repopulating) 'Frames' (a classification hierarchy of topics) with documents based on the textual content of documents matching the attributes of the Frames. Saund discloses a lexicon that is a set of document content feature values of a document based on textual contents in the document.  Chakrabarti's Frames constitute a "textual authority model" which, when combined with Saund is a "trained document textual authority model."  Chakrabarti also discloses determining an authoritativeness value for the document "using" the Frames (model) in Figures 9 & 12-18 and the corresponding portions of the specification.

The examiner does not dispute or deny the fact that Chakrabarti bases the determination of authoritativeness in part on hyperlinks to the document and what other documents say about the document.  Furthermore, the examiner points out that even applicant's specification bases the determination of authoritativeness in part on this hyperlinking at least in one embodiment (See instant Figures 9 & 10 and corresponding portions of instant specification).  However, one cannot deny the fact that Chakrabarti also bases the determination of authoritativeness in part on the 'Frames' and textual contents of the document as well.  This is absolutely and necessarily the case as shown in Figures 9 and 12-18 of Chakrabarti.  Applicant's assertion that "Chakrabarti discloses that there are only two approaches of determining the authoritativeness value of a document: (1) based on hyperlinks to the document, and (2) based on what other documents say about the document" is simply unfounded in Chakrabarti's disclosure. Chakrabarti does not state this at all.  Applicant's arguments are speculative and

Application/Control Number: 10/232,714                                    Page 10
Art Unit: 2161

piecemeal, failing to consider the entirety of Chakrabarti's disclosure and the

combination as a whole.

Therefore, the examiner maintains that the combination obviates the invention **as

claimed.**


### Conclusion

7.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.  Namely, the cited U.S. Patent documents are considered

pertinent to authoritativeness being based on textual content of a document.


8.      Applicant's amendment necessitated the new ground(s) of rejection presented in

this Office action.  Accordingly, **THIS ACTION IS MADE FINAL**.  See MPEP

§ 706.07(a).  Applicant is reminded of the extension of time policy as set forth in 37

CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the date of this final action.

Application/Control Number: 10/232,714                                    Page 11
Art Unit: 2161

9.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to Brian Goddard whose telephone number is 571-272-4020.  The examiner can normally be reached on M-F, 9 AM - 5 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Safet Metjahic can be reached on 571-272-4023.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

        Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free).

bdg
2 September 2005

SAFET METJAHIC
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| | | 10/232,714 | FARAHAT ET AL. |

***Notice of References Cited***

| Examiner | Art Unit | |
|---|---|---|
| Brian Goddard | 2161 | Page 1 of 1 |

## U.S. PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-6,112,203 | 08-2000 | Bharat et al. | 707/5 |
| | B | US-2001/0044810 | 11-2001 | Timmons, Michael | 707/513 |
| | C | US-6,560,600 | 05-2003 | Broder, Andrei Z. | 707/7 |
| | D | US- | | | |
| | E | US- | | | |
| | F | US- | | | |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

## FOREIGN PATENT DOCUMENTS

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

## NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    Notice of References Cited                    Part of Paper No. 20050902

| | | |
|---|---|---|
| *Index of Claims* | Application/Control No. 10/232,714 | Applicant(s)/Patent under Reexamination FARAHAT ET AL. |
| | Examiner Brian Goddard | Art Unit 2161 |

| √ | Rejected | – | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | + | Restricted | I | Interference | O | Objected |

| Claim Final | Claim Original | Date 9/2/05 | | | | | | | Claim Final | Claim Original | Date | | | | | | | Claim Final | Claim Original | Date | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | | | | | | | | 51 | | | | | | | | | | 101 | | | | | | | |
| | 2 | | | | | | | | | 52 | | | | | | | | | | 102 | | | | | | | |
| | 3 | | | | | | | | | 53 | | | | | | | | | | 103 | | | | | | | |
| | 4 | | | | | | | | | 54 | | | | | | | | | | 104 | | | | | | | |
| | 5 | | | | | | | | | 55 | | | | | | | | | | 105 | | | | | | | |
| | 6 | | | | | | | | | 56 | | | | | | | | | | 106 | | | | | | | |
| | 7 | | | | | | | | | 57 | | | | | | | | | | 107 | | | | | | | |
| | 8 | | | | | | | | | 58 | | | | | | | | | | 108 | | | | | | | |
| | 9 | | | | | | | | | 59 | | | | | | | | | | 109 | | | | | | | |
| | 10 | | | | | | | | | 60 | | | | | | | | | | 110 | | | | | | | |
| | 11 | | | | | | | | | 61 | | | | | | | | | | 111 | | | | | | | |
| | 12 | | | | | | | | | 62 | | | | | | | | | | 112 | | | | | | | |
| | 13 | | | | | | | | | 63 | | | | | | | | | | 113 | | | | | | | |
| | 14 | | | | | | | | | 64 | | | | | | | | | | 114 | | | | | | | |
| | 15 | | | | | | | | | 65 | | | | | | | | | | 115 | | | | | | | |
| | 16 | | | | | | | | | 66 | | | | | | | | | | 116 | | | | | | | |
| | 17 | | | | | | | | | 67 | | | | | | | | | | 117 | | | | | | | |
| | 18 | | | | | | | | | 68 | | | | | | | | | | 118 | | | | | | | |
| | 19 | | | | | | | | | 69 | | | | | | | | | | 119 | | | | | | | |
| | 20 | | | | | | | | | 70 | | | | | | | | | | 120 | | | | | | | |
| | 21 | | | | | | | | | 71 | | | | | | | | | | 121 | | | | | | | |
| | 22 | √ | | | | | | | | 72 | | | | | | | | | | 122 | | | | | | | |
| | 23 | | | | | | | | | 73 | | | | | | | | | | 123 | | | | | | | |
| | 24 | | | | | | | | | 74 | | | | | | | | | | 124 | | | | | | | |
| | 25 | | | | | | | | | 75 | | | | | | | | | | 125 | | | | | | | |
| | 26 | | | | | | | | | 76 | | | | | | | | | | 126 | | | | | | | |
| | 27 | | | | | | | | | 77 | | | | | | | | | | 127 | | | | | | | |
| | 28 | | | | | | | | | 78 | | | | | | | | | | 128 | | | | | | | |
| | 29 | | | | | | | | | 79 | | | | | | | | | | 129 | | | | | | | |
| | 30 | | | | | | | | | 80 | | | | | | | | | | 130 | | | | | | | |
| | 31 | | | | | | | | | 81 | | | | | | | | | | 131 | | | | | | | |
| | 32 | | | | | | | | | 82 | | | | | | | | | | 132 | | | | | | | |
| | 33 | | | | | | | | | 83 | | | | | | | | | | 133 | | | | | | | |
| | 34 | | | | | | | | | 84 | | | | | | | | | | 134 | | | | | | | |
| | 35 | | | | | | | | | 85 | | | | | | | | | | 135 | | | | | | | |
| | 36 | | | | | | | | | 86 | | | | | | | | | | 136 | | | | | | | |
| | 37 | | | | | | | | | 87 | | | | | | | | | | 137 | | | | | | | |
| | 38 | | | | | | | | | 88 | | | | | | | | | | 138 | | | | | | | |
| | 39 | | | | | | | | | 89 | | | | | | | | | | 139 | | | | | | | |
| | 40 | | | | | | | | | 90 | | | | | | | | | | 140 | | | | | | | |
| | 41 | | | | | | | | | 91 | | | | | | | | | | 141 | | | | | | | |
| | 42 | | | | | | | | | 92 | | | | | | | | | | 142 | | | | | | | |
| | 43 | | | | | | | | | 93 | | | | | | | | | | 143 | | | | | | | |
| | 44 | | | | | | | | | 94 | | | | | | | | | | 144 | | | | | | | |
| | 45 | | | | | | | | | 95 | | | | | | | | | | 145 | | | | | | | |
| | 46 | | | | | | | | | 96 | | | | | | | | | | 146 | | | | | | | |
| | 47 | | | | | | | | | 97 | | | | | | | | | | 147 | | | | | | | |
| | 48 | | | | | | | | | 98 | | | | | | | | | | 148 | | | | | | | |
| | 49 | | | | | | | | | 99 | | | | | | | | | | 149 | | | | | | | |
| | 50 | | | | | | | | | 100 | | | | | | | | | | 150 | | | | | | | |

Part of Paper No.  20050902



***Search Notes***

| Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|
| 10/232,714 | FARAHAT ET AL. |
| Examiner | Art Unit | |
| Brian Goddard | 2161 | |

| SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| Prior searches Updated 9/1/05 BG | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| SEARCH NOTES (INCLUDING SEARCH STRATEGY) | | |
|---|---|---|
| | DATE | EXMR |
| EAST (prior searched updated) - see attached search history | 9/1/2005 | BG |
| | | |
| | | |
| | | |
| | | |
| | | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |
| | | | |
| | | | |
| | | | |

Part of Paper No. 20050902

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| L4 | 97 | ((authority or authoritativ$8 or importance or quality) near1 (lexic$4 or content or language or terminology)) with (document or page) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 10:15 |
| L5 | 54 | L4 and @ad<="20020517" | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 10:16 |
| L6 | 10 | L5 and (trained or training or learning) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 10:04 |
| L7 | 91 | ((importance or quality) near1 (lexic$4 or content or language or terminology)) with (document or page) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 10:16 |
| L8 | 52 | L7 and @ad<="20020517" | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 10:16 |
| L9 | 851 | ((importance or quality) with (lexic$4 or content or language or terminology)) with (document or page) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 10:17 |
| L10 | 32 | ((importance or quality) near1 (document or page)) near2 (lexic$4 or content or language or terminology) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 10:17 |
| L11 | 15 | L10 and @ad<="20020517" | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 10:18 |
| L12 | 19 | L8 and (learn$4 or trained or training or train or model) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 11:09 |
| S1 | 9 | ("6285999" "6112202" "6336112" "5884305" "6334131" "6263351" "5278980" "5442778" "6178417").did. | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:44 |
| S2 | 1 | "5687364".did. | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:42 |

| S3 | 7 | ((document near2 authoritative$5) with content) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:46 |
|---|---|---|---|---|---|---|
| S4 | 10 | ((document near2 authoritative$5) same content) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:49 |
| S5 | 3 | S4 not S3 | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:46 |
| S6 | 2 | (document near2 (authoritative$5 or quality)) and (pars$3 near2 text) and (((text or content) near2 features) or (feature near1 values)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:57 |
| S7 | 909 | (document near1 (authoritative$5 or quality)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:57 |
| S8 | 27 | S7 and (pars$3 near2 text) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:57 |
| S9 | 26 | S8 and (rank$3 or order$3) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:57 |
| S10 | 20 | S9 and @ad<="20020517" | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 13:52 |
| S11 | 60 | (document with rank$3) and (pars$3 near2 text) and (trained or training or learning) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 14:44 |
| S12 | 9 | S11 and regression | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 14:21 |
| S13 | 10 | (document with rank$3) and (parse? or parsing) and (trained or training or learning) and (((metric or stepwise or step?wise) near1 regression) or boost or adaboost) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:03 |
| S14 | 266 | (((metric or stepwise or step?wise) near1 regression) or adaboost) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:03 |

| S15 | 7 | S14 and (rank$3 near3 (document or object)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:04 |
|-----|-----|-----|-----|-----|-----|-----|
| S16 | 9 | S14 and ((rank$3 or quality or authoritativ$5) near3 (document or object)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:05 |
| S17 | 10970 | (707/1 707/2 707/3 707/4 707/5).ccls. | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:44 |
| S18 | 790 | S17 and ((document or page) near2 (rank$3 or authoritativ$6 or importance or quality)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:45 |
| S19 | 284 | S18 and (trained or training or learning or boost or adaboost or ((metric or stepwise or step?wise) near1 regression)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:47 |
| S20 | 191 | S19 and ((text or content or document or page) near3 (parse? or parsing or extract$3 or feature)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:49 |
| S21 | 144 | S20 and ((rank$3 or order$3 or score? or scoring or authoritativeness) near1 (document or page)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:50 |
| S22 | 113 | S21 and @ad<="20020517" | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:50 |
| S23 | 1797 | (authority or authoritativ$8) with (lexic$4 or content or language or terminology) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 09:57 |
| S24 | 68 | S23 and ((authority or authoritativ$8) near1 (page or document or paper or file)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/01 15:44 |
| S25 | 39 | S24 and @ad<="20020517" | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/09/02 10:04 |



**PATENT APPLICATION**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of

Ayman O. FARAHAT et al.

Application No.:   10/232,714

Filed:  September 3, 2002

Group Art Unit:  2161

Examiner:      B. Goddard

Docket No.:   111745

For:   SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

<u>**AMENDMENT**</u>

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

   In reply to the May 6, 2005 Office Action, please consider the following:

   **Amendments to the Claims** as reflected in the listing of claims; and

   **Remarks**.

Application No. 10/232,714
Xerox Docket No. D/A1707

**Amendments to the Claims**:

The following listing of claims will replace all prior versions, and listings, of claims in the application:

1.      (Currently Amended)  A method for determining an authoritativeness of a document having a plurality of document content features, the method comprising:

determining a set of document content feature values of a document based on textual contents in the document; and

determining an authoritativeness for the document using a trained document textual authority model based on the determined set of document content feature values.

2.      (Original)  The method of claim 1, wherein determining the set of document content feature values comprises extracting a subset of document content features from the plurality of document content features.

3.      (Original)  The method of claim 1, wherein determining the set of document content feature values comprises determining the set of document content features values using one or more parsing techniques or methods.

4.      (Original)  The method of claim 1, wherein determining the authoritativeness for the document comprises:

providing the set of document content feature values to the trained document textual authority model; and

determining a document textual authoritativeness value based at least on the set of document content feature values determined.

5.      (Original)  The method of claim 1, wherein determining an authoritativeness for the document further comprising determining a textual authority class for the document.

Application No. 10/232,714
Xerox Docket No. D/A1707

6.     (Currently Amended)  The method of claim 1, wherein the plurality of document content features includes at least ~~some of~~one or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features ~~and~~or readability indices features.

7.     (Original)  The method of claim 2, wherein extracting a subset of document content features is performed using one or more regression techniques or methods.

8.     (Original)  The method of claim 2, wherein extracting a subset of document content features is performed using one or more variable selection techniques or methods.

9.     (Original)  The method of claim 7, wherein one or more regression techniques or methods comprises a stepwise regression technique.

10.    (Original)  The method of claim 8, wherein one or more variable selection techniques or methods comprises one or more of mutual information technique and AdaBoost technique.

11.    (Original)  The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more statistical processes or techniques.

12.    (Original)  The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more metric-regression algorithms or methods.

13.    (Original)  The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using an AdaBoost algorithm model or method.

Application No. 10/232,714
Xerox Docket No. D/A1707

14.     (Currently Amended)  A machine-readable medium that provides instructions for determining the authority of a document having a plurality of document content features, instructions, which when executed by a processor, cause the processor to perform operations comprising:

determining a set of document content feature values of a document based on textual contents in the document; and

determining at least one of textual authoritativeness value or textual authority class for the document using a trained document textual authority model based on the determined set of document content feature values.

15.     (Currently Amended)  The machine-readable medium according to claim 14, wherein the plurality of document content features includes at least some ofone or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features andor readability indices features.

16.     (Original)  The machine-readable medium according to claim 14, wherein determining the textual authoritativeness value or a textual authority class for the document comprises:

extracting a plurality of document content features from each document;

determining a set of document content feature values for each document using one or more parsing techniques or methods; and

determining a textual authoritativeness value or a textual authority class for the document by using one or more of metric regression or boosted decision tree algorithms or methods.

Application No. 10/232,714
Xerox Docket No. D/A1707

17.     (Currently Amended)  A textual authority determining system that determines an authority of a document having a plurality of document content features, comprising:

a memory; and

a document textual authoritativeness value determination circuit or routine that determines at least a textual authoritativeness value for the document by processing a set of document content feature values determined for a subset of document content features extracted from the plurality of document content features using one or more of metric regression or boosted decision tree algorithms or methods, the document content feature values being determined based on textual contents in the document.

18.     (Currently Amended)  The textual authority determining system of claim 17, wherein the plurality of document content features includes at least some ofone or more question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features andor readability indices features.

19.     (Original)  The textual authority determining system of claim 17, further comprising a document content features extraction circuit or routine that determines a subset of document content features from the plurality of document content features using a stepwise regression process.

20.     (New)  The method of claim 1, wherein determining the set of document content feature values comprises determining the set of document content feature values based solely on the textual contents in the document.

Application No. 10/232,714
Xerox Docket No. D/A1707

21.    (New)  The machine-readable medium according to claim 14, wherein determining the set of document content feature values comprises determining the set of document content feature values based solely on the textual contents in the document.

22.    (New)  The textual authority determining system of claim 17, wherein the document textual authoritativeness value determination circuit or routine determines the document content feature values based solely on the textual contents in the document.

Application No. 10/232,714
Xerox Docket No. D/A1707

### REMARKS

Claims 1-22 are pending in this application.  By this Amendment, claims 1, 6, 14, 15, 17 and 18 are amended, and claims 20-22 are added.  Reconsideration of the application in light of the foregoing claim amendments and following remarks is respectfully requested.

Applicants thank Examiner Goddard for the courtesy extended to Applicants' representative, Mr. Luo, during the June 15, 2005 personal interview.  The substance of the personal interview is incorporated in the following remarks.

The Office Action rejects claims 6, 15 and 18 under 35 U.S.C. §112, second paragraph.  Claims 6, 15 and 18 are amended for better clarity.  Accordingly, withdrawal of the rejection of claims 6, 15 and 18 under 35 U.S.C. §112, second paragraph is respectfully requested.

The Office Action rejects claims 1-9, 11, 12 and 14-19 under 35 U.S.C. §103(a) over U.S. Patent No. 6,336,112 to Chakrabarti et al. ("Chakrabarti") in view of U.S. Patent No. 5,687,364 to Saund et al.; and rejects claims 10 and 13 under 35 U.S.C. §103(a) over Chakrabarti in view of Saund and further in view of the article entitled "Experiments with A New Boosting Algorithm" by Freund et al. ("Freund").  These rejections are respectfully traversed.

Chakrabarti, Saund and Freund do not disclose or suggest determining a set of document content feature values of a document based on textual contents in the document, and determining an authoritativeness for the document. . . based on the determined set of document content feature values, as recited in claim 1, and similarly recited in claims 14 and 17.

Chakrabarti discloses determining authoritativeness of a web page based on the degree the web page is referred to via links by other web pages.  See col. 2, lines 15-49 and col. 3, lines 41-57.  As is known, a link by which one web page refers to another is a locator, such as

-7-

Application No. 10/232,714
Xerox Docket No. D/A1707

a universal resource locator (URL) or an IP address.  Such a link is not textual content in a document for which the authoritativeness is to be determined.  Chakrabarti does not disclose or suggest determining authoritativeness of a document based on textual contents in a document.  Therefore, Chakrabarti does not disclose or suggest determining a set of document content feature values of a document based on textual contents in the document, and determining an authoritativeness for the document . . .based on the determined set of document content feature values, as recited in claims 1, 14 and 17.

During the personal interview, the disclosure of Chakrabarti at col. 15, line 67-col. 16, line 26 was discussed.  As discussed, this text of Chakrabarti merely discloses that the root set may be updated, resulting in an updated authoritativeness value of a web page.  However, this text does not disclose or suggest that the textual content of a document is used in updating the authoritativeness value of a document.  In particular, Chakrabarti discloses that there are only two approaches of determining the authoritativeness value of a document: (1) based on hyperlinks to the document, and (2) based on what other documents say about the document.  See col. 14, lines 11-16.  Chakrabarti does not disclose or suggest any other approaches for determining the authoritativeness value of the document.  Specifically, Chakrabarti does not disclose or suggest using textual contents in the document to determine the authoritativeness value of the document.

Regarding the updating of the authoritativeness value of the document, Chakrabarti discloses that, when the root set is updated, the "hyperlinks" to the document and "what other documents say" about the document also need to be updated, especially to avoid self-promotion or redundant hubs.  See col. 14, lines 58-col. 15, line 8.  However, the updating of the authoritativeness value of the document is limited to "hyperlinks," or "what other documents say" about the document.  Chakrabarti does not disclose or suggest using textual contents in the document in updating the authoritativeness value of the document.

Application No. 10/232,714
Xerox Docket No. D/A1707

Accordingly, the disclosure of Chakrabarti at col. 15, line 66-col. 16, line 26 does not disclose or suggest determining a set of document content feature values of a document based on textual contents in the document, and determining an authoritativeness for the document . . . based on the determined set of document content feature values, as recited in claims 1, 14 and 17.

Sound discloses a method of learning for textual topics categorization based on the words contained in a document. See col. 1, lines 52-67. Freund discloses an AdaBoost algorithm. See page 2, lines 38-39. Sound and Freund do not disclose or suggest determining a set of document content feature values of a document based on textual contents in the document, and determining an authoritativeness for the document . . . based on the determined set of document content feature values, as recited in claims 1, 14 and 17. Therefore, Sound and Freund do not supply the subject matter lacking in Chakrabarti.

For at least the above reason, Chakrabarti, Sound and Freund do not disclose or suggest the subject matter recited in claims 1, 14 and 17, and claims 2-13, 15, 16, 18 and 19 depending therefrom. Accordingly, withdrawal of the rejection of claims 1-19 under 35 U.S.C. §103(a) is respectfully requested.

In view of the foregoing, it is respectfully submitted that this application is in condition for allowance. Favorable reconsideration and prompt allowance of the claims are earnestly solicited.

Application No. 10/232,714
Xerox Docket No. D/A1707

Should the Examiner believe that anything further would be desirable in order to place

this application in even better condition for allowance, the Examiner is invited to contact the

undersigned at the telephone number set forth below.

Respectfully submitted,

James A. Oliff
Registration No. 27,075

Gang Luo
Registration No. 50,559

JAO:GXL/sqb

Date:  June 23, 2005

**OLIFF & BERRIDGE, PLC**
**P.O. Box 19928**
**Alexandria, Virginia 22320**
**Telephone: (703) 836-6400**

DEPOSIT ACCOUNT USE
AUTHORIZATION
Please grant any extension
necessary for entry;
Charge any fee due to our
Deposit Account No. 24-0037

# PATENT APPLICATION FEE DETERMINATION RECORD
### Effective October 1, 2001

**Application or Docket Number**

10/233714

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 19 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 19 minus 20 = | * |
| INDEPENDENT CLAIMS | 3 minus 3 = | * |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

*\* If the difference in column 1 is less than zero, enter "0" in column 2*

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | | RATE | FEE |
| BASIC FEE | 370.00 | OR | BASIC FEE | 740.00 |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL | | OR | TOTAL | 740 |

## CLAIMS AS AMENDED - PART II

6-23-05

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * 22 | Minus | ** 19 | = 3 |
| Independent | * 3 | Minus | *** 3 | = 0 |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

1,14,17

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | * | Minus | ** | = |
| Independent | * | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

*\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.*
*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."*
*\*\*\*If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."*
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875 (Rev. 8/01)          ☆U.S GPO:2001 492-124 / 59197          Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

| | Application No. | Applicant(s) | |
|---|---|---|---|
| **_Interview Summary_** | 10/232,714 | FARAHAT ET AL. | |
| | **Examiner** | **Art Unit** | |
| | Brian Goddard | 2161 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Brian Goddard_.                                  (3) _____.

(2) _Gang Luo_.                                         (4) _____.

Date of Interview: _15 June 2005_.

Type:  a)☐ Telephonic  b)☐ Video Conference
    c)☒ Personal [copy given to: 1)☐ applicant    2)☒ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes    e)☒ No.
    If Yes, brief description: _____.

Claim(s) discussed: _1-19_.

Identification of prior art discussed: _Chakrabarti (US 6,336,112) and Saund (US 5,687,364)_.

Agreement with respect to the claims f)☐ was reached.   g)☒ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Applicants' representative presented a proposed amendment to independent claim 1. This proposed amendment was discussed in light of the prior art. No specific agreement was reached regarding the disposition of the claims_.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached. Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a reply to the last office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. See Summary of Record of Interview requirements on reverse side or on attached sheet.

SAFET METJAHIC
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 2100

Examiner Note: You must sign this form unless it is an Attachment to a signed Office action.

Examiner's signature, if required

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
**Paragraph (b)**
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant.  An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR § 1.2   Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing.  The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary.  The action of the Patent and Trademark Office will be based exclusively on the written record in the Office.  No attention will be paid to any alleged oral promise, stipulation, or understanding.in relation to which there is disagreement or doubt.

---

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so.  It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks.  Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below.  Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper.  In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview.  In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication.  If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
–   Application Number (Series Code and Serial Number)
–   Name of applicant
–   Name of examiner
–   Date of interview
–   Type of interview (telephonic, video-conference, or personal)
–   Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
–   An indication whether or not an exhibit was shown or a demonstration conducted
–   An identification of the specific prior art discussed
–   An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable).  Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
–   The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action).

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate.  A verbatim or highly detailed description of the arguments is not required.  The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file.  Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview.  If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her.  If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.



 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/232,714 | 09/03/2002 | Ayman O. Farahat | 111745 | 8103 |

27074        7590        05/06/2005

OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA, VA  22320

| EXAMINER |
|---|
| GODDARD, BRIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2161 | |

DATE MAILED: 05/06/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

|                                    | Application No.        | Applicant(s)        |           |
|------------------------------------|------------------------|---------------------|-----------|
| **Office Action Summary**          | 10/232,714             | FARAHAT ET AL.      |           |
|                                    | Examiner               | Art Unit            |           |
|                                    | Brian Goddard          | 2161                |           |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED  (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on *03 September 2002*.

2a)☐ This action is **FINAL**.          2b)☒ This action is non-final.

3)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒  Claim(s) *1-19* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐  Claim(s) _____ is/are allowed.

6)☒  Claim(s) *1-19* is/are rejected.

7)☐  Claim(s) _____ is/are objected to.

8)☐  Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐  The specification is objected to by the Examiner.

10)☒ The drawing(s) filed on *03 September 2002* is/are: a)☒ accepted or b)☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).

    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a)☐ All   b)☐ Some * c)☐ None of:

        1.☐ Certified copies of the priority documents have been received.

        2.☐ Certified copies of the priority documents have been received in Application No. _____.

        3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    * See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08)
    Paper No(s)/Mail Date *9/3/02*.

4)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____.

5)☐ Notice of Informal Patent Application (PTO-152)

6)☐ Other: _____.

Application/Control Number: 10/232,714                                    Page 2
Art Unit: 2161

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the second paragraph of 35 U.S.C. 112:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

1.      Claims 6, 15 and 18 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Claims 6, 15 and 18 each recite, "wherein the plurality of document content features includes at least **some** of question marks…and reliability indices features." (emphasis added)  The use of "some" renders the claim indefinite because it is unclear whether only one feature must be present, or whether more than one feature must be present.  The term "some" is a relative term that is not defined by the claim, the specification does not provide a standard for ascertaining the requisite degree, and one of ordinary skill in the art would not be reasonably apprised of the scope of the invention.

In the interest of compact prosecution, the examiner interprets these claims to require at least **one** of the document content features listed.

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

Application/Control Number: 10/232,714                                        Page 3
Art Unit: 2161

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

2.      This application currently names joint inventors.  In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

3.      Claims 1-9, 11-12 and 14-19 are rejected under 35 U.S.C. 103(a) as being unpatentable over U.S. Patent No. 6,336,112 to Chakrabarti et al. in view of U.S. Patent No. 5,687,364 to Saund et al.

        Referring to claim 1, Chakrabarti discloses a method for determining an authoritativeness of a document substantially as claimed.  See Figures 2-9 and the corresponding portions of Chakrabarti's specification for this disclosure.  In particular, Chakrabarti teaches a method [See Fig. 9] for determining an authoritativeness of a document having a plurality of document content features [attributes], the method comprising:

        determining a set of document content feature values [attribute values (See Column 10, lines 19-58 and Fig. 2)]; and

Application/Control Number: 10/232,714                                    Page 4
Art Unit: 2161

determining an authoritativeness for the document [See Abstract, Summary & Fig. 9] using a document textual authority model based on the determined set of document content feature values [See Column 10, lines 19-58 and Fig. 9].

Chakrabarti does not explicitly teach that the document textual authority model is "trained" as claimed.  Saund discloses a system and method similar to that of Chakrabarti, including determining a set of document content feature values [a lexicon that indicates topical content (See Column 3, line 30 – Column 4, line 45)], training the system to created a trained document textual authority model [See Abstract, Summary, etc.], and using the trained model based on the determined set of document content feature values to predict topical content and association strength values [See Column 4, lines 20-63 and Column 5, line 21 – Column 6, line 18].

It would have been obvious to one of ordinary skill in the art at the time the invention was made to add Saund's training functionality and usage of the trained document model to the system and method of Chakrabarti, using Saund's trained document model as the topical model of Chakrabarti's methodology.  One would have been motivated to do so in order to provide a more flexible and adaptive approach to developing the model with less user interaction, as described by Saund.

Referring to claim 2, Chakrabarti v. Saund teaches the method of claim 1, as above, wherein determining the set of document content feature values comprises extracting a subset of document content features [Saund: lexicon (See Column 3, line 30 – Column 4, line 45)] from the plurality of document content features [the entire text of the document] as claimed.

Application/Control Number: 10/232,714                                    Page 5
Art Unit: 2161

Referring to claim 3, Chakrabarti v. Saund teaches the method of claim 1, as
above, wherein determining the set of document content feature values
comprises...using one or more parsing techniques or methods [Chakrabarti: See Fig.
13; Saund: See Step 76] as claimed.

Referring to claim 4, Chakrabarti v. Saund teaches the method of claim 1, as
above, wherein determining the authoritativeness for the document comprises:
providing the set of document content feature values to the trained document textual
authority model [Chakrabarti: See Fig. 9 in light of combination in claim 1]; and
determining a document textual authoritativeness value [Chakrabarti: 'authority value' or
'authority score']...as claimed.

Referring to claim 5, Chakrabarti v. Saund teaches the method of claim 1, as
above, wherein determining an authoritativeness for the document further comprises
determining a textual authority class for the document [Chakrabarti: 'classification' or
'category'; Saund: 'topic'] as claimed.

Referring to claim 6, Chakrabarti v. Saund teaches the method of claim 1, as
above, wherein the plurality of document content features includes...[Saund: See
Column 3, line 30 – Column 4, line 45 and Column 5, line 21 – Column 6, line 18] as
claimed.

Referring to claims 7-9, Chakrabarti v. Saund teaches the method of claim 2, as
above, wherein extracting a subset of document content features is performed using a
stepwise regression technique and a variable selection technique [Saund: See Column
3, line 15 – Column 5, line 20] as claimed.

Application/Control Number: 10/232,714                                    Page 6
Art Unit: 2161

Claims 11 and 12 are rejected on substantially the same basis as claims 7-9

above.  See the discussions regarding claims 1-9, as well as the portions of Saund cited

therein, for this disclosure.

Claim 14 is rejected on the same basis as claim 1.  See the discussion regarding

claim 1 above for this disclosure.

Claim 15 is rejected on the same basis as claim 6, in light of the basis for claim

14.  See the discussions regarding claims 1, 6 and 14 above for this disclosure.

Claim 16 is rejected on the same basis as claims 2 and 3, in light of the basis for

claim 14.  See the discussions regarding claims 1-3 and 14 above for this disclosure.

Claim 17 is rejected on the same basis as claims 2 and 12.  See the discussions

regarding claims 1-2 and 12 for the details of this disclosure.

Claim 18 is rejected on the same basis as claim 6, in light of the basis for claim

17.  See the discussions regarding claims 1-2, 6, 12 and 17 above for this disclosure.

Claim 19 is rejected on the same basis as claim 9, in light of the basis for claim

17.  See the discussions regarding claims 1-2, 9, 12 and 17 above for this disclosure.


4.      Claims 10 and 13 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Chakrabarti in view of Saund as applied to claims 4 and 8 above, and further in

view of the article entitled "Experiments with a New Boosting Algorithm" by Freund et al.

Referring to both claims 10 and 13, neither Chakrabarti nor Saund expressly use

the AdaBoost technique as claimed.  However, Freund discloses methods similar to

those of Chakrabarti and Saund, wherein the learning process uses the AdaBoost

Application/Control Number: 10/232,714                                    Page 7
Art Unit: 2161

algorithm/technique in the classification process.  See the Abstract and the entirety of

the article for this disclosure.  It would have been obvious to one of ordinary skill in the

art at the time the invention was made to add Freund's AdaBoost algorithm to the

systems and methods of Chakrabarti v. Saund to obtain the invention as claimed.  One

would have been motivated to do so in order to reduce error and improve the learning

model, as disclosed by Freund.

### *Conclusion*

5.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.

        U.S. Patent No. 6,751,600 to Wolin is considered particularly pertinent to

applicants' claimed invention, while the remaining prior art of record is considered

pertinent to portions of applicants' claimed invention and/or disclosure.


6.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Brian Goddard whose telephone number is 571-272-

4020.  The examiner can normally be reached on M-F, 9 AM - 5 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Safet Metjahic can be reached on 571-272-4023.  The fax phone number for

the organization where this application or proceeding is assigned is 703-872-9306.

Application/Control Number: 10/232,714                                    Page 8
Art Unit: 2161

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

bdg
29 April 2005

SAFET METJAH
S⁣⁣⁣⁣SORY PATENT
⁣⁣HNOLOGY CENT⁣

Sheet ___1___ of ___1___

| Form PTO-1449 (REV. 8-83) | US Dept. of Commerce PATENT & TRADEMARK OFFICE | ATTY DOCKET NO. 111745 | | APPLICATION NO. New U.S. Patent Application |
|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT (Use several sheets if necessary) | | APPLICANTS Ayman O. FARAHAT et al. | | |
| | | FILING DATE September 3, 2002 | | |

J1046 U.S. PTO
10/232714
09/03/02

## U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUB CLASS |
|---|---|---|---|---|---|---|
| BG | | 6,285,999 | 09/04/2001 | Page | | |
| BG | | 6,112,202 | 08/29/2000 | Kleinberg | | |
| BG | | 6,336,112 B2 | 01/01/2002 | Chakrabarti et al. | | |
| BG | | 5,884,305 | 03/16/1999 | Kleinberg et al. | | |
| BG | | 6,334,131 B2 | 12/25/2001 | Chakrabarti et al. | | |
| BG | | 6,263,351 B1 | 07/17/2001 | Wolfe | | |
| BG | | 5,278,980 | 01/11/1994 | Pedersen et al. | | |
| BG | | 5,442,778 | 08/15/1995 | Pedersen et al. | | |
| BG | | 6,178,417 B1 | 01/23/2001 | Syeda-Mahmood | | |

## FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUB CLASS |
|---|---|---|---|---|---|---|
| | | | | | | |

## OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| BG | Freund et al., "Experiments with a New Boosting Algorithm", AT&T Research, http://www.research.att.com/orgs/ssr/people/{yoav,schapire}/, 1996 |
|---|---|

| EXAMINER  Brian Goddad | DATE CONSIDERED  4/28/2005 |
|---|---|

Examiner:   Initial if citation considered, whether or not citation is in conformance with M.P.E.P. 609; draw line through citation if not in conformance and not considered.   Include copy of this form with next communication to applicant.

Date:  September 3, 2002

| ***Notice of References Cited*** | Application/Control No. 10/232,714 | Applicant(s)/Patent Under Reexamination FARAHAT ET AL. | |
|---|---|---|---|
| | Examiner Brian Goddard | Art Unit 2161 | Page 1 of 1 |

## U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-5,687,364 | 11-1997 | Saund et al. | 704/5 |
| | B | US-6,446,061 | 09-2002 | Doerre et al. | 707/3 |
| | C | US-6,502,081 | 12-2002 | Wiltshire et al. | 706/12 |
| | D | US-2003/0217047 | 11-2003 | Marchisio, Giovanni B. | 707/3 |
| | E | US-6,862,710 | 03-2005 | Marchisio, Giovanni B. | 715/501.1 |
| | F | US-6,751,600 | 06-2004 | Wolin, Ben | 706/12 |
| | G | US-6,269,368 | 07-2001 | Diamond, Theodore G. | 707/6 |
| | H | US-6,453,307 | 09-2002 | Schapire et al. | 706/12 |
| | I | US-2003/0101166 | 05-2003 | Uchino et al. | 707/2 |
| | J | US-2002/0138478 | 09-2002 | Schwartz et al. | 707/3 |
| | K | US-6,606,620 | 08-2003 | Sundaresan et al. | 707/3 |
| | L | US- | | | |
| | M | US- | | | |

## FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

## NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent under Reexamination |
|---|---|---|
| | 10/232,714 | FARAHAT ET AL. |
| | Examiner | Art Unit | |
| | Brian Goddard | 2161 | |

### SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 707 | 1-5 | 4/29/2005 | BG |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### SEARCH NOTES (INCLUDING SEARCH STRATEGY)

| | DATE | EXMR |
|---|---|---|
| EAST (see attached) | 4/29/2005 | BG |
| ACM | 4/29/2005 | BG |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

### INTERFERENCE SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Part of Paper No.  20050429

### Index of Claims

| | |
|---|---|
| Application/Control No. | Applicant(s)/Patent under Reexamination |
| 10/232,714 | FARAHAT ET AL. |
| Examiner | Art Unit |
| Brian Goddard | 2161 |

| | | | | | | |
|---|---|---|---|---|---|---|
| √ | Rejected | − | (Through numeral) Cancelled | N | Non-Elected | A | Appeal |
| = | Allowed | + | Restricted | I | Interference | O | Objected |

| Claim (Final / Original) | Date |
|---|---|
| 1 | 4/29/05 √ |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | √ |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |
| 31 | |
| 32 | |
| 33 | |
| 34 | |
| 35 | |
| 36 | |
| 37 | |
| 38 | |
| 39 | |
| 40 | |
| 41 | |
| 42 | |
| 43 | |
| 44 | |
| 45 | |
| 46 | |
| 47 | |
| 48 | |
| 49 | |
| 50 | |

Claims 51–100 and 101–150 (no entries marked).



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov



Bib Data Sheet

**CONFIRMATION NO. 8103**

| SERIAL NUMBER 10/232,714 | FILING DATE 09/03/2002 RULE | CLASS 707 | GROUP ART UNIT 2161 | ATTORNEY DOCKET NO. 111745 |
|---|---|---|---|---|

**APPLICANTS**

Ayman O. Farahat, San Francisco, CA;

Francine R. Chen, Menlo Park, CA;
Charles R. Mathis, Stanford, CA;Geoffrey D. Nunberg, San Francisco, CA;

** CONTINUING DATA *************************
This appln claims benefit of 60/380,876 05/17/2002

** FOREIGN APPLICATIONS *********************

IF REQUIRED, FOREIGN FILING LICENSE GRANTED
** 10/01/2002

| Foreign Priority claimed ☐ yes ☒ no<br>35 USC 119 (a-d) conditions met ☐ yes ☒ no ☐ Met after Allowance<br>Verified and Acknowledged   *Bian Gddad* BG<br>Examiner's Signature      Initials | STATE OR COUNTRY CA | SHEETS DRAWING 13 | TOTAL CLAIMS 19 | INDEPENDENT CLAIMS 3 |
|---|---|---|---|---|

**ADDRESS**
27074
OLIFF & BERRIDGE, PLC.
P.O. BOX 19928
ALEXANDRIA , VA
22320

**TITLE**
Systems and methods for authoritativeness grading, estimation and sorting of documents in large heterogeneous document collections

| FILING FEE | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT | ☐ All Fees |
|---|---|---|
|  |  | ☐ 1.16 Fees ( Filing ) |
|  |  | ☐ 1.17 Fees ( Processing Ext. of time ) |

| RECEIVED 740 | No. _____ for following: | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other _____ |
| | | ☐ Credit |

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 9 | ("6285999" "6112202" "6336112" "5884305" "6334131" "6263351" "5278980" "5442778" "6178417"). did. | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:44 |
| L2 | 1 | "5687364".did. | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:42 |
| L3 | 7 | ((document near2 authoritative$5) with content) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:46 |
| L4 | 10 | ((document near2 authoritative$5) same content) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:49 |
| L5 | 3 | L4 not L3 | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:46 |
| L6 | 2 | (document near2 (authoritative$5 or quality)) and (pars$3 near2 text) and (((text or content) near2 features) or (feature near1 values)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:57 |
| L7 | 909 | (document near1 (authoritative$5 or quality)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:57 |
| L8 | 27 | L7 and (pars$3 near2 text) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:57 |
| L9 | 26 | L8 and (rank$3 or order$3) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 12:57 |
| L10 | 20 | L9 and @ad<="20020517" | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 13:52 |
| L11 | 60 | (document with rank$3) and (pars$3 near2 text) and (trained or training or learning) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 14:44 |

| L12 | 9 | L11 and regression | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 14:21 |
|---|---|---|---|---|---|---|
| L13 | 10 | (document with rank$3) and (parse? or parsing) and (trained or training or learning) and (((metric or stepwise or step?wise) near1 regression) or boost or adaboost) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:03 |
| L14 | 266 | (((metric or stepwise or step?wise) near1 regression) or adaboost) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:03 |
| L15 | 7 | L14 and (rank$3 near3 (document or object)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:04 |
| L16 | 9 | L14 and ((rank$3 or quality or authoritativ$5) near3 (document or object)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:05 |
| L17 | 10970 | (707/1 707/2 707/3 707/4 707/5).ccls. | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:44 |
| L18 | 790 | L17 and ((document or page) near2 (rank$3 or authoritativ$6 or importance or quality)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:45 |
| L19 | 284 | L18 and (trained or training or learning or boost or adaboost or ((metric or stepwise or step?wise) near1 regression)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:47 |
| L20 | 191 | L19 and ((text or content or document or page) near3 (parse? or parsing or extract$3 or feature)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:49 |
| L21 | 144 | L20 and ((rank$3 or order$3 or score? or scoring or authoritativeness) near1 (document or page)) | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:50 |
| L22 | 113 | L21 and @ad<="20020517" | US-PGPUB; USPAT; EPO; JPO; IBM_TDB | OR | ON | 2005/04/29 15:50 |

**NONPROVISIONAL PATENT APPLICATION**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

OLIFF & BERRIDGE, PLC
P.O. Box 19928
Alexandria, Virginia 22320
Telephone: (703) 836-6400
Facsimile: (703) 836-2787

Attorney Docket No.: ___111745___

Date: ___September 3, 2002___

**BOX PATENT APPLICATION**

Customer Number: 27074

**NONPROVISIONAL APPLICATION TRANSMITTAL RULE §1.53(b)**

Director of the U.S. Patent and Trademark Office
Washington, D.C. 20231

Sir:

Transmitted herewith for filing under 37 C.F.R. §1.53(b) is the nonprovisional patent application

For (Title):  SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

By (Inventors):  Ayman O. FARAHAT, Francine R. CHEN, Charles R. MATHIS, Geoffrey D. NUNBERG

☒  ☒ Formal drawings  ☐ Informal drawings (Figs. 1-14; 13 sheets) are attached.
☒ Use Figure 2 for front page of Publication.
☒  A Declaration and Power of Attorney is filed herewith.
☒  This patent application is assigned to Xerox Corporation.
☒ The executed Assignment is filed herewith.
☒  An Information Disclosure Statement is filed herewith.
☒  A Preliminary Amendment is filed herewith.
☒  Please amend the specification by inserting before the first line the sentence --This nonprovisional application claims the benefit of U.S. Provisional Application No. 60/380,876, filed May 17, 2002.--
☐  This application is NOT to be published under 35 U.S.C. 112(b). The undersigned attorney or agent hereby certifies that the invention disclosed in this application has not been and will not be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.
☒  The filing fee is calculated below:

CLAIMS IN THE APPLICATION AFTER ENTRY OF
ANY PRELIMINARY AMENDMENT NOTED ABOVE

| FOR: | NO. FILED | NO. EXTRA | RATE | FEE |
|---|---|---|---|---|
| BASIC FEE | | | | $   740 |
| TOTAL CLAIMS | 19- 20 | =   *0 | x  18 | $ |
| INDEP CLAIMS | 3- 3 | =   *0 | x  84 | $ |
| ☐ MULTIPLE DEPENDENT CLAIMS PRESENTED | | | + 280 | $ |
| | | | TOTAL | $   740 |

\* If the difference is less
than zero, enter "0".

☒  Please charge Deposit Account No. 24-0037 in the amount of $740. Two duplicate copies of this sheet are enclosed.
☒  The Director is hereby authorized to charge any other fees that may be required to complete this filing, or to credit any overpayment, to Deposit Account No. 24-0037. Two duplicate copies of this sheet are attached.

Respectfully submitted,

James A. Oliff
Registration No. 27,075

George P. Simion
Registration No. 47,089

JAO:GPS/mlb

## OLIFF & BERRIDGE, PLC

ATTORNEYS AT LAW

## Application Data Sheet

### Application Information

| | |
|---|---|
| Application Type:: | Regular |
| Subject Matter:: | Utility |
| CD-ROM or CD-R: | None |
| Title:: | SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS |
| Attorney Docket Number:: | 111745 |
| Suggested Drawing Figure:: | 2 |
| Total Drawing Sheets:: | 13 |
| Small Entity:: | No |

### Applicant Information

| | |
|---|---|
| Applicant Authority type:: | Inventor |
| Primary Citizenship Country:: | Egyptian/Canadian |
| Status:: | Full Capacity |
| Given Name:: | Ayman O. |
| Family Name:: | FARAHAT |
| City of Residence:: | San Francisco |
| State or Province of Residence:: | California |
| Country of Residence:: | USA |
| Applicant Authority type:: | Inventor |
| Primary Citizenship Country:: | U.S. |
| Status:: | Full Capacity |
| Given Name:: | Francine R. |
| Family Name:: | CHEN |
| City of Residence:: | Menlo Park |
| State or Province of Residence:: | California |
| Country of Residence:: | USA |
| Applicant Authority type:: | Inventor |
| Primary Citizenship Country:: | U.S. |

| Status:: | Full Capacity |
|---|---|
| Given Name:: | Charles R. |
| Family Name:: | MATHIS |
| City of Residence:: | Stanford |
| State or Province of Residence:: | California |
| Country of Residence:: | USA |

| Applicant Authority type:: | Inventor |
|---|---|
| Primary Citizenship Country:: | U.S. |
| Status:: | Full Capacity |
| Given Name:: | Geoffrey D. |
| Family Name:: | NUNBERG |
| City of Residence:: | San Francisco |
| State or Province of Residence:: | California |
| Country of Residence:: | USA |

**Correspondence Information**

Correspondence Customer Number::   27074

| Domestic Priority Information | | | |
|---|---|---|---|
| Application:: | Continuity Type:: | Parent Application:: | Parent Filing Date:: |
| This Application is a | Non- Provisional of | 60/380,876 | 05/17/2002 |

| Assignee Information | |
|---|---|
| Assignee Name:: | XEROX CORPORATION |
| Street of mailing address:: | 800 Long Ridge Road |
| | P.O Box 1600 |
| City of mailing address:: | Stamford |
| State or Province of mailing address:: | Connecticut |
| Country of mailing address:: | USA |
| Postal or Zip Code of mailing address:: | 06904-1600 |

1          Xerox Docket No. D/A1707

# SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS

## BACKGROUND OF THE INVENTION

1.    Field of Invention

[0001]    This invention generally relates to the field of information ranking and retrieval.

2.    Description of Related Art

[0002]    A notoriously difficult problem in using large heterogeneous document collections, such as the World Wide Web (the "Web"), is that it is not easy to recognize which documents, for example, which web pages and web documents, provide reliable authoritative information about a subject. The problem is particularly significant where it concerns "high-value" informational needs, such as retrieving medical information, where the cost of error may be high.

[0003]    Authoritativeness of a web page or document is commonly measured based on social networks represented by the link structure of the Web. "The anatomy of a large-scale hypertextual (web) search engine," by S. Brin et al., 7th International World Wide Web Conference, 1998, and "Authoritative sources in a hyperlinked environment," by J. Kleinberg, Proc. of the 9th ACM-SIAM Symposium on Discrete Algorithms, 1998, each of which is incorporated herein by reference in its entirety, respectively discuss the algorithm used by the PageRank® search engine implemented by the search site Google® and HITS® algorithm.

## SUMMARY OF THE INVENTION

[0004]    Exemplary algorithms, such as HITS® and the algorithm used by PageRank® search engine, are used to determine the authoritativeness of a web page based on its link structure. However, these techniques do not consider the content of the documents, even though the content is often a highly useful indicator of the authoritativeness of a document, and the authoritativeness of the content is not derivable from link structure alone.

[0005]    The concept of "authoritativeness" has two interpretations. The first is grounded in social networks and is in essence a graph-theoretical notion. As an example of social authority, when a newspaper says, "An authoritative source announced that the President would veto the bill," people generally interpret

2                    Xerox Docket No. D/A1707

"authoritative" to mean that the source was relatively close to the people who have social authority over the matter in question. The person in this case, presumably, would be someone socially close to the President or his advisors. This is the concept of authoritativeness that is implicit in the use of tools like citation indexes, where an "authoritative" source is one that is relatively central in the network of citations in a given scientific or scholarly literature. It is also the concept that is operationalized in the various link-analysis approaches to implementing search engines like Google®, where "authoritative" pages are generally those that are linked to by a number of other pages, subject to various technical refinements.

[0006]   This invention provides systems and methods that utilize a second concept of authoritativeness that is broadly defined as "textual." When someone says, for example, "Professor Jones has written an authoritative book on Roosevelt's foreign policy," it is not necessarily implied that Jones had any close relation to the people who had first-hand knowledge of the subject at hand, or for that matter that scholars or journalists are generally disposed to cite Jones' book, although that may very well be the case. Rather, what is meant is that the book is authoritative on internal grounds. These internal grounds can include that the book reads as if it is well-researched, that the book uses language in a skillful and appropriate way, that the book contains numerous references of the right sort, and the like.

[0007]   In society at large, as evidenced on the Web, there is much more heterogeneity in knowledge and viewpoint. The fact that a text is widely referenced may not by itself assure that it is authoritative in the broader sense of the term. This point becomes particularly important when it comes to issues where there is a large amount of misinformation abroad, such as in obtaining medical information. For example, when the query "heterosexual transmission AIDS virus" was provided to the Google® search engine during a Web-based document search, the first 50 web pages/web links returned by the search engine contained a number of pages that most people would judge as authoritative, but also included some pages that the majority of health professionals would be unlikely to recommend, such as, for example a page about how federal AIDS policy is shaped by the "homosexual agenda," and a page that accuses the government of rewarding promiscuity by providing AIDS patients with housing assistance and other benefits. These pages came up well before other

3                    Xerox Docket No. D/A1707

general-information pages from the HIV Insite project at the University of California at San Francisco or the Harvard AIDS Institute.

[0008]    Misclassifications like those presented above are inevitable if only network authoritativeness is considered, inasmuch as purely quantitative analyses of linking patterns are often insufficient to distinguish concentrated, socially-marginal subcommunities from mainstream sites.  Similarly, it often happens that a text that is authoritative on internal grounds occurs in a site that is not widely linked to, such as, for example, a government health institute report that someone has included on a Geocities site.

[0009]    This invention provides systems and methods for estimating the authoritativeness of a document based on textual, non-topical cues.

[0010]    This invention provides systems and methods for determining authoritativeness of a document that complement systems and methods employed for estimating authoritativeness of a document based on link structure.

[0011]    This invention further provides systems and methods for combining textual estimates of document authoritativeness with link analysis.

[0012]    This invention additionally provides systems and methods for applying textual authoritativeness estimates for re-ranking documents retrieved by search engines.

[0013]    This invention additionally provides systems and methods for combining textual authoritativeness with social authority to provide a more complete and robust estimate of a document's authoritativeness.

[0014]    This invention further provides systems and methods for applying textual authoritativeness estimates to expand and improve document query searches.

[0015]    This invention further provides systems and methods for combining at least two sets of rank orderings, including at least one textual authoritativeness-based rank ordering and a link-based rank ordering to produce an aggregate set ordering that is closest in some distance to each of the least two sets of rank orderings.

[0016]    In various exemplary embodiments, the systems and methods according to this invention determine a document's textual authority by evaluating a set of document content features contained within each document, processing the set of document content features through a trained document textual authority model to

determine a set of document content feature values, and outputting a textual authoritativeness value and/or a textual authority class for each evaluated document.

[0017]    In various exemplary embodiments, the systems and methods according to this invention select and evaluate document content features that represent both the linguistic and presentation content, such as, for example, colors and/or tables, of a particular web document or web page.  Document content features considered by the systems and methods of this invention can include, for example, the use of particular characters in the plain text, such as, for example, question marks, semicolons; word-classes, such as, for example, words with learned prefixes like "pseudo-" or "hetero-" or learned suffixes like "-acious", "-metric", or "-icality"; various stylistic elements, such as, for example, the average length of the sentence, its standard deviation; HTML features, such as, for example, hyperlinks, tables, images, page color and the like.

[0018]    In various exemplary embodiments, the systems and methods according to this invention process a set of document content features through a trained document textual authority model utilizing various processing circuits or routines to determine the textual authority of a document.  The trained document textual authority model employed by the systems and methods of this invention is based on a set of documents that were manually labeled as to degree of textual authority, a set of document content features that were determined to be good predictors of the authoritativeness of a document, and a predictive model trained on the labeled document data.

[0019]    In various exemplary embodiments, the systems and methods according to this invention output a textual authoritativeness value for each document that is determined using a document textual authority framework model included in the trained document textual authority model.  The document textual authority framework model considers various document classification attributes such as the author's background, the targeted audience, the author's institutional affiliation, and whether the document has been reviewed or examined by others.

[0020]    In various exemplary embodiments, the systems and methods according to this invention output an authority class for each document that is determined using a document authority class framework model included in the trained document textual authority model.  The document authority class framework model

5                    Xerox Docket No. D/A1707

considers various document classification attributes such as the author's background, the targeted audience, the author's institutional affiliation, and whether the document has been reviewed or examined by others.

[0021]    These and other features and advantages of this invention are described in, or are apparent from, the following detailed description of various exemplary embodiments of the systems and methods according to this invention.

<u>BRIEF DESCRIPTION OF THE DRAWINGS</u>

[0022]    Various exemplary embodiments of the systems and methods of this invention will be described in detail below, with reference to the following figures, in which:

[0023]    Fig. 1 illustrates a large heterogeneous network environment;

[0024]    Fig. 2 is a functional block diagram of one exemplary embodiment of a system for authoritativeness grading, estimating and sorting according to this invention;

[0025]    Fig 3 illustrates one exemplary embodiment of document content features that can be used to determine the document textual authority according to this invention;

[0026]    Fig. 4 is a functional block diagram showing in greater detail one exemplary embodiment of the trained document textual authority model of Fig. 2, according to this invention;

[0027]    Fig. 5 illustrates one exemplary embodiment of a set of attributes and values that are considered when classifying the authority of a document according to this invention;

[0028]    Fig. 6 illustrates one exemplary embodiment of a class assigning framework for classifying the authority of a document based upon a set of attributes and values shown in the exemplary set in Fig. 5, according to this invention;

[0029]    Fig. 7 is a flowchart outlining one exemplary embodiment of a method for training a model usable to determine the textual authoritativeness value and/or textual authority class of a document according to this invention;

[0030]    Fig. 8 is a flowchart outlining one exemplary embodiment of a method for determining the textual authoritativeness value and/or textual authority class of a document according to this invention;

6                         Xerox Docket No. D/A1707

[0031]    Fig. 9 is a flowchart outlining one exemplary embodiment of a method for applying textual authoritativeness estimates for re-ranking documents according to this invention;

[0032]    Fig. 10 is a flowchart outlining one exemplary embodiment of a method for combining textual authoritativeness with social authority according to this invention;

[0033]    Fig. 11 is a flowchart outlining one exemplary embodiment of a method for applying textual authoritativeness estimates to expand document query searches according to this invention;

[0034]    Fig. 12 is a flowchart outlining one exemplary embodiment of a method for combining or aggregating two or more sets of rank orderings, including at least one textual authoritativeness-based rank ordering and a link-based rank ordering, according to this invention;

[0035]    Fig. 13 illustrates one exemplary embodiment of textual authoritativeness values and textual authority classes determined for documents obtained from network environment of Fig. 1, according to this invention; and

[0036]    Fig. 14 illustrates one exemplary embodiment of processes for determining document content feature values for documents obtained from network environment of Fig. 1, according to this invention.

DETAILED DESCRIPTION OF EXEMPLARY EMBODIMENTS

[0037]    Existing web-based document search techniques typically identify documents based primarily on the social authority of the document, such as, for example, the link structure of the document within the web environment.  The search results obtained using existing techniques generally include many 'top-ranked' documents that are less relevant about the particular topic or area of interest chosen by a document searcher.

[0038]    The systems and methods of this invention enable document collection search processes, such as web-based document search processes, to be improved using textual authority estimating models.  Estimating the textual authority of a web page may be performed following a web-based document search operation using a web search engine.

[0039]    Fig. 1 shows one exemplary embodiment of a network environment 100 that the systems and methods of this invention are usable with.  As shown in

7                Xerox Docket No. D/A1707

Fig. 1, a large heterogeneous network 110, such as the World Wide Web, typically includes millions of web sites, several of which are schematically represented as web site servers 120, 130 and 140. Additionally, each web site server 120, 130,140 includes numerous web pages 122-128, 132-138 and 142-148, respectively, or other web-based information resources or documents suitable for being textually manipulated by the systems and methods of this invention. The web pages or documents 122-128, 132-138 and 142-148 are respectively arranged in a variety of web applications 150, 160 and 170, such as, for example, web site databases, or any other appropriate web application. A user, using a personal computer or other web-enabled device that is equipped with a suitable web browser and communications software, can access the network 110 over a communication link 214 and is able to access the documents available on the network 110. The network 110 includes, but is not limited to, for example, local area networks, wide area networks, storage area networks, intranets, extranets, the Internet, or any other type of distributed network, each of which can include wired and/or wireless portions.

[0040]    The sheer volume of information available on the network 110 presents significant difficulties to a user in retrieving the most pertinent documents relevant to a particular area and or topic. In various exemplary embodiments, a network or web-connected authoritativeness determining system 200 according to this invention allows the web documents 122-128, 132-138 and 142-148 to be searched, graded, estimated and/or sorted.

[0041]    Fig. 2 illustrates a functional block diagram of one exemplary embodiment of the authoritativeness determining system 200. The authoritativeness determining system 200 connects to the network 110 via the link 214. The link 214 can be any known or later developed device or system for connecting the authoritativeness determining system 200 to the network 110, including a connection over public switched telephone network, a direct cable connection, a connection over a wide area network, a local area network, a storage area network, a connection over an intranet or an extranet, a connection over the Internet, or a connection over any other distributed processing network or system. In general, the link 214 can be any known or later developed connection system or structure usable to connect the authoritativeness determining system 200 to the network 110.

[0042]    As shown in Fig. 2, the authoritativeness determining system 200 includes one or more display devices 280 usable to display information to the user, and one or more user input devices 290 usable to allow the user or users to input data into the authoritativeness determining system 200.  The one or more display devices 280 and the one or more input devices 290 are connected to the authoritativeness determining system 200 through an input/output interface 210 via one or more communication links 282 and 292, respectively, which are generally similar to the link 214 above.

[0043]    In various exemplary embodiments, the authoritativeness determining system 200 includes one or more of a controller 220, a memory 230, a trained document textual authority model 232, a document content feature values determination circuit or routine 240, a document textual authoritativeness value determination circuit or routine 250, a document textual authority class determination circuit or routine 260, and a document combined authoritativeness determination circuit or routine 270, all of which are interconnected over one or more data and/or control buses and/or application programming interfaces 295.  In various exemplary embodiments, the authoritativeness determining system 200 may optionally include a document classification accuracy improvement circuit or routine 275, which is also connected to the one or more data and/or control buses and/or application programming interfaces 295.  In various exemplary embodiments, the trained document textual authority model 232 is stored in memory 230 of the authoritativeness determining system 200.

[0044]    The controller 220 controls the operation of the other components of the authoritativeness determining system 200.  The controller 220 also controls the flow of data between components of the authoritativeness determining system 200 as needed.  The memory 230 can store information coming into or going out of the authoritativeness determining system 200, may store any necessary programs and/or data implementing the functions of the authoritativeness determining system 200, and/or may store data and/or document authoritativeness information at various stages of processing.

[0045]    The memory 230 includes any machine-readable medium and can be implemented using appropriate combination of alterable, volatile or non-volatile memory or non-alterable, or fixed, memory.  The alterable memory, whether volatile or

9                    Xerox Docket No. D/A1707

non-volatile, can be implemented using any one or more of static or dynamic RAM, a floppy disk and disk drive, a writable or re-rewriteable optical disk and disk drive, a hard drive, flash memory or the like. Similarly, the non-alterable or fixed memory can be implemented using any one or more of ROM, PROM, EPROM, EEPROM, an optical ROM disk, such as a CD-ROM or DVD-ROM disk, and disk drive or the like.

[0046]    In various exemplary embodiments, the authoritativeness determining system 200 includes the trained document textual authority model 232 which the authoritativeness determining system 200 uses to process a set of documents using the various circuits or routines 240, 250, 260, 270 and/or 275 to estimate the textual authoritativeness value and/or textual authority class of a document. The trained document textual authority model 232 is trained on a large sample of documents that were manually evaluated and labeled as to their degree of textual authority. The trained document textual authority model 232 is discussed in detail below.

[0047]    The document content feature values determination circuit or routine 240 is activated by the controller 220 to determine a document content feature values for a document.  In various exemplary embodiments, the document content feature values determination circuit or routine 240 may be used to evaluate, for example identify and/or select, as shown in Fig. 3, specific document content features 310, such as, for example, one or more of question marks, numerals, words with learned prefixes or learned suffixes, hyperlinks, document length, abbreviations, number of noun phrases, that may be present in a web document, such as, for example a web page. It will be noted that Fig. 3 is an exemplary embodiment of document content features that may be used to determine the textual authority of a document.

[0048]    In various exemplary embodiments, the document content feature values determination circuit or routine 240 evaluates and/or extracts only a subset, such as, for example, the numerals 320, words with learned prefixes or learned suffixes 321, hyperlinks 322, abbreviations 323, and number of noun phrases 324, as shown in Fig. 3, of the document content features from the large number of potential features 310, such as the question marks, numerals, words with learned prefixes or learned suffixes, hyperlinks, document length, abbreviations, number of noun phrases, that are available to use in ranking the documents based on these determined authoritativeness levels. The subset of document content features, such as, for

example, the numerals 320, words with learned prefixes or learned suffixes 321, hyperlinks 322, abbreviations 323, and number of noun phrases 324, selected and/or extracted by the document content feature values determination circuit or routine 240 corresponds to a predetermined subset of document content features previously determined by and included in the trained document textual authority model 232.  The predetermined document content features subset is discussed in more detail below.

[0049]    It will be noted that the subset of document content features determined and/or extracted by the document content feature values determination circuit or routine 240 may vary according to the specific application, training data, particular web-based document features and the like.

[0050]    In various exemplary embodiments, the document content feature values determination circuit or routine 240 determines a set of document content feature values for a document by processing one or more of the selected document content features 310 .  In various exemplary embodiments, the document content feature values determination circuit or routine 240 determines, as shown in Fig. 14, a set 340 of one or more document content feature values by processing the document content features subset using one or more of parsing and mathematical processes or methods.  In one exemplary embodiment, the determined set 340 of document content features values may combine one or more individual document content features values 341, 342, 343 and 344 that are determined for specific types document content features in the document.  In one exemplary embodiment, as shown in Fig. 14, the set 340 of document content feature values has a non-integer number value.

[0051]    The document textual authoritativeness value determination circuit or routine 250 is activated by the controller 220 to determine a document's textual authoritativeness value based on the document content feature values determined by the document content feature values determination circuit or routine 240.  In various exemplary embodiments, the document textual authoritativeness value determination circuit or routine 250 determines a document's textual authoritativeness value using the one or more determined document content feature values 341, 342, 343 and 344 of set 340 of document content feature values.

[0052]    In various exemplary embodiments, the document textual authoritativeness value determination circuit or routine 250 determines a document's textual authoritativeness value 350-360, as shown in Fig. 13, by processing the set

11                    Xerox Docket No. D/A1707

340 of document content feature values using one or more statistical processes or
techniques, such as, for example, a regression or classification process.

[0053]    In various exemplary embodiments, the document textual
authoritativeness value determination circuit or routine 250 determines a document's
textual authoritativeness value 350 by processing the set 340 of document content
feature values using one or more metric-regression algorithms or methods.

[0054]    In various alternate exemplary embodiments, the document textual
authoritativeness value determination circuit or routine 250 determines a document's
textual authoritativeness value 360 by processing the set 340 of document content
feature values using one or more boosted decision tree algorithms or methods.  In one
exemplary embodiment, the document textual authoritativeness value determination
circuit or routine 250 determines a document's textual authoritativeness value 360 by
processing the set 340 of document content feature values using an AdaBoost
algorithm model, such as the algorithm outlined by Y. Freund et al., "Experiments
with a new boosting algorithm, International Conference on Machine Learning, pp.
148-156, 1996.   In one exemplary embodiment, the textual authoritativeness value
360 determined using an AdaBoost algorithm model is an integer number value.

[0055]    It should be noted that other known or later-developed regression or
classification processes may be employed to process the document content feature
values to determine a document textual authoritativeness value, including, for
example, using an ordinal regression process or using a multi-class classification
process.

[0056]    The document textual authority class determination circuit or routine
260 determines the textual authority class of a document based at least on the textual
authoritativeness value 350-360 determined for that particular document.  In various
exemplary embodiments, the document textual authority class determination circuit or
routine 260 maps or assigns the numerical value of the textual authoritativeness value
350-360 to a particular document textual authority class 430, such as, for example, the
textual authority class "1", as shown in Fig. 6, using the trained document textual
authority model 232.

[0057]    In various exemplary embodiments, the document textual authority
class determination circuit or routine 260 determines a document's textual authority
class 430, such as, for example, the textual authority  class "1" by either mapping the

textual authoritativeness value 350 as computed by the circuit or routine 250 to the
corresponding class assignment framework 440, as in the case or regression models,
or by directly outputting the class label value computed by circuit 250, as in the case
of the classification model.

[0058]    In an exemplary embodiment, as shown in Fig. 13, the textual
authority class 430 of a particular document is based at least on the numerical value of
the textual authoritativeness value 350, rounded off to the nearest integer number.  It
will be noted that using an AdaBoost algorithm model provides an integer value
representing the textual authority class of a document.

[0059]    The document combined authoritativeness determination circuit or
routine 270 is activated by the controller 220 to determine the overall
authoritativeness of a document in various information retrieval applications, based in
part on the textual authoritativeness value and/or textual authority class determined
for a document.  These information retrieval applications, such as, for example,  re-
ranking web document searches, determining the authoritativeness of a document
based on textual and social authority, expanding web search queries, and determining
an aggregate ranking of two or more rank orderings are discussed in detail below.

[0060]    The document classification accuracy improvement circuit or routine
275 is activated by the controller 220 to improve the document authority classification
and ranking processes by improving the textual authority estimation of documents
included in the trained textual authority model 232.  In various exemplary
embodiments, the document classification accuracy improvement circuit or routine
275 incorporates user feedback to automatically adapt the system performance.

[0061]    Fig. 4 shows in greater detail one exemplary embodiment of the
trained document textual authority model 232.  As shown in Fig. 4, in one exemplary
embodiment, the trained document textual authority model 232 includes a document
attribute model 2322, a document class labeling model 2324, a document content
features subset selection model 2326, and a predictive model 2328, each usable to
assign the set of document content feature values to a textual authority and/or to a
textual authority class.  It should be appreciated that while the trained model is
entirely automatic, the process of training the document textual authority model 232
may not be entirely automatic.  Rather, instructions associated with document
attribute classification model 2322 and the document class labeling model 2324 may

13                    Xerox Docket No. D/A1707

be manually or automatically executed, while instructions associated with the document content features subset selection model 2326 and the predictive model 2328 may be executed by an automatic execution, such as, for example, processor implemented operations, or by using fully automatic process operations.

[0062]    In various exemplary embodiments, the document attribute model 2322 forms the basis for a person or machine to evaluate and classify a set of exemplary document attributes.  As shown in Fig. 5, these exemplary document attributes 410 include (1) whether the document has been reviewed or examined by others, (2) the author's background, (3) the targeted audience, and (4) the author's institutional affiliation.  For each document attribute 410 that is evaluated, the document attribute classification model 2322 provides possible qualitative values 420. It will be noted that the document classification attributes 410 and attribute values 420 shown in Fig. 5 represent only one exemplary embodiment.  Other document attribute classification models within the scope of this invention may consider these and/or additional or alternative document classification attributes 410 and/or attribute values 420.  For example, the place of publication, for example a particular newspaper website, the number and type of references in the document, or the presence of graphs may also be considered.

[0063]    In various exemplary embodiments, the document class labeling model 2324 assigns an authority class to each document being analyzed by the trained document textual authority model 232, where the class is based on the exemplary document authority assigning framework shown in Fig. 6.  The exemplary set of document authority classes covers a large portion of the documents available on the Internet and is particularly relevant to high-value informational domains like medical and scientific information.  The document authority classes 430 range from the most authoritative documents, that is, documents written by someone with a scientific background for an audience with a scientific background, to documents written by a random person for anyone willing to read that person's postings.

[0064]    In various exemplary embodiments, the document content features subset selection model 2326 evaluates and selects a subset of document content features from the large number of content features that may be present within a document, for use in ranking  and classifying of documents with respect to authoritativeness levels.  To fully capture and accurately represent documents that are

14          Xerox Docket No. D/A1707

typically encountered in web searches, a large number of document content features
310 that capture linguistic content, such as numerals, words with learned prefixes or
learned suffixes, hyperlinks, abbreviations, number of noun phrases, and/or that
capture presentation content, such as, for example, colors and/or tables of a web
document or web page, may be considered. However, if all potential document
content features 310 are used in determining the authoritativeness of a document, the
features that are less informative as to authoritativeness often just add noise to the
decision. Furthermore, adding these features in determining the authoritativeness of a
document decreases the speed with which authoritativeness decisions can be made.
The subset selection model 2326 uses the training set of documents that were
manually labeled with respect to the authority of these documents using the document
attribute classification model 2322 and the document class labeling model 2324.

[0065]    In various exemplary embodiments, the document content features
subset selection model 2326 selects a subset of document features using regression
techniques, for example by performing a stepwise regression using the "Efroymson"
method of the S software package, as outlined by R. A. Becker et al., "S-plus
Reference Manual," Statistical Sciences Inc., Seattle, Washington, 1990, which is
incorporated herein by reference in its entirety. The Efroymson method is an iterative
method that adds a new document content feature variable to the selected set of
document content features at each iteration, and then considers whether any of the
content features currently in the subset should be dropped based on partial
correlations between the new and selected set of features. In addition, other variables
selection techniques, such as, for example, mutual information and AdaBoost can be
used to select a content feature subset.

[0066]    In various exemplary embodiments, the predictive model 2328,
which is usable to assign document content feature values to a textual authority and/or
a textual authority class, encodes the selected subset of document content features into
a feature vector x. The predictive model 2328 then develops a predictive model that
maps the feature vector x to an authority rank $a_{text}$.

[0067]    In various exemplary embodiments, the predictive model 2328 uses a
linear regression algorithm model or a boosted decision tree algorithm model as a
prediction model to classify the documents. The predictive model 2328 uses the
reduced document content features set as presented above and the manually-labeled

training set of documents.  The predictive model 2328 uses metric-regression techniques or boosted decision tree techniques to estimate the authority of each document in a test set separate from the training set.  In alternate exemplary embodiments, the predictive model 2328 may employ other approaches, such as ordinal regression and multi-class classification techniques, to estimate the authority of a document based on the evaluated document content features of that document.

[0068]    One exemplary set of document authority classes 430 developed and included in the trained model 232 is presented below, together with a short description or example.  It should be appreciated that many of the examples are from the medical domain and are used for the purpose of illustration.  For example, the document in the Authority Class 1 includes scientific documents created by or for a professional and written for other professionals.  Examples of Authority Class 1 documents include scientific research papers and articles from the Center for Disease Control (CDC), or the New England Journal of Medicine.  The documents in the Authority Class 2 include general information-scientific documents provided by scientific organizations and written for the general public.  Examples of Authority Class 2 documents include press releases from the CDC, or the University of California at San Francisco (UCSF).  The documents in the Authority Class 3 include documents that contain information provided by reputable sites.  Examples of Authority Class 3 documents include documents provided by the health site "drkoop.com".

[0069]    The documents in the Authority Class 4 include general information-news documents provided by news organizations for the general public.  Examples of Authority Class 4 documents include documents provided by Time Magazine® or documents provided by Cable News Network®.  The documents in the Authority Class 5 include documents provided by commercial entities.  Examples of Authority Class 5 documents include documents provided by the commercial web site "drugstore.com".  The documents in the Authority Class 6 include documents provided by mail groups and discussion lists, as well as newspaper opinion and editorial documents.  The documents in the Authority Class 7 include documents provided by web home pages.  Examples of Authority Class 7 documents include personal home pages and organization home pages, such as the home pages of the Green Party.

[0070]   It should further be appreciated that there is an implicit ordering of the authoritativeness of these classes.  All things being equal, people regard scientific documents as more authoritative then press reports, and press reports as more authoritative than information found on newsgroups.  The ordering relation presented in Fig. 6 allows one to rank and compare the authority of different documents.  As illustrated in Fig. 6, the authority of each class was mapped to an ordered set of the positive integers.  In general, any monotonic map from the set of classes to the set of real numbers can be used to assign an authority class/rank 430, such as, for example, using Box-Cox transformations to map these integer features to continuous features. In the exemplary embodiment shown in Fig. 6, a map 440 was defined from the class of documents to positive integers, corresponding to the list shown in the Fig. 6.

[0071]   It should further be appreciated that the authority classes 430 presented above represent only exemplary embodiments of such document authority classes.  In practicing the various exemplary embodiments of the systems and/or the methods of this invention, other document authority classes and/or class assignment frameworks may be used.  For example, a user may wish to assign an authority class 430 to web links pages that typically contain a short paragraph describing each link that occurs within that page.  These pages may be assigned a possible authority class value of "8", because, although these pages may point to authoritative documents, they do not in themselves contain any authoritative information.

[0072]   Fig. 7 is a flowchart outlining one exemplary embodiment of a method for creating or "training" a document textual authority model using a set of labeled documents to create a trained document textual authority model according to this invention.  As shown in Fig. 7, the method begins in step S200, and continues to step S210, where, for each document that is manually labeled, a set of exemplary document classification attributes are defined and evaluated according to a predetermined framework.  In various exemplary embodiments, the framework considers and evaluates various document classification attributes, including, for example, whether the document has been reviewed by others, whether the author is a professional or a member of the general public, whether the target audience intended for or addressed to by the document is professional or general in nature, and/or whether the author is affiliated with a professional organization, the media, or with a commercial organization.

17          Xerox Docket No. D/A1707

[0073]    Then, in step S220, the document attribute evaluation framework and
its results, as shown in Figs. 5 and 6, is applied to assign an authority class to each
document to be used to create the trained model.  The set of document authority
classes that can be assigned can be selected to cover a large portion of the documents
available on the Internet and is particularly relevant to high-value informational
domains like medical and scientific information.  As shown in Fig. 6, the possible
document authority classes range from the most authoritative documents, that is,
documents written by someone with a scientific background for an audience with a
scientific background, to documents written by a random person for anyone willing to
read their web page.

[0074]    Next, in step S230, a subset of document content features that are
good predictors of the textual authoritativeness of a document are selected using an
iterative stepwise regression technique.  Then, in step S240, the selected subset of
document content features is used to determine a set of document content feature
values which may include one or more document content feature values.  In step
S250, the set of document content feature values is encoded into a feature vector x.
Next, in step S260, a predictive model is developed that allows mapping of the feature
vector x to an authority rank $a_{text}$.  Operation then continues to step S270, where the
operation of the textual authoritativeness training method stops.

[0075]    Predicting the textual authority of a document represented by a
feature vector x can be viewed as a cost-sensitive multi-class classification problem.
Because of the relative ranked relationship between classes, the cost of
misclassification is not the same between each pair of classes.  That is, for example,
the cost of misclassifying a home page as a scientific document is much higher then
the cost of cost of misclassifying a general information document by a scientific
organization as a scientific document.  The inventors have discovered that in various
exemplary embodiments, metric-regression algorithms and boosted decision trees
achieve a good or high-quality trade-off between model and training complexity on
one hand, and generalization and prediction on the other hand.

[0076]    In various exemplary embodiments, in step S260, a linear regression
model or a boosted decision tree may be used to classify the documents.  The
predictive model is developed using at least the subset of document content features
selected in step 230 and the manually-labeled training set.  The textual

authoritativeness value of each document in a test set separate from the training set is
then estimated using the regression model or the boosted decision tree model.

[0077]    In various exemplary embodiments, in step S230, Efroymson's
stepwise regression technique can be used to select a subset of document content
features.  The Efroymson method is an iterative method that adds a new document
content feature variable to the selected set at each iteration, and then considers
whether any of the content features currently in the subset should be dropped based on
partial correlations between the new and selected set of features.

[0078]    In particular, in the Efroymson's method, the method begins with an
initially empty document content feature set.  In each subsequent iteration, each
document content feature not in the document content feature set is evaluated one at a
time, and the best content feature for predicting authoritativeness from the set of test
content features is selected.  Partial correlations between the content feature selected
in the current step and the content features that have already been selected are used to
determine if any of the variables currently in the subset of selected document content
features should be dropped.

[0079]    Fig. 8 is a flowchart outlining one exemplary embodiment of a
method for determining the textual authoritativeness of each document of a first set of
one or more documents according to this invention.  As shown in Fig. 8, the method
begins in step S300, and continues to step S310, where the first set of relevant
documents, such as, for example, a number of web documents, is identified.  The first
set of documents is identified by performing an initial web-based search using any
known or later-developed web search techniques, such as, for example, using the
Google® engine to issue a query and conduct a search for documents pertinent to a
particular topic or subject area.

[0080]    Next, in step S320, for each document in the first set of relevant
documents, a set of document content feature values is determined.  Then, in step
S330, the textual authoritativeness value of each document is determined by
processing the set of document content feature values determined using a trained
document textual authority model.  Operation then continues to step S340.

[0081]    In the optional step S340, the textual authority class of each
document in the first set of relevant documents is determined based on the textual
authoritativeness value determined for each particular document and a textual

authority class assignment framework in the trained document textual authority model.  In various exemplary embodiments, each document may be further ordered, arranged, or ranked based on the textual authoritativeness value, textual authority class, and/or other quantitative measures of that document that may be associated with, or based on, the document content feature values of that document.  Operation then continues to step S350, where operation of the method stops.

[0082]    In various exemplary embodiments, in step S320,  one or more document content feature values are included in the set of document content feature values for each document in the first set of relevant documents.  One or more document content feature values are determined by processing a predetermined subset of document content features found in a particular document through the trained document textual authority model.  In one exemplary embodiment, one or more document content feature values for each document are  determined by processing the predetermined subset of document content features using one or more of parsing and mathematical processes or methods.

[0083]    In various exemplary embodiments, in step S330, the set of document content feature values of the document being evaluated are input to the trained document textual authority model.  The document textual authority model uses the document content feature values to estimate the textual authoritativeness value of the document.  This value may be a real number in the range of values for the class labels in 440, as shown in Fig. 6.

[0084]    In various exemplary embodiments, in step S330, the textual authoritativeness value of each document is determined by processing the set of document content features values using one or more metric-regression algorithms or classification methods.  In one exemplary embodiment, a linear regression model is used to process a set of document content feature values that will be used to characterize each document.  In an alternate embodiment, a boosted decision tree method is used to process a set of document content feature values that will be used to characterize each document.  In alternate exemplary embodiments, any other known or later-developed regression or classification methods, including, for example, an ordinal regression process or a multi-class classification process, may be employed to process the set of document content feature values that will be used to characterize each document.

20          Xerox Docket No. D/A1707

[0085]    In various exemplary embodiments, in optional step S340, the class associated with a value that most closely approximates in some way, such as, for example, a floor, or ceiling or rounding of, the estimated value may be selected as the document textual authority class for that document.

[0086]    Fig. 9 is a flowchart outlining one exemplary embodiment of a method for applying textual authoritativeness for determining methods to re-rank documents retrieved by search engines according to this invention.  In a large heterogeneous and constantly evolving collection, such as the world wide web, the results returned by a search engine in response to a specific query often include a wide range of documents that encompass all ranges of authoritativeness.  While this might be a desirable feature in some situations, users are more likely to be interested in a specific class of documents, such as, for example, scientific documents.  One possible application of the textual authority determining method is to reorder and filter the search results according to the textual authority, and then return all the documents that fall within a certain authority range, such as, for example, scientific documents.

[0087]    As shown in Fig. 9, the method begins in step S400, and continues to step S410, where a first set of relevant documents, such as, web documents, is identified.  The first set of documents is identified by performing an initial web-based search using any known or later-developed web search technique, such as, for example, using the Google® engine to issue a query and conduct a search for documents pertinent to a particular topic or subject area.

[0088]    Then, in step S420, a pre-determined number of high social authority-ranked documents, such as, for example, a number of the highest ranked documents, as identified by the web search engine, are selected from the first set of relevant documents.  Next, in step S430, for each selected high social authority-ranked document, a textual authoritativeness value of the document is determined using one exemplary embodiment of a method for determining textual authoritativeness value according to this invention, such as the exemplary embodiment described with respect to Fig. 8.  It will be noted that as part of step S430, a document textual authority class may be determined using one exemplary embodiment of a method for determining document textual authority class according

to this invention, such as the exemplary embodiment described with respect to Fig. 8. Operation then continues to step S440.

[0089]    In step S440, the high social authority-ranked documents are re-ordered based on one or more of determined textual authoritativeness value and determined textual authority class.  In various exemplary embodiments, each document may be ordered, arranged, or ranked based on the textual authoritativeness value of that document, on the textual authority class of that document, or based on any other known or later-developed re-ranking scheme.

[0090]    Next, in step S450, the documents that have been re-ordered or re-ranked based on their textual authoritativeness value and/or textual authority class are displayed based on the newly determined ranks.  Operation then continues to step S460, where the operation of the method stops.

[0091]    In various exemplary embodiments, in step S420, the number of top-ordered documents selected may be in a range of approximately 10-200 documents.  It should be appreciated that other ranges of number of top-ordered documents may be selected based on, such as, for example, user preferences, application type, computing capabilities, etc.  For example, in situations where the amount of information on a particular topic or subject area is significant, the number of top-ordered documents selected may be in a range of approximately 10-2000 documents or larger.  Conversely, when only a small number of documents are retrieved by the search engine on a particular topic or subject area, the documents selected may include the entire identified set.

[0092]    In various exemplary embodiments, in step S430, determining the textual authoritativeness value of a document includes, for example, determining a set of document content feature values for each document in the first set of relevant documents by processing a predetermined subset of document content features present in a particular document through the trained document textual authority model, and processing the set of document content feature values using one or more metric-regression algorithms or classification methods.  In various exemplary embodiments, in step S430, determining the textual authority class of a document further includes using the textual authoritativeness value determined for each particular document to compare it with a set of textual authority class values using the textual authority class assignment framework in the trained document textual authority model.

22                    Xerox Docket No. D/A1707

[0093]   Fig. 10 is a flowchart outlining one exemplary embodiment of a method for combining textual authoritativeness with social authority to improve estimation of a document's authoritativeness according to this invention.  As shown in Fig. 10, operation of the method begins in step S500, and continues to step S510, where a first set of relevant documents, such as, web documents, is identified.  The first set of documents is identified by performing an initial web-based search using any known or later-developed web search technique, such as, for example, using the Google® engine to formulate a query and conduct a search for documents pertinent to a particular topic or subject area.  Depending on the size of the first set of web documents identified, the first set of relevant documents may further be reduced using any known or later-developed search narrowing technique, such as, for example, Boolean techniques, specifying additional key words and/or parameters to the search engine, and the like.

[0094]   Then, in step S520, the social authority or link structure of each relevant web document remaining in the set of relevant documents is evaluated.  In various exemplary embodiments, the social authority or link structure of each top-ordered document is evaluated by determining the other documents in the document collection that the document links to or  the other documents in the document collection that the document is linked to.  Next, in step S530, for each selected document, the textual authoritativeness value is determined using one exemplary embodiment of a method for determining textual authoritativeness value according to this invention, such as the exemplary embodiment described with respect to Fig. 8.  It will be noted that as part of step S530, a document textual authority class may be determined using one exemplary embodiment of a method for determining document textual authority class according to this invention, such as the exemplary embodiment described with respect to Fig. 8.

[0095]   In step S540, for each relevant document, a weighted social authority rank is estimated based on the textual authority estimated for that particular document.  Next, in step S550, the documents that have been ranked or ordered based on their weighted authority rank, as determined by combining textual authority with social authority estimates, are displayed.  Operation then continues to step S560, where operation of the method stops.

23                    Xerox Docket No. D/A1707

[0096]    In various exemplary embodiments, in step S530, determining the
textual authoritativeness value of a document includes, for example, determining a set
of document content feature values for each document in the first set of relevant
documents by processing a predetermined subset of document content features present
in a particular document through the trained document textual authority model, and
processing the set of document content feature values using one or more metric-
regression algorithms or classification methods.  In various exemplary embodiments,
in step S530, determining the textual authority class of a document further includes
using the textual authoritativeness value determined for each particular document to
compare it with a set of textual authority class values using the textual authority class
assignment framework in the trained document textual authority model.

[0097]    In various exemplary embodiments, in step S540, the document's
textual authority estimates are combined with the social authority/link structure
analysis using the methodology discussed in detail below.

[0098]    The social authority of a page in a networked structure reflects how
other members in that structure view that page.  Generally, the more members in the
community that point to a specific page, the higher the authority of that page.
However, not all pages that make recommendations are equally selective in terms of
the pages that they point at.  For example, the original HITS algorithm defines the
notion of "hub."  A hub is a specific page that points to high-authority pages.
Conversely, a high-authority page is pointed at by high-quality hubs.

[0099]    In various exemplary embodiments, the method of combining textual
authority with social authority according to this invention associates a set of hyper-
linked pages V having a directed graph $G = (V, E)$ with the nodes corresponding to
the pages.  A directed edge $(p, q) \in E$ indicates the presence of an edge from p to q.
The graph structure may be represented by the adjacency matrix A with entry
$a[i][j] = 1$ if there is a link from node i to node j, and is set to 0 otherwise.

[0100]    The method defines the authority weight auth(p) and the hub weight
hub(p) of page p as follows:

$$\mathrm{auth}(p) \quad = \quad \sum_{q:(q,p)\in E} \mathrm{hub}(q) \qquad\qquad (1)$$

$$\mathrm{hub}(p) \quad = \quad \sum_{q:(q,p)\in E} \mathrm{auth}(q) \qquad\qquad (2)$$

24          Xerox Docket No. D/A1707

[0101]    As outlined in "Authoritative sources in a hyperlinked environment,"
J. Kleinberg, Proc. of the 9th ACM-SIAM Symposium on Discrete Algorithms, 1998,
the authority weights correspond to the entries of the principal eigenvector of the ma-
trix $A^T A$ and that the hub weights correspond to the entries of the principal
eigenvector of the matrix $AA^T$. The algorithm used by the PageRank® search engine
replaces the adjacency matrix A with the matrix M, where each row of matrix A is
normalized to sum to 1:

$$P = \alpha U + (1-\alpha)M \qquad\qquad (3)$$

where:

[0102]    U is the transition matrix of uniform transition probability and
represents a random transition to any page; and

[0103]    $\alpha$ represents the probability that a user will jump to a random page

[0104]    In one exemplary embodiment, $\alpha$ has a value in a range of
approximately 0.1-0.2.

[0105]    In its current form, the adjacency matrix assigns equal weights to all
the links.  The textual authority of a page provides an estimate of the intrinsic quality
of the page and is therefore an indicator of the quality of the pages linked to by that
document.

[0106]    In various exemplary embodiments, a weighted social authority rank
is determined using the textual authoritativeness value estimated for that particular
document and replacing the entries of the adjacency matrix corresponding to page j by
the textual authority of page j.  Specifically, the textual authority can be combined
with the social authority by setting m[i][j] to the normalized textual authority of the
page i if the page i points to the page j and to zero otherwise.

$$m_w[i][j] = \begin{cases} \dfrac{auth_w(i)}{|i|} & \text{if i points to j} \\ 0 & \text{otherwise} \end{cases} \qquad (4)$$

where $|i|$ is the out degree of page i. The adjacency matrix M is the matrix with ith
and jth entry set to  $m_w[i][j]$

[0107]    In various exemplary embodiments, the weighted authority ranks are
estimated as the entries of the principal eigenvectors of the matrix  $A_w^T A_w$  when HITS-
like algorithms or methods are used.  In alternative exemplary embodiments, the

25                      Xerox Docket No. D/A1707

weighted authority ranks are estimated as the principal right eigenvector of P when PageRank®-like algorithms or methods are used.

[0108]    It should be appreciated that adding a few keywords or linking to good hubs would not significantly change the textual authority.  In general, only an authoritative rewrite of the page will change the textual authority of a document.  In that spirit, the textual authority produces a more robust weighting that can not be easily spoofed.

[0109]    Fig. 11 is a flowchart outlining one exemplary embodiment of a method for applying textual authoritativeness estimates to expand and improve document query searches.  In a large number of situations, the intended topic of a query is broader then the specific query terms.  Thus, matching the query against the documents is usually not sufficient.  Instead of directly using the query term, the query is first expanded into a broader query topic using textual authority estimating techniques.

[0110]    Generally, the query expansion may include two phases.  First, a search engine is used to get an initial set of relevant documents.  The most frequent terms in the initial set or a subset of the initial set are then used to define a candidate set of query expansion terms.  The actual query expansion terms are extracted from the candidate set using statistical tests.  The concatenation of the new actual query expansion terms and the original query terms forms a new query that is given to a search engine.  The search results for the new query provide a richer set of documents then the original query.

[0111]    As shown in Fig. 11, the method begins in step S600, and continues to step S610, where a first set of relevant documents, for example, web documents, is identified.  The first set of relevant documents may be identified by performing an initial web-based search using various known or later-developed web search techniques, such as, for example, using the Google® engine to issue a query and conduct a search for documents pertinent to a particular topic or subject area. Depending on the size of the first set of web documents identified, the document set may further be reduced using any known or later-developed search narrowing technique, such as Boolean techniques, specifying additional key words and/or parameters to the search engine, and the like.  Then, in step S620, for each selected document, the textual authoritativeness value is determined using one exemplary

embodiment of a method for determining textual authoritativeness according to this invention, such as the exemplary embodiment described with respect to Fig. 8. It will be noted that as part of step S620, a document textual authority class may be determined using one exemplary embodiment of a method for determining document textual authority class according to this invention, such as the exemplary embodiment described with respect to Fig. 8.

[0112]    To ensure that highly authoritative documents are returned, the expanded query includes terms that correlate with textually authoritative documents. In various exemplary embodiments, candidate query expansion terms are extracted from textually authoritative documents whose textual authority exceeds a certain predetermined threshold, rather than from all documents in the first set of relevant documents.

[0113]    Therefore, in step S630, before extracting candidate query expansion terms, a second subset of relevant documents is selected. This second subset of relevant documents includes documents whose textual authoritativeness values exceed a predetermined textual authoritativeness value. Next, in step S640, a candidate set of query expansion terms is defined by evaluating and extracting the most frequent terms present in the second subset of relevant documents. Then, in step S650, actual query expansion terms are selected from the candidate set of query expansion terms using one or more statistical tests. Operation then continues to step S660.

[0114]    In step S660, the actual query expansion terms selected by combining textual authority with social authority are submitted to the search engine and the results displayed. Operation then continues to step S670, where the operation of the method stops.

[0115]    In various exemplary embodiments, in step S620, determining the textual authoritativeness value of a document includes, for example, determining a set of document content feature values for each document in the first set of relevant documents by processing a predetermined subset of document content features present in a particular document through the trained document textual authority model, and processing the set of document content feature values using one or more metric-regression algorithms or classification methods. In various exemplary embodiments, in step S620, determining the textual authority class of a document further includes

27                    Xerox Docket No. D/A1707

using the textual authoritativeness value determined for each particular document to compare it with a set of textual authority class values using the textual authority class assignment framework in the trained document textual authority model.

[0116]   In various exemplary embodiments, in step S650, the actual query expansion terms can be selected from candidate query expansion terms using one or more statistical tests, such as, for example, the log likelihood ratio test, Fisher's exact ratio or mutual information.  First, the log likelihood ratio test, as described in "Accurate methods for the statistics of surprise and coincidence," by T.E. Dunning, Computational Linguistics, Vol. 19, Issue No. 1, pp. 61-74, 1993, which is incorporated herein by reference in its entirety, is used to test whether the distribution of each of the candidate terms in the relevant documents is significantly different from its distribution in a general collection of documents.  Next, if the distribution of specific term is significantly different, then the term is included in the set of actual query expansion terms.

[0117]   In various exemplary embodiments, the log likelihood ratio (LLR) test can be conveniently formulated as illustrated in Table 1 below, where T (t, R) is the number of times a term "t" occurs in the relevant documents, T(t, N) is the number of times the term "t" occurs in the non-relevant documents, T(~t,R) is the number of times one or more terms ~t, other than "t" term, occur in the relevant documents, and T (~t, N) is the number of times the one or more terms ~t, other than "t" term, occurs in the non-relevant documents.  The counts for T (t, N) and T (-t, N) are determined from a general corpus, as described in "100 million words of English: the British national corpus," by G. Leech, 1992, which is incorporated herein by reference in its entirety.

Table 1:  Contingency Table for Log Likelihood Ratio Test

|              | term t  | other terms |
|--------------|---------|-------------|
| Relevant     | T(t,R)  | T(¬t,R)     |
| non-relevant | T(t,N)  | T(¬t,N)     |

[0118]   The log likelihood performs a hypothesis test.  The null hypothesis is that a single model has generated the observed data.  The alternate hypothesis is that two models generated the data.  The null hypothesis $H\_0$ is that the distribution of the

term "t" is the same for the relevant and non-relevant documents and that the probability of observing a term from "t" is given by

$$p_t^{null} = \frac{T(t,N) + T(t,R)}{T(t,N) + T(t,R) + T(\neg t,R) + T(\neg t,N)} \qquad (5)$$

[0119]   The probability of observing the data according to null hypothesis is

$$p(H_0) =$$
$$p(T(t,N),T(t,R) \mid p_t^{Null}) =$$
$$\binom{T(t,N) + T(\neg t,N)}{T(t,N)} (p_t^{Null})^{T(t,R)} (1 - p_t^{Null})^{T(\neg t,N)} * \binom{T(t,R) + T(\neg t,R)}{T(t,R)} (p_t^{Null})^{T(t,R)} (1 - p_t^{Null})^{T(\neg t,R)}$$

[0120]   The alternate hypothesis is that the distribution of the term "t" is different for the relevant and non-relevant documents. The probability of observing the term "t" on the relevant documents is given by

$$p_t^R = \frac{T(t,R)}{T(t,R) + T(\neg t,R)} \qquad (7)$$

[0121]   The probability of observing the term "t" in the non-relevant documents is given by

$$p_t^N = \frac{T(t,N)}{T(t,N) + T(\neg t,N)} \qquad (8)$$

[0122] The probability of observing the data according to the alternate hypothesis is

$$p(H_1) = p(T(t,N),T(t,R) \mid p_t^N, p_t^R)$$
$$= \binom{T(t,N) + T(\neg t,N)}{T(t,N)} (p_t^N)^{T(t,N)} (1 - p_t^N)^{T(\neg t,N)} * \binom{T(t,R) + T(\neg t,R)}{T(t,R)} (p_t^R)^{T(t,R)} (1 - p_t^R)^{T(\neg t,R)}$$

$$(9)$$

[0123]   The log likelihood ratio compares the two hypothesis $H\_0$, and $H\_1$. In particular we define

$$\lambda = -2 \log \left( \frac{P(H_0)}{P(H_1)} \right) \qquad (10)$$

[0124]   The quantity $\lambda$ is asymptotically $X^2$ distributed with one degree of freedom. This allows us to attach a confidence measure to our test and only accept terms whose distributions differ significantly in the relevant and relevant documents.

[0125]   The log likelihood ratio test is closely related to the concept of mutual information. In fact we have

29                     Xerox Docket No. D/A1707

$$-2\log\left(\frac{P(H_0)}{P(H_1)}\right) = 2 * M * I(\mathbf{t}, \mathbf{d})$$

$$\mathbf{t} = (t, \neg t)$$

$$\mathbf{d} = (R, N) \tag{11}$$

$$M = T(t, N) + T(t, R) + T(\neg t, R) + T(\neg t, N)$$

where $I(\mathbf{t}, \mathbf{d})$ is the mutual information between the terms and the documents.

[0126]    The concatenation of the new and old query terms forms a new query that is given to a search engine.  The search results for the new query provide a richer set of documents then the original query.

[0127]    Fig. 12 is a flowchart outlining one exemplary embodiment of a method for combining two or more document orderings or lists generated by various algorithms to produce a document aggregate ordering or list that is closest in some distance to each of the ordered lists.  This method is particularly advantageous for determining a aggregate ranking or aggregate listing that includes both rank-ordered and numerically-ordered lists.

[0128]    As shown in Fig. 12, the method begins in step S700, and continues to step S710, where a first set rank ordering or list of relevant documents, for example, web documents, is identified.   The first set rank ordering of relevant documents may be identified by performing an initial web-based search using various known or later-developed web search techniques, such as, for example, using the Google® engine to issue a query and conduct a search for documents pertinent to a particular topic or subject area.  Depending on the size of the first set rank ordering of web documents identified, the document set may further be reduced using any known or later-developed search narrowing technique, such as Boolean techniques, specifying additional key words and/or parameters to the search engine, and the like.

[0129]    Then, in step S720, for each selected document, a textual authoritativeness value is determined using one exemplary embodiment of a method for determining a textual authoritativeness value according to this invention, such as the exemplary embodiment described with respect to Fig. 8.  It will be noted that as part of step S720, a document textual authority class may be determined using one exemplary embodiment of a method for determining document textual authority class according to this invention, such as the exemplary embodiment described with respect to Fig. 8.

30                    Xerox Docket No. D/A1707

[0130]     In step S730, a second list ordering of relevant documents is
determined by ranking, ordering and/or selecting the first set or ordering of relevant
documents based on their determined textual authoritativeness value.  Next, in step
S740, an aggregate ordering or list is determined by taking the first set or ordering of
relevant documents, as identified by the search engine, and the second set or ordering
of relevant documents, as identified using a textual authoritativeness value, and
combining them using a rank aggregate algorithm model or method.  Then, in step
S750, the results of the aggregate ordering or aggregate list are displayed.  Operation
then continues to step S760, where the operation of the method stops.

[0131]     In various exemplary embodiments, in step S720, determining the
textual authoritativeness value of a document includes, for example, determining a set
of document content feature values for each document in the first set of relevant
documents by processing a predetermined subset of document content features present
in a particular document through the trained document textual authority model, and
processing the set of document content feature values using one or more metric-
regression algorithms or classification methods.  In various exemplary embodiments,
in step S720, determining the textual authority class of a document further includes
using the textual authoritativeness value determined for each particular document to
compare it with a set of textual authority class values using the textual authority class
assignment framework in the trained document textual authority model.

[0132]     In various exemplary embodiments, in step S740, the aggregate
ranking employs a rank aggregation algorithm model or method that is based at least
on the $MC_4$ algorithm model, as outlined by C. Dwork et al. in "Rank aggregation
methods for the web," in World Wide Web, pp. 613-622, 2001, and a Markov chain
method.  Generally, in the $MC_4$ algorithm model, as based on the Markov chains
method, if the current state is page "P", then the next state is chosen by first picking a
page "Q" uniformly from the union of all pages ranked by the ordering algorithm.
Then, if page "Q" is ranked higher than page "P" by the majority of ordered lists, state
is directed to "Q";  otherwise, state stays in "P".

[0133]   The Markov chain approach has two advantages over a procedure
that attempts to rank the pages using the average rank of each page.  First, the
procedure can handle both rank ordered and numerically ordered lists.  Second, and
perhaps more important, is that the procedure is robust.  In the case of the average

31                    Xerox Docket No. D/A1707

ranking, a single list can give a very high or low rank to specific item and can thus change the average weight.  For the Markov chain approach, a very high rank or very low rank will have the same effect as a high rank or a low rank, namely that the item should ranked high or low, respectively.

[0134]   The MC$_4$ induces a state transition matrix T, and assumes $\lambda_a > \lambda_b > ... \lambda_k$, where $\lambda_a$ is the "$a_{th}$" eigen value of T.  Then the desired ordering of the pages is given by " a, b,... k", the stable distribution of the Markov chain.

[0135]   The MC$_4$ algorithm, much like the PageRank$^®$ algorithm, describes the behavior of a surfer whose transitions are governed by the state transition matrix T.  The MC$_4$ rank aggregation algorithm presented above uses a majority vote to compute the state transition matrix T.

[0136]   In various exemplary embodiments, a rank aggregation algorithm model is determined by modifying the MC$_4$ algorithm model and allow higher weights to be assigned to "good" lists.  A good list is a balanced list, for example a list that is close to the general consensus.  The general consensus in this case, is the aggregate ordering of the lists.  The aggregate list is computed using the pseudo-code shown in Table 2 below.  The procedure simultaneously computes a weighted ranking of reviewers as well as an aggregate ranking of the lists.

Table 2

```
Compute Weighted State Matrix with Hard Transition
Inputs:              Matrix T
Inputs:              Lists l₁, l₂, ....lₙ,
                     weights w(1) . . . w(n)
Outputs:             State transition matrix T
for     each element i do
        for          each element j ≠ i do
                     for each list k do
                             f (i, j, k) = 1 if i is ranked higher
                             then j by list k
                             f (i, j, k) = -1 other wise
                             T (i, j) = T (i, j) + f (i, j, k) * weight(k)
                             endfor
                     if T(i, j) < 0), T(i, j) = 0)
        endfor
endfor

Normalize State Matrix
Inputs:              Matrix T
Outputs:             State transition matrix T
```

32                    Xerox Docket No. D/A1707

for      each row i do
     $\text{trans}_{out}$ = number of non zero entries of row i
     $\text{trans}_{in}$ = number of zero entries of row i
     $\text{trans}_{total}$ = number of entries of row i
     $\text{votes}_{out}$ = summation of non zero entries of row i

$$p_{in} = \frac{\text{trans}_{in}}{\text{trans}_{total}}$$

$$p_{out} = \frac{\text{trans}_{out}}{\text{trans}_{total}}$$

     $T(i,i) = p_{in}$
     for each entry $j \neq i$

$$T(i,j) = p_{out} \frac{T(i,j)}{\text{votes}_{out}}$$

     endfor
endfor

<u>Rank Aggregation with Hard Transition</u>
Inputs: Lists $l_1, l_2, \ldots l_n$ weights $w(1) \ldots w(n)$
Outputs:     List $l_a$
     compute state matrix T using weights $w_1^i, \ldots w_n^i$
     normalize state matrix T
     compute the stable distribution induced by T
     order the states using the stable distribution
     return a list of state $l_a$
end

<u>Weighted Rank Aggregation with Hard Transition</u>
Inputs: Lists $l_1, l_2, \ldots l_n$
Outputs:     List $l_a$ and weights $w_1, w_2 \ldots \ldots \ldots w_n$

Initialize , $i = 0$, $w_1^i, w_2^i, \ldots \ldots w_n^i = \frac{1}{n}$

while not converged do
     $l_a$ = Aggregate List with Hard Transitions using weights $w_1^i, \ldots w_n^i$
     for each list j compute the correlation $c_j^i$ between $l_j$, $l_a^i$

     for each list j set $wj^{i+1} = \frac{c_j^i}{\sum c_j^i}$

     if $\forall j \left| w_j^{i+1} - w_j^i \right| < \epsilon$ then converged
endwhile

[0137]   In various exemplary embodiments, the procedure allows a transition from page "P" to page "Q" whenever one of the experts ranks page "P" higher than page "Q". Computing the entries of the state transition matrix is performed using the following expressions:

33                               Xerox Docket No. D/A1707

[0138]  $$p\left(x_i \mid x_i\right) = \sum_k \left(p_c\left(x_i \mid x_i\right) p_t\left(x_i \mid x_i\right) + \right.$$

$$\sum_{j \neq i} p_c\left(x_j \mid x_i\right)\left(1 - p_t\left(x_j \mid x_i, e_k\right) p(e_k)\right) \tag{12}$$

[0139]  $$p_c\left(x_i \mid x_i\right) = p_c\left(x_i \mid x_j\right) = p_0 \tag{13}$$

[0140]  $$p\left(x_i \mid x_i\right) = p_0 \sum_k \left[1 + \sum_{j \neq i}\left(1 - p_t\left(x_j \mid x_i, e_k\right) p(e_k)\right)\right]$$

[0141]  $$p\left(x_j \mid x_i\right) = \sum_k p_c\left(x_j \mid x_i\right) p_t\left(x_j \mid x_i\right) p(e_k) \tag{14}$$

[0142]  $$p\left(x_j \mid x_i\right) = p_0 \sum_k p_t\left(x_j \mid x_i\right) p(e_k) \tag{15}$$

[0143]    where $p_t\left(x_j \mid x_i, e_k\right)$ is the probability of transitioning from page "i" to page "j" based on the recommendation of list "k", and $p_0 = p_c\left(x_i \mid x_j\right) = p_c\left(x_i \mid x_i\right)$ is the probability that any page will be selected at random.  Table 3 shows the pseudo code for one run of the algorithm, however, it is not iterative.  The pseudo-code for iteratively finding the aggregate list and the expert weights is shown in Table 4.

Table 3

```
Inputs: Lists l₁, l₂, ....lₙ weights w(1) . . . w(n)

Outputs:  List lₐ
          use Equations 12 and 15 to compute state matrix T
          compute the stable distribution induced by T
          order the states using the stable distribution
          return a list of state lₐ
end
```

[0144]    Knowing prior information about the quality of the experts, the optimal weights for the experts can be computed as shown in pseudo-code outlined in Table 4.

34                    Xerox Docket No. D/A1707

Table 4

| | |
|---|---|
| Inputs: | Lists $l_1$, $l_2$, ....$l_n$ |
| Outputs: | List $l_a$ and weights $w_1$, $w_2$...............$w_n$ |

Initialize , i = 0, $w_1^i$, $w_2^i$, .......$w_n^i = \dfrac{1}{n}$

while not converged do

$\qquad l_a^i =$   Aggregate Rank with Soft Transition
$\qquad\qquad$ using weights $w_i^i$, . . . $w_n^i$
$\qquad$ for each list j compute the correlation $c_j^i$ between

$t_j$, $t_a^i$

$\qquad$ for each list j set $w_j^{i+1} = \dfrac{c_j^i}{\sum c_j^i}$

$\qquad$ if $\forall j \left| w_j^{i+1} - w_j^i \right| < \in$ then converged

endwhile

[0145]    The rank aggregation algorithm model or method above allows for simultaneously determination of the aggregate ranking as well as for determining the weight or quality of each of the lists.  The rank aggregation algorithm model or method may be used for determining the ranking of both rank-ordered and numerically-ordered lists.

[0146]    As shown in Fig. 1, in various exemplary embodiments, the authoritativeness determining system 200 is implemented on a programmed general purpose computer.  However, the authoritativeness determining system 200 can also be implemented on a special purpose computer, a programmed microprocessor or microcontroller and peripheral integrated circuit elements, an ASIC or other integrated circuit, a digital signal processor, a hardwired electronic or logic circuit such as a discrete element circuit, a programmable logic device such as a PLD, PLA, FPGA or PAL, or the like.  In general, any device, capable of implementing a finite state machine that is in turn capable of implementing the flowcharts shown in Figs. 7-11, can be used to implement the authoritativeness determining system 200.

[0147]    Moreover, the authoritativeness determining system 200 can be implemented as software executing on a programmed general purpose computer, a special purpose computer, a microprocessor or the like.  In this case, the authoritativeness determining system 200 can be implemented as a resource residing on a server, or the like.  The authoritativeness determining system 200 can also be implemented by physically incorporating it into a software and/or hardware system,

35                    Xerox Docket No. D/A1707

such as the hardware and software systems of a general purpose computer or of a special purpose computer.

[0148]     Although the invention has been described in detail, it will be apparent to those skilled in the art that various modifications may be made without departing from the scope of the invention.

WHAT IS CLAIMED IS:

1.   A method for determining an authoritativeness of a document having a plurality of document content features, the method comprising:

determining a set of document content feature values; and

determining an authoritativeness for the document using a trained document textual authority model based on the determined set of document content feature values.

2.   The method of claim 1, wherein determining the set of document content feature values comprises extracting a subset of document content features from the plurality of document content features.

3.   The method of claim 1, wherein determining the set of document content feature values comprises determining the set of document content features values using one or more parsing techniques or methods.

4.   The method of claim 1, wherein determining the authoritativeness for the document comprises:

providing the set of document content feature values to the trained document textual authority model; and

determining a document textual authoritativeness value based at least on the set of document content feature values determined.

5.   The method of claim 1, wherein determining an authoritativeness for the document further comprising determining a textual authority class for the document.

6.   The method of claim 1, wherein the plurality of document content features includes at least some of question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features and readability indices features.

7.   The method of claim 2, wherein extracting a subset of document content features is performed using one or more regression techniques or methods.

8.   The method of claim 2, wherein extracting a subset of document content features is performed using one or more variable selection techniques or methods.

9.   The method of claim 7, wherein one or more regression techniques or methods comprises a stepwise regression technique.

Xerox Docket No. D/A1707

10. The method of claim 8, wherein one or more variable selection techniques or methods comprises one or more of mutual information technique and AdaBoost technique.

11. The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more statistical processes or techniques.

12. The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using one or more metric-regression algorithms or methods.

13. The method of claim 4, wherein determining a document textual authoritativeness value is performed by processing the set of document content feature values using an AdaBoost algorithm model or method.

14. A machine-readable medium that provides instructions for determining the authority of a document having a plurality of document content features, instructions, which when executed by a processor, cause the processor to perform operations comprising:

determining a set of document content feature values; and

determining at least one of textual authoritativeness value or textual authority class for the document using a trained document textual authority model based on the determined set of document content feature values.

15. The machine-readable medium according to claim 14, wherein the plurality of document content features includes at least some of question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features and readability indices features.

16. The machine-readable medium according to claim 14, wherein determining the textual authoritativeness value or a textual authority class for the document comprises:

extracting a plurality of document content features from each document;

determining a set of document content feature values for each document using one or more parsing techniques or methods; and

38                    Xerox Docket No. D/A1707

determining a textual authoritativeness value or a textual authority class for the document by using one or more of metric regression or boosted decision tree algorithms or methods.

17. A textual authority determining system that determines an authority of a document having a plurality of document content features, comprising:

a memory; and

a document textual authoritativeness value determination circuit or routine that determines at least a textual authoritativeness value for the document by processing a set of document content feature values determined for a subset of document content features extracted from the plurality of document content features using one or more of metric regression or boosted decision tree algorithms or methods.

18. The textual authority determining system of claim 17, wherein the plurality of document content features includes at least some of question marks, semicolons, numerals, words with learned prefixes, words with learned suffixes, words in certain grammatical locations, HTML features, abbreviations and classes of abbreviations, text characteristics features, speech tagging features and readability indices features.

19. The textual authority determining system of claim 17, further comprising a document content features extraction circuit or routine that determines a subset of document content features from the plurality of document content features using a stepwise regression process.

39                    Xerox Docket No. D/A1707

## ABSTRACT OF THE DISCLOSURE

Systems and methods for determining the authoritativeness of a document based on textual, non-topical cues.  The authoritativeness of a document is determined by evaluating a set of document content features contained within each document to determine a set of document content feature values, processing the set of document content feature values through a trained document textual authority model, and determining a textual authoritativeness value and/or textual authority class for each document evaluated using the predictive models included in the trained document textual authority model.  Estimates of a document's textual authoritativeness value and/or textual authority class can be used to re-rank documents previously retrieved by a search, to expand and improve document query searches, to provide a more complete and robust determination of a document's authoritativeness, and to improve the aggregation of rank-ordered lists with numerically-ordered lists.

1/13



FIG. 1

2/13



FIG. 2

3/13



use of particular characters in the plain text (e.g. question marks, semicolons)

numerals or particular styles of numerals (e.g. "34.56," "1957:31")   — 320

particular words (e.g., "I," "Mr.," "Dr.," "today")

word-classes (e.g., words with learned prefixes like "pseudo-" or "hetero-" or learned suffixes like "-acious", "-metric", "-icality")   — 321

words in certain grammatical locations (e.g. sentences beginning with adverbs)

HTML features (hyperlinks, tables, images, page color)   — 322

abbreviations and classes of abbreviations (e.g. "pp.", "c.c.")   — 323

text characteristics (e.g. document length, average and standard deviation of word, sentence, and paragraph lengths)

part of speech tagging features (e.g. number of noun phrases, verb phrases)   — 324

different readability indices (e.g. Gunning Fog or Flech).

310   300

FIG. 3

4/13



FIG. 4

5/13

## FIG. 5

| NUMBER | ATTRIBUTE | VALUES |
|--------|-----------|--------|
| 1 | REVIEW | REVIEWED (R), NOT REVIEWED (N) |
| 2 | AUTHOR'S BACKGROUND | PROFESSIONAL (P), GENERAL (G) |
| 3 | AUDIENCE | PROFESSIONAL (P), GENERAL (G) |
| 4 | AUTHOR'S AFFILIATION | PROFESSIONAL (P), MEDIA (M) COMMERCIAL (C), NONE (N) |

*410* ⌐     *420* ⌐

---

*410*     *430*

| ATTRIBUTE | | | | CLASS |
|-----------|---|---|---|-------|
| 1 | 2 | 3 | 4 | |
| R | P | P | P | 1 |
| R | P | G | P | 2 |
| R | P | G | N | 3 |
| R | P,G | G | M | 4 |
| R | P,G | G | C | 5 |
| R,N | P,G | G | P,N,M | 6 |
| N | G | G | N | 7 |

*440*

## FIG. 6

6/13



FIG. 7

7/13



FIG. 8

8/13



FIG. 9

9/13



FIG. 10

*10/13*



*FIG. 11*

*11/13*



FIG. 12

12/13

| URL | TEXTUAL AUTHORITATIVENESS VALUE USING LIN. REG. | TEXTUAL AUTHORITATIVENESS VALUE USING ADABOOST | TEXTUAL AUTHORITY CLASS (LIN. REG.) | TEXTUAL AUTHORITY CLASS (ADABOOST) |
|---|---|---|---|---|
| www.brainscience.brown.edu/news/postdocsalcohol.html | 2.36 | 2 | 2 | 2 |
| english.pravda.ru/fun/2001/08/23/13143.html | 2.52 | 3 | 2 or 3 | 3 |
| www.peele.net/lib/gambling.html | 2.66 | 3 | 3 | 3 |
| etoh.niaaa.nih.gov/ | 2.89 | 3 | 3 | 3 |
| www.addiction-ssa.org | 2.91 | 3 | 3 | 3 |
| www.macad.org | 2.93 | 3 | 3 | 3 |
| www.bma-wellness.com/Addiction/EtOHPsychobiology.htm | 2.94 | 3 | 3 | 3 |
| www.bfe.org/alco.htm | 2.96 | 3 | 3 | 3 |
| ssw.unc.edu/fcrp/Cspn/vol14_no4/gender_and_alcohol.htm | 3.03 | 3 | 3 | 3 |
| chemcases.com/alcohol/alc-11.htm | 3.07 | 3 | 3 | 3 |
| immuners.org/00/12step/recovery/treatment.htm | 3.10 | 3 | 3 | 3 |

FIG. 13

13/13

| Exemplary Sets of Document Content Feature Values | Exemplary Processes Used to Determine Sets of Document Content Features Values |
|---|---|
| 1.221 | Number of question marks and semicolons/ number of question marks in document |
| 0.27 | Number of noun phrases in document/ number of paragraphs in document |
| 0.156 | Number of particular style numerals/ number of total numerals present in document |
| 0.001 | Number of HTML features in document/ total number of characters in the document |

341
342
343
344
340

FIG. 14

Docket No.: <u>111745</u>

# APPLICATION FOR UNITED STATES PATENT
# DECLARATION AND POWER OF ATTORNEY

As a below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name; that

I verily believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural inventors are named below) of the subject matter which is claimed and for which a patent is sought on the invention entitled: <u>SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT COLLECTIONS</u>

described and claimed in the specification:

**Check one**

*a.   ☒  attached hereto.

b.   ☐  filed on _____ as Application No. _____ and amended on _____ (if applicable).

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose to the Office all information known to me to be material to patentability as defined in Title 37, Code of Federal Regulations, §1.56.

Under Title 35, U.S. Code §119, the priority benefits of the following foreign application(s) and/or United States provisional application(s) filed by me or my legal representatives or assigns within one year prior to this application are hereby claimed:

U.S. Provisional Application No. 60/380,876 filed on May 17, 2002

The following application(s) for patent or inventor's certificate on this invention were filed in countries foreign to the United States of America either (a) more than one year prior to this application, or (b) before the filing date of the above-named foreign priority application(s) and/or United States provisional application(s):

I hereby appoint the following as my attorneys of record with full power of substitution and revocation to prosecute this application and to transact all business in the Patent Office:

**James A. Oliff, Reg. No. 27,075; William P. Berridge, Reg. No. 30,024;**
**Kirk M. Hudson, Reg. No. 27,562; Thomas J. Pardini, Reg. No. 30,411;**
**Edward P. Walker, Reg. No. 31,450; Robert A. Miller, Reg. No. 32,771;**
**Mario A. Costantino, Reg. No. 33,565; Stephen J. Roe, Reg. No. 34,463;**
**Joel S. Armstrong, Reg. No. 36,430; Christopher W. Brown, Reg. No. 38,025;**
**Richard E. Rice, Reg. No. 31,560; and Paul Tsou, Reg. No. 37,956.**

**ALL CORRESPONDENCE IN CONNECTION WITH THIS APPLICATION SHOULD BE SENT TO OLIFF & BERRIDGE, PLC, P.O. BOX 19928, ALEXANDRIA, VIRGINIA 22320, TELEPHONE (703) 836-6400.**

I hereby declare that I have reviewed and understand the contents of this Declaration, and that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| 1 | ***Typewritten Full Name of First or Sole Inventor*** | Ayman | O. | Farahat |
|---|---|---|---|---|
| | | *Given Name* | Middle Initial | Family Name |
| 2 | **Inventor's Signature:** | *A. Farahat* | | |
| 3 | **Date of Signature:** | *8 / 28 / 2002* | | |
| | | Month | Day | Year |
| Residence: | | San Francisco | CA | US |
| | | City | State or Province | Country |
| Citizenship: | | Egyptian/Canadian | | |
| Post Office Address: (Insert complete mailing address, including country) | | | | |

*If Box (a.) is checked, this form may be executed only when attached to the specification (including claims).

**Note to Inventor: Please sign name exactly as it appears above and insert actual date of signing.

**IF THERE IS MORE THAN ONE INVENTOR USE PAGE 2 AND PLACE AN "X" HERE ☒**

**PAGE 2 OF U.S.A. DECLARATION FORM**
**(Discard this page in a sole inventor application)**

| 1 | *Typewritten Full Name of Second Joint Inventor (if any)* | Francine | R. | Chen |
|---|---|---|---|---|
| | | Given Name | Middle Initial | Family Name |
| 2 | **Inventor's Signature: | *Francine R. Chen* | | |
| 3 | **Date of Signature: | 8/28/02 | | |
| | | Month | Day | Year |
| | Residence: | Menlo Park | CA | US |
| | | City | State or Province | Country |
| | Citizenship: | US | | |

Post Office Address:
(Insert complete                XEROX CORP., Bldg. No./MS 35
                                3333 Coyote Hill Rd.
mailing address,
including country)               Palo Alto, CA  94304

| 1 | *Typewritten Full Name of Third Joint Inventor (if any)* | Charles | R. | Mathis |
|---|---|---|---|---|
| | | Given Name | Middle Initial | Family Name |
| 2 | **Inventor's Signature: | | | |
| 3 | **Date of Signature: | | | |
| | | Month | Day | Year |
| | Residence: | Stanford | CA | US |
| | | City | State or Province | Country |
| | Citizenship: | US | | |

Post Office Address:
(Insert complete
mailing address,
including country)

| 1 | *Typewritten Full Name of Fourth Joint Inventor (if any)* | Geoffrey | D. | Nunberg |
|---|---|---|---|---|
| | | Given Name | Middle Initial | Family Name |
| 2 | **Inventor's Signature: | | | |
| 3 | **Date of Signature: | | | |
| | | Month | Day | Year |
| | Residence: | San Francisco | CA | US |
| | | City | State or Province | Country |
| | Citizenship: | US | | |

Post Office Address:
(Insert complete
mailing address,
including country)

| 1 | *Typewritten Full Name of Fifth Joint Inventor (if any)* | | | |
|---|---|---|---|---|
| | | Given Name | Middle Initial | Family Name |
| 2 | **Inventor's Signature: | | | |
| 3 | **Date of Signature: | | | |
| | | Month | Day | Year |
| | Residence: | | | |
| | | City | State or Province | Country |
| | Citizenship: | | | |

Post Office Address:
(Insert complete
mailing address,
including country)

**Note to Inventors:** Please sign name exactly as it appears and insert the actual date of signing.

**This form may be executed only when attached to the first page of the Declaration and Power of Attorney form of the application to which it pertains.**

## PAGE 2 OF U.S.A. DECLARATION FORM
### (Discard this page in a sole inventor application)

1 **Typewritten Full Name
of Second Joint Inventor (if any)**

| Francine | R. | Chen |
|----------|-----|------|
| Given Name | Middle Initial | Family Name |

2 **\*\*Inventor's Signature:**
3 **\*\*Date of Signature:**

| Month | Day | Year |
|-------|-----|------|

Residence:

| Menlo Park | CA | US |
|------------|-----|------|
| City | State or Province | Country |

Citizenship:    US

Post Office Address:
(Insert complete    XEROX CORP., Bldg. No./MS 35
                   3333 Coyote Hill Rd.
mailing address,
including country)    Palo Alto, CA  94304

1 **Typewritten Full Name
of Third Joint Inventor (if any)**

| Charles | R. | Mathis |
|---------|-----|--------|
| Given Name | Middle Initial | Family Name |

2 **\*\*Inventor's Signature:**
3 **\*\*Date of Signature:** 4-20-02

| Month | Day | Year |
|-------|-----|------|

Residence:

| Stanford | CA | US |
|----------|-----|------|
| City | State or Province | Country |

Citizenship:    US

Post Office Address:
(Insert complete
mailing address,
including country)

1 **Typewritten Full Name
of Fourth Joint Inventor (if any)**

| Geoffrey | D. | Nunberg |
|----------|-----|---------|
| Given Name | Middle Initial | Family Name |

2 **\*\*Inventor's Signature:**
3 **\*\*Date of Signature:**

| Month | Day | Year |
|-------|-----|------|

Residence:

| San Francisco | CA | US |
|---------------|-----|------|
| City | State or Province | Country |

Citizenship:    US

Post Office Address:
(Insert complete
mailing address,
including country)

1 **Typewritten Full Name
of Fifth Joint Inventor (if any)**

| Given Name | Middle Initial | Family Name |
|------------|----------------|-------------|

2 **\*\*Inventor's Signature:**
3 **\*\*Date of Signature:**

| Month | Day | Year |
|-------|-----|------|

Residence:

| City | State or Province | Country |
|------|-------------------|---------|

Citizenship:

Post Office Address:
(Insert complete
mailing address,
including country)

**Note to Inventors:** Please sign name exactly as it appears and insert the actual date of signing.

**This form may be executed only when attached to the first page of the Declaration and Power of Attorney form of the application to which it pertains.**

## PAGE 2 OF U.S.A. DECLARATION FORM
### (Discard this page in a sole inventor application)

**1** Typewritten Full Name of Second Joint Inventor (if any)

Francine / Given Name    R. / Middle Initial    Chen / Family Name

**2** **Inventor's Signature:

**3** **Date of Signature:    Month    Day    Year

Residence:   Menlo Park / City    CA / State or Province    US / Country

Citizenship:   US

Post Office Address: (Insert complete mailing address, including country)
XEROX CORP., Bldg. No./MS 35
3333 Coyote Hill Rd.
Palo Alto, CA 94304

**1** Typewritten Full Name of Third Joint Inventor (if any)

Charles / Given Name    R. / Middle Initial    Mathis / Family Name

**2** **Inventor's Signature:

**3** **Date of Signature:    Month    Day    Year

Residence:   Stamford / City    CA / State or Province    US / Country

Citizenship:   US

Post Office Address: (Insert complete mailing address, including country)

**1** Typewritten Full Name of Fourth Joint Inventor (if any)

Geoffrey / Given Name    D. / Middle Initial    Nunberg / Family Name

**2** **Inventor's Signature:

**3** **Date of Signature:    Month    8/30/02    Day    Year

Residence:   San Francisco / City    CA / State or Province    US / Country

Citizenship:   US

Post Office Address: (insert complete mailing address, including country)
370 Fair Oaks Street
San Francisco, CA 94110

**1** Typewritten Full Name of Fifth Joint Inventor (if any)

Given Name    Middle Initial    Family Name

**2** **Inventor's Signature:

**3** **Date of Signature:    Month    Day.    Year

Residence:   City    State or Province    Country

Citizenship:

Post Office Address: (Insert complete mailing address, including country)

Note to Inventors: Please sign name exactly as it appears and insert the actual date of signing.

This form may be executed only when attached to the first page of the Declaration and Power of Attorney form of the application to which it pertains.

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

09/05/2002 EFLORES  00000043 240037   10232714

01 FC:101       740.00 CH

PTO-1556
  (5/87)

*U.S. Government Printing Office: 2002 — 489-267/69033

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Effective October 1, 2001 | Application or Docket Number<br>10 23714 |
| --- | --- |

## CLAIMS AS FILED - PART I

|  | (Column 1) | (Column 2) |
| --- | --- | --- |
| TOTAL CLAIMS | 19 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 19 minus 20= | * |
| INDEPENDENT CLAIMS | 3 minus 3 = | * |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

| SMALL ENTITY TYPE ☐ | OR | OTHER THAN SMALL ENTITY |
| --- | --- | --- |

| RATE | FEE | | RATE | FEE |
| --- | --- | --- | --- | --- |
| BASIC FEE | 370.00 | OR | BASIC FEE | 740.00 |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL | | OR | TOTAL | 740 |

* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

|  | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA |
| --- | --- | --- | --- |
| Total | * | Minus ** | = |
| Independent | * | Minus *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | |

| SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |
| --- | --- | --- |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| --- | --- | --- | --- | --- |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

### AMENDMENT B

|  | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA |
| --- | --- | --- | --- |
| Total | * | Minus ** | = |
| Independent | * | Minus *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| --- | --- | --- | --- | --- |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

1, 14, 17

### AMENDMENT C

|  | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA |
| --- | --- | --- | --- |
| Total | * | Minus ** | = |
| Independent | * | Minus *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | |

| RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
| --- | --- | --- | --- | --- |
| X$ 9= | | OR | X$18= | |
| X42= | | OR | X84= | |
| +140= | | OR | +280= | |
| TOTAL ADDIT. FEE | | | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875   (Rev. 8/01)    ☆U.S GPO.2001 482-124 / 59197    Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

<u>PATENT APPLICATION</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of

Ayman O. FARAHAT et al.

Application No.:  New U.S. Patent Application

Filed:   September 3, 2002                                   Docket No.:  111745

For:     SYSTEMS AND METHODS FOR AUTHORITATIVENESS GRADING, ESTIMATION
         AND SORTING OF DOCUMENTS IN LARGE HETEROGENEOUS DOCUMENT
         COLLECTIONS

### <u>INFORMATION DISCLOSURE STATEMENT</u>

Director of the U.S. Patent and Trademark Office
Washington, D.C.  20231

Sir:

     Pursuant to 37 CFR §1.56, the attention of the Patent and Trademark Office is hereby
directed to the references listed on the attached PTO-1449.  Unless otherwise indicated herein,
one copy of each reference is attached.  It is respectfully requested that the information be
expressly considered during the prosecution of this application, and that the references be made
of record therein and appear among the "References Cited" on any patent to issue therefrom.

☒    1.    This Information Disclosure Statement is being filed (a) within three months of
the U.S. filing date of this non-CPA application, OR (b) before the mailing date of a first
Office Action on the merits in the present application.  No certification or fee is required.

Respectfully submitted,

James A. Oliff
Registration No. 27,075

George P. Simion
Registration No. 47,089

JAO:GPS/mlb
Date:  September 3, 2002

**OLIFF & BERRIDGE, PLC**
**P.O. Box 19928**
**Alexandria, Virginia 22320**
**Telephone: (703) 836-6400**

DEPOSIT ACCOUNT USE
AUTHORIZATION
Please grant any extension
necessary for entry;
Charge any fee due to our
Deposit Account No. 24-0037

Sheet ___1___ of ___1___

| Form PTO-1449 (REV. 8-83) | US Dept. of Commerce PATENT & TRADEMARK OFFICE | ATTY DOCKET NO. 111745 | APPLICATION NO. New U.S. Patent Application |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT | | APPLICANTS Ayman O. FARAHAT et al. | |
| (Use several sheets if necessary) | | FILING DATE September 3, 2002 | |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUB CLASS |
|---|---|---|---|---|---|---|
| | | 6,285,999 | 09/04/2001 | Page | | |
| | | 6,112,202 | 08/29/2000 | Kleinberg | | |
| | | 6,336,112 B2 | 01/01/2002 | Chakrabarti et al. | | |
| | | 5,884,305 | 03/16/1999 | Kleinberg et al. | | |
| | | 6,334,131 B2 | 12/25/2001 | Chakrabarti et al. | | |
| | | 6,263,351 B1 | 07/17/2001 | Wolfe | | |
| | | 5,278,980 | 01/11/1994 | Pedersen et al. | | |
| | | 5,442,778 | 08/15/1995 | Pedersen et al. | | |
| | | 6,178,417 B1 | 01/23/2001 | Syeda-Mahmood | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUB CLASS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Pertinent Pages, etc.)

| | | |
|---|---|---|
| | Freund et al., "Experiments with a New Boosting Algorithm", AT&T Research, http://www.research.att.com/orgs/ssr/people/{yoav,schapire}/, 1996 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| | |

Examiner:   Initial if citation considered, whether or not citation is in conformance with M.P.E.P. 609; draw line through citation if not in conformance and not considered.   Include copy of this form with next communication to applicant.

Date:  September 3, 2002