Ekwan E. Rhow - State Bar No. 174604
  erhow@birdmarella.com
Grace W. Kang - State Bar No. 271260
  gkang@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile:  (310) 201-2110

Nicholas Groombridge (*pro hac vice*)          J. Steven Baughman (*pro hac vice*)
  ngroombridge@paulweiss.com                     sbaughman@paulweiss.com
Jenny C. Wu (*pro hac vice*)                   Megan Raymond (*pro hac vice*)
  jcwu@paulweiss.com                             mraymond@paulweiss.com
Michael F. Milea (*pro hac vice*)              Tanya S. Manno (*pro hac vice*)
  mmilea@paulweiss.com                           tmanno@paulweiss.com
PAUL, WEISS, RIFKIND,                          PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP                         WHARTON & GARRISON LLP
1285 Avenue of the Americas                    2001 K Street, NW
New York, New York 10019-6064                  Washington, DC 20006-1047
Telephone: (212) 373-3000                      Telephone: (202) 223-7300
Facsimile:  (212) 757-3990                     Facsimile:  (202) 223-7420

Attorneys for Defendant Twitter, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| PALO ALTO RESEARCH CENTER INC., | Case No. 2:20-cv-10754-AB(MRWx) |
| Plaintiff, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANT TWITTER, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| vs. | |
| TWITTER, INC., | |
| Defendant. | Hearing Date:  March 19, 2021<br>Time:   10:00 A.M.<br>Courtroom:  7B |
| | Assigned to Hon. André Birotte Jr. |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.   The '871 Patent ............................................................................................. 1

    A.   The '871 Patent Claims Are Directed to an Abstract Idea .......................... 1

    B.   The '871 Patent Claims Add No Inventive Concept .................................. 6

II.   The '781 Patent ............................................................................................. 8

    A.   The '781 Patent Claims Are Directed to an Abstract Idea .......................... 8

    B.   The '781 Patent Claims Add No Inventive Concept .................................. 11

III.   The '362 Patent ............................................................................................. 11

    A.   The '362 Patent Claims Are Directed to an Abstract Idea .......................... 11

    B.   The '362 Patent Claims Add No Inventive Concept .................................. 14

IV.   Twitter's Prosecution of a Patent Unrelated to This Case Is Irrelevant ............ 14

V.   Twitter Complied with L.R. 7-3's Meet-and-Confer Requirement, and Amendment at This Point Would Be Futile ......................................................... 14

CONCLUSION ........................................................................................................ 15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

*Affinity Labs of Texas, LLC* v. *DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ...................................................................... 1

*Alice Corp. Pty.* v. *CLS Bank Int'l*,
    573 U.S. 208 (2014) ...................................................................................... 4

*BSG Tech LLC* v. *Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ........................................................ 1, 7, 11, 14

*ChargePoint, Inc.* v. *SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ............................................................. 1, 7, 11

*Customedia Techs., LLC* v. *Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ...................................................................... 1

*Data Engine Techs. LLC* v. *Google LLC*,
    906 F.3d 999 (Fed. Cir. 2018) .............................................................. 5, 6, 9

*DDR Holdings, LLC* v. *Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ........................................................ 2, 9, 12, 13

*Elec. Power Grp., LLC* v. *Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .............................................................. 4, 7, 13

*Intellectual Ventures I LLC* v. *Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) .................................................................. 3, 5

*Intellectual Ventures I LLC* v. *Capital One Bank (USA)*,
    850 F.3d 1332 (Fed. Cir. 2017) .................................................................... 13

*Intellectual Ventures I LLC* v. *Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ............................................................... passim

*Interval Licensing LLC* v. *AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) .................................................................. 4, 5

*Koninklijke KPN N.V.* v. *Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019) .................................................................... 13

i

*Lipton* v. *Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) ................................................................ 15

*Mayo Collaborative Servs.* v. *Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) .................................................................... 7, 11, 14

*Morsa* v. *Facebook, Inc.*,
    77 F. Supp. 3d 1007 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915
    (Fed. Cir. 2015) ....................................................................... 14

*Mortg. Application Techs., LLC* v. *Meridianlink, Inc.*,
    No. SA CV 190704DOCDFMX, 2020 WL 1000581
    (C.D. Cal. Jan. 6, 2020), *aff'd*, No. 2020-1504,
    — F. App'x —, 2021 WL 97347 (Fed. Cir. Jan. 12, 2021) ..................... 6, 11, 15

*Simio, LLC* v. *FlexSim Software Prods., Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ....................................................... 8

*Visual Memory LLC* v. *NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017) ....................................................... 14

## INTRODUCTION

In its efforts to save the '871, '781, and '362 claims from ineligibility, PARC misapplies Federal Circuit precedent to contend its claims are "computer-specific" and/or invokes unclaimed features of the specifications to make the claims seem "far more complex" than they really are.  Both arguments fail.

At *Alice* step one, PARC contends its claims are patent-eligible because the specifications set the alleged inventions in a computer or Internet context.  But § 101 case law requires more.  The problem to be solved must be one "specifically arising" in the computer or Internet realm, *Affinity Labs of Texas, LLC* v. *DIRECTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016), not just one that has always existed for humans, such as assessing whether information is authoritative ('871), seeking relevant but previously unseen information ('781), and sending a portion of a document to another person ('362).  And the solution must improve the functioning of the computer itself, not just be a long-standing human solution implemented on a computer.  *Customedia Techs., LLC* v. *Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020).

At *Alice* step two, the patents fail the inventive concept requirement.  PARC either points to the abstract idea itself, in contravention of *BSG Tech LLC* v. *Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018), or relies on unclaimed features, in contravention of *ChargePoint, Inc.* v. *SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).  PARC also cites to its Complaint and the prosecution history in an attempt to drum up a factual dispute, but there is none.  Because the claims of the '871, '781, and '362 Patents are directed to patent-ineligible abstract ideas without more, they are invalid under § 101.

## ARGUMENT

### I.   The '871 Patent

#### A. The '871 Patent Claims Are Directed to an Abstract Idea

The main thrust of PARC's *Alice* step one analysis is that, because the '871 Patent discusses performing its abstract idea in the context of the Internet, the patent

solves a problem that is purportedly unique to the Internet and thus its claims are patent-eligible. *See* Opp.[1] at 9–12. This is unsupported by the law. The Federal Circuit has expressly cautioned that "not all claims purporting to address Internet-centric challenges are eligible for patent[ing]." *DDR Holdings, LLC* v. *Hotels.com, L.P.*, 773 F.3d 1245, 1257–58 (Fed. Cir. 2014).

In any event, PARC oversells its patent. Although PARC repeatedly emphasizes that the '871 Patent addresses a "[n]otorious [c]omputer [p]roblem," *see, e.g.*, Opp. at 7, 9, 13, the asserted problem is not in any way unique to the Internet. The patent itself concedes this. As the patent states, the problem at issue stems from "using large heterogeneous document collections, *such as* the World Wide Web," from which it is difficult to recognize which documents "provide reliable authoritative information about a subject," and "*[i]n society at large*, as evidenced on the Web, there is much more heterogeneity in knowledge and viewpoint." '871 Patent at 1:13–18, 2:9–10 (emphases added). The need to be able to determine whether a document is authoritative or reliable—what PARC calls the "authoritativeness problem"—is not at all a technological problem. Opp. at 9–10. Quite the contrary, it is a longstanding problem that arises with any large collection of documents that includes heterogeneous viewpoints, not just the Internet. '871 Patent at 1:13–14.

Even if it is the case, as PARC would have it, that the Internet presents unique challenges because it allegedly "exacerbates" the authoritativeness problem "exponentially," this does not change the analysis.[2] Opp. at 10. First, to the extent PARC contends that the problem is exacerbated "because [the Internet] uses social networks and link structure (instead of content) to measure authoritativeness," it misstates the problem presented by the patent. *Id.* What the patent actually says is

---

[1] "Opp." refers to PARC's Opposition to Twitter's Motion.

[2] PARC also characterizes the "problem" as the Internet is "not effective at searching, returning, or identifying authoritative documents." Opp. at 9. But the claims do not invoke the Internet or cover "searching" or "returning" documents.

that the difficulty with determining which documents from the Internet are authoritative is due to the "sheer volume" of available information, rather than anything about the technological nature of the Internet (e.g., the way the network is structured or stores information).   '871 Patent at 5:25–28.   Second, the "authoritativeness problem" associated with "large heterogeneous document collections," by virtue of the collection being "large," already exists on a grand scale. *Id.* at 1:13–14.   Third, the Federal Circuit has long established that a claim does not cease to be abstract merely because the same, age-old problem appears in a different environment, such as the Internet.   *Intellectual Ventures I LLC* v. *Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016); *Intellectual Ventures I LLC* v. *Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("*IV/Capital One I*").

Notably, PARC does not dispute that Claim 1 can be performed entirely by a human, as noted in Twitter's motion.   *See* Mot.[3] at 6.   That is because PARC cannot—the claimed solution presented by the patent is no more technological than the problem to be solved.   The '871 Patent is directed to the "concept of 'authoritativeness'" that humans use when assessing information:   judging the textual contents of a document (the example provided in the specification is a human reading a book) by considering, for example, if it "reads as if it is well-researched," "uses language in a skillful and appropriate way," or "contains numerous references of the right sort, and the like." '871 Patent at 1:44–45, 1:62–2:8.   The patent explains that a scientific research paper from the *New England Journal of Medicine*, for example, is more authoritative than a press release or documents at "drkoop.com."   *Id.* at 10:41–60.

The '871 claims mimic this long-performed human practice:   "determining" values "based on textual contents in the document"; "determining an authoritativeness for the document" using the values and a model; and "outputting" that determined authoritativeness.   *Id.* at Claim 1.   Certain dependent claims go further and explicitly

---

[3] "Mot." refers to Twitter's Memorandum of Points and Authorities, Dkt. No. 43-1.

recite the same disclosure in the specification of humans judging textual contents of a document to determine the reliability of that document.  Just as the specification describes "someone say[ing]" a book is "authoritative" because it "reads as if it is well-researched," *id.* at 1:64–2:8, so does Claim 15 recite that the claimed method determines reliability of a document based on whether it "reads as if the document is well-researched."  *See also id.* at Claims 20, 25 (same).

The non-technological nature of the claims is underscored by the lack of any explanation as to how the claimed method is even implemented.  *Interval Licensing LLC* v. *AOL, Inc.*, 896 F.3d 1335, 1344–45 (Fed. Cir. 2018).  Despite PARC's conclusory statements that the '871 claims are "specific," they are not.  The claims generically recite determining values from textual contents, then using those values and a model to determine and output an authoritativeness.  '871 Patent at Claim 1.  But the claims do not explain ***how*** the values are determined from textual contents; they do not explain ***how*** the authoritativeness is determined; and they do not explain ***how*** the model is trained or implemented.  This type of results-oriented claiming— particularly where the claims recite what a human has always done—invokes the exact type of preemption concern the Supreme Court sought to avoid when applying § 101.  *Alice Corp. Pty.* v. *CLS Bank Int'l*, 573 U.S. 208, 217 (2014) ("[W]e must distinguish between patents that claim the building blocks of human ingenuity . . . [that] would risk disproportionately tying up the use of the underlying ideas and are therefore ineligible for patent protection."  (citation and punctuation omitted)).

PARC attempts to fabricate specificity by pointing to two claim elements.  First, PARC notes that the claims require that document content feature values be determined "based on textual contents in the document."  Opp. at 10.  But that only establishes that the claimed determination is based on a type of data (textual contents), which the Federal Circuit has made clear does not lend any specificity.  *Elec. Power Grp., LLC* v. *Alstom S.A.*, 830 F.3d 1350, 1353, 1355 (Fed. Cir. 2016); *IV/Capital One I*, 792 F.3d at 1366.  Second, PARC argues that the claimed invention uses a

"trained document textual authority model."  Opp. at 10.  But this only establishes that something designated as a "model" is used, not how the model is created or applied.  It is nothing more than a functional aspiration.  *Interval Licensing*, 896 F.3d at 1345–46.  And, even when the specification is considered, it explains that the model may be trained on a set of documents humans have "manually evaluated and labeled" as being authoritative.  '871 Patent at 6:39–42.

PARC's reliance on *Data Engine Technologies LLC* v. *Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) ("*DET*") is thus misplaced.  Opp. at 9–10.  In *DET*, the court upheld a claim "recit[ing] specific steps detailing the method of navigating through spreadsheet pages within a three-dimensional spreadsheet environment."  906 F.3d at 1008.  The court explained that three-dimensional spreadsheets were particularly complex and burdensome, and the recited solution improved the functionality of the computer to be able to instantly access all parts of the spreadsheets for the first time.  *Id.*  The court also emphasized the "specific" nature of the claims in determining they were not abstract—indeed, the representative claim was over 300 words long and detailed exactly how the navigation occurred.  *Id.* at 1005, 1008–09.

By contrast, *Symantec*, discussed in Twitter's opening brief, is on-point.  Mot. at 8.  PARC's attempts to distinguish that case fall flat.  PARC argues that the *Symantec* claims were held abstract because "the problem (junk mail) and its solution (throwing away junk mail) were the same regardless of whether they were performed on a computer or by a human."  Opp. at 11.  But that was not the court's reasoning—its reasoning was that there was a long-prevalent practice for people receiving mail to look at an envelope and discard letters, and that characterizing e-mail based on a known list of identifiers, as recited in the claims, was "no less abstract."  838 F.3d at 1314.  Those claims merely applied a well-known idea to the particular technological environment of the Internet.  *Id.*  That the alleged problem occurred on a bigger scale on the Internet was of no import.  The same reasoning applies here, where the alleged invention applies the concept of authoritativeness to the Internet.  '871 Patent at 1:44–

2:41. In any event, the problem and solution here are indeed the same whether performed by a computer or by a human. *See id.* at Claim 1.

The '871 Patent itself contradicts PARC's argument that "the social-reach versus content authoritativeness problem has no pre-computer analogue." Opp. at 11. The choice between determining the authoritativeness of a document based on its social authority versus its textual features is one that exists independent of the Internet. For example, when someone writes a tell-all book about a political figure, the reader can assess the reliability of that book based on either how close the author was to the figure (the "social authority" concept) or how well-documented the anecdotes in the book read (the "textual" content concept). '871 Patent at 1:44–2:8.

To be clear, however, the ineligibility of the '871 claims is not based on whether there is a "real-world analogy" or "pre-computer analogue." Opp. at 10, 11. The ineligibility of these claims is based on their recitation of ***the exact same solution*** that humans have always used to determine authority, as the '871 specification itself explains. *Symantec*, 838 F.3d at 1318. The eligibility question is whether the claims are "directed to" the abstract idea itself. *DET*, 906 F.3d at 1011. That is the case here, and therefore the claims are patent-ineligible.

Finally, the Court should reject PARC's last-ditch effort to avoid dismissal on the basis of claim construction. PARC "does not raise a claim construction dispute with proposed constructions but instead simply lists terms that it contends 'should be construed.'" *Mortg. Application Techs., LLC* v. *Meridianlink, Inc.*, No. SA CV 190704DOCDFMX, 2020 WL 1000581, at *3 (C.D. Cal. Jan. 6, 2020) (rejecting claim construction request before dismissal), *aff'd*, No. 2020-1504, — F. App'x —, 2021 WL 97347 (Fed. Cir. Jan. 12, 2021). Indeed, PARC conspicuously avoids even offering any proposed constructions and thus there is nothing for the Court to decide.

## B. The '871 Patent Claims Add No Inventive Concept

PARC argues that (1) "[u]sing a document's textual contents to assess authoritativeness" and (2) "the trained textual authority model for making that

6

decision" are inventive concepts that allow the '871 claims to survive *Alice* step two. Opp. at 14. This argument fails. The first concept is already contained in the abstract idea itself: determining the authoritativeness of a document based on textual features within the document. Mot. at 6. It therefore cannot supply the inventive concept. *BSG*, 899 F.3d at 1290 ("It has been clear since *Alice*" that the abstract idea "cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). The second concept is a black box with no detail about how the model is implemented, how it determines authoritativeness, or how it is trained. Claims that do not provide "any requirements for ***how*** the desired result is achieved" do not provide an inventive concept sufficient to save the claims at step two. *Elec. Power Grp.*, 830 F.3d at 1355 (emphasis in original). Notably, the model is not even recited in Claim 21 and its dependent claims.

The correct question to ask at step two, after identifying an ineligible concept at step one, is "[w]hat else is there in the claims before us?" *BSG*, 899 F.3d at 1290 (quoting *Mayo Collaborative Servs.* v. *Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012)). PARC has no answer. PARC attempts to invoke unclaimed features from the specification to inject additional details into the model, including how the model is allegedly trained based on manually labeled documents that are deemed to be "good predictors" of authoritativeness and how the model may consider the document's classification. Opp. at 8, 10. But this is improper. Federal Circuit precedent requires patent eligibility to be evaluated based on what is actually claimed: a specification "full of technical details," "may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *ChargePoint*, 920 F.3d at 769. Nor can PARC rely on the mathematical algorithms recited in the dependent claims (e.g., statistical processes and Adaboost) to save the claims—the algorithms themselves are abstract. Opp. at 10; *Elec. Power Grp.*, 830 F.3d at 1354.

And while it is true that a claim can be patent-eligible even if it uses known

7

computer components, PARC misses the point.  Opp. at 12.  PARC's cited cases all explain that a claim that relies on known computer components can be patent-eligible *if* those components are, for example, arranged in a "non-conventional and non-generic" way or "operat[ing] in an unconventional manner."  Opp. at 12, 14–15 (citing *BASCOM*, *Amdocs, Cellspin*).  The claims here, to the extent they recite the use of a computer (which Claim 1 and its dependent claims do not), do not arrange the computer's components in a non-conventional way and rely on its components only to perform generic functions, such as mere "determining" and "outputting."

The remainder of PARC's step two argument attempts to create a factual dispute by citing a proverbial kitchen sink of statements from its Complaint, the specification, and the prosecution history about the problem faced by the inventors and description of the alleged invention. Opp. at 13–14.  But Twitter's motion already takes as true that the inventors faced the concerns that are outlined in the specification and quoted in the Complaint.  Further, even assuming that the alleged invention is distinguishable "over the prior art," Opp. at 14, the Federal Circuit has long explained that the novelty of any claim element or the claimed process itself is "of no relevance" in determining whether a claim is patent-eligible.  *Symantec*, 838 F.3d at 1315.  The prosecution history—which is unremarkable—is thus irrelevant.

The Court need not make any factual determinations to rule on the ineligibility of the '871 claims.  Opp. at 13.  The Court can determine that these claims do not recite an inventive concept as a matter of law because they do not supply an inventive concept that renders the alleged invention "significantly more" than its ineligible abstract idea.  *Simio, LLC* v. *FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1363 (Fed. Cir. 2020).  The Court should thus hold the '871 Patent claims invalid under § 101.

## II.    The '781 Patent

### A. The '781 Patent Claims Are Directed to an Abstract Idea

PARC's '781 Patent eligibility analysis suffers from many of the same flaws as PARC's '871 Patent eligibility analysis.  PARC argues that the '781 method "is a

8

specific way of resolving a computer problem that adds several layers of complexity beyond the basic concepts of tailoring or analyzing information." Opp. at 17. But, as detailed in Twitter's opening brief, the '781 method can be performed entirely by a human. Mot. at 13. PARC does not dispute this. The '781 Patent addresses a problem that has existed for as long as humans have tried to locate relevant unseen information, e.g., in a library. There is nothing about the functioning of a computer or network that uniquely causes a user not to be able to locate a relevant unseen document.

As with *DET*, PARC's reliance on *DDR* is misplaced. Opp. at 17. PARC cites *DDR* to contend that the '781 claims overcome a "computer-network problem." *Id.* That is incorrect. Although the Federal Circuit ruled that the *DDR* claims are patent-eligible, that case does not apply here. In *DDR*, the "problem" purportedly addressed by the claimed solution concerned "retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink." 773 F.3d at 1257. As the court explained, that problem is one specific to computers because it arises out of the unique functioning of web browsers and hyperlink requests: clicking an advertisement causes the web browser to navigate away from the previous page. *Id.* In short, the *DDR* problem specifically arose, or originated, from the way Internet hyperlinks conventionally work, *id.*, whereas the problem here arises from the general field of information retrieval. '781 Patent at 1:16. Indeed, humans have always needed to retrieve relevant unseen information. Tellingly, PARC never articulates what is the "computer-network problem" solved by the '781 Patent.

PARC also cursorily argues that the claimed solution is "rooted in computer technology" because the claims "require searching linked documents and determining unseen documents within a threshold distance from previously-accessed documents." Opp. at 17. But information can be "linked" in an analog world, such as by reference or citation. *See* '871 Patent at 1:44–61 (describing an "authoritative source" as one

that is "relatively central in the network of citations in a given scientific or scholarly literature"). The concept of a "threshold distance" also exists in the offline world, as well, as exemplified by a game of Six Degrees of Kevin Bacon.

PARC attempts to recast the alleged invention of the '781 Patent as something "far more complex" than that which humans have done before, as discussed in Twitter's motion, but does not actually explain why that is the case. Opp. at 15. PARC's description of the alleged invention merely paraphrases the same problem faced by the inventors that Twitter also described and analyzed in its motion: search engines were "not focused on discovering new-unseen information relevant to the user's current information retrieval goals." *Id.*; Mot. at 11. PARC also points to the same alleged solution Twitter described and analyzed: retrieving a user's search history and, from it, assembling a set of linked but unseen documents to which the search query is applied. Opp. at 15–16; Mot. at 12. Indeed, it is this solution—also recited in the claims—that Twitter explained was the abstract idea of the '781 Patent claims: personalizing information searches by returning as-yet unseen information connected in some way to information previously viewed by the user. Mot. at 13.

In that same vein, PARC dismisses directly relevant case law where the Federal Circuit held claims directed to tailoring information to users to be patent-ineligible. Opp. at 16. PARC, however, fails to explain how its personalized search method is "much more" than tailoring information based on time or location or delivering targeted media to a user. *Id.* Indeed, the '781 alleged solution is personalizing search results by locating relevant but unseen documents based on the user's history. '781 Patent at 2:55–58. This is just another form of tailoring information to a user, directly analogous to the cases Twitter discussed in its opening brief. Mot. at 13–14.

Finally, PARC makes another last-ditch effort to save its claims by listing terms that it contends should be construed without actually raising a claim construction dispute or identifying why the dispute matters. Opp. at 18. This inadequate request should be rejected. *Mortg. Application Techs.*, 2020 WL 1000581, at *3.

**B. The '781 Patent Claims Add No Inventive Concept**

PARC identifies "discovering new-unseen information relevant to the user's current information retrieval goals" as the '781 Patent's alleged inventive concept. Opp. at 18.  But, again, this cannot supply the inventive concept at step two because it is the abstract idea itself:  personalizing information searches by returning as-yet unseen information connected in some way to information previously viewed by the user.  Mot. at 13; *BSG*, 899 F.3d at 1290 ("It has been clear since *Alice*" that the abstract idea "cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

PARC's sole remaining argument as to why it survives *Alice* step two appears to be simply that, because it disputes whether the patents are ineligible, that dispute is necessarily factual.  But that is simply not so.  The passages PARC references from the claim language, the Complaint, and the prosecution history in support are mere restatements of the same abstract idea.  Opp. at 18.  PARC does not even suggest that any "jargon" in its patent claims confers an inventive concept.  *Id.* at 19.  PARC fails to identify any factual dispute regarding any "additional features" beyond the abstract idea "sufficient to transform the nature of the claim."  *Mayo*, 566 U.S. at 7779.  Without any, the '781 Patent fails *Alice* step two.  The '781 Patent claims are thus patent-ineligible.

**III.   The '362 Patent**

**A. The '362 Patent Claims Are Directed to an Abstract Idea**

Again, PARC attempts to save the '362 claims by repeating the mantra that they are "far more complex" than inserting notes about follow-up actions within a document.  Opp. at 20.  But it does so by improperly invoking unclaimed features. *ChargePoint*, 920 F.3d at 769 ("Ultimately, '[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed.'" (citation omitted)).  PARC implies that its alleged invention is somehow more sophisticated

11

because it allows a user to provide "context" for the tagged portion, "specify the amount of context associated with a tag," "restrict[] the recipient's available responses to the tagged information," "lock out the recipient's ability to make changes" or "deviate from the requested action," and addresses "version control issues."  Opp. at 20–21.  None of this is in the claims.  Indeed, in making these arguments, PARC cites only to the specification or, worse, to nothing at all.  *Id.* at 19–21.

PARC further stretches the '362 claims by characterizing the purported problem as "computer-specific."  *Id.* at 22.  PARC argues that a human can choose to send one part of a document to another with the idea that it would be "easy to re-integrate" into the original document, but a computer cannot do so and thus "loss of context" is a computer-specific problem.  *Id.*  Simply because a longstanding human practice has not previously been programmed on a computer, however, does not mean there is "a problem specifically arising in the realm of computer networks."  *See DDR*, 773 F.3d at 1257.  PARC does not point to where in the computer this problem arose—instead, it acknowledges that the problem of wanting to share only a portion of a document arose with humans wanting to do just that, long before computers.  Opp. at 22.

Just as the problem is not "computer-specific," neither is the solution.  *See id.*  Similar to how the specification describes a person adding instructions in a document to show a paragraph to Jane, '362 Patent at 5:6–8, the claims recite adding similar instructions in a document editor through a "tag" (defined by the patent as a "piece of descriptive text," *id.* at 4:24).  Because the claims only require that the "tag" be "at least partly formulated in natural language" and "visible to a user" (e.g., as a human would read it) and "indicate[]" an action on a portion of a document to be sent to a particular recipient, a human could actually meet Claim 1 by reading that tag and following the indicated action.  Claim 1 does not require any technological components.  PARC concedes as much in one of its footnotes, averring that the term "document" in the claims refers to a "text file," and the term "tag" in the claims refers

12

to a "piece of descriptive text."  Opp. at 21 n.5.  Regardless, even in the computer-implemented claims of the patent, the computer is programmed to perform what humans have long done, which is exactly what *DDR* and its progeny tell us is ***not*** patent-eligible.  *DDR*, 773 F.3d at 1258–59; *Symantec*, 838 F.3d at 1314.

Skipping the other cases Twitter analyzes in its brief, Mot. at 20–24, PARC makes much out of the fact that in *Intellectual Ventures I LLC* v. *Capital One Bank (USA)*, 850 F.3d 1332 (Fed. Cir. 2017) ("*IV/Capital One II*") the claims did not include the word "tag," and the tag was not "the basis for which the Federal Circuit ruled."  Opp. at 22.  That those claims did not use the word "tag" is beside the point. The Federal Circuit explained the XML structure uses "tags" to define what data the XML document stores, and the invention manipulates that data.  *IV/Capital One II*, 850 F.3d at 1339.  The case is relevant not just because of the disclosure of tags, but because the court used the same reasoning that Twitter applies to explain that, just as limiting the *IV/Capital One II* abstract idea to an XML environment did not make the claims non-abstract, limiting the abstract data manipulations of the '362 claims to the manipulation of "tags" does not render those claims non-abstract.  Mot. at 22–23.

PARC's remaining arguments are unavailing.  Whether the '362 Patent "improves a prior art system," Opp. at 22, is "of ***no relevance***."  *Symantec*, 838 F.3d at 1315 (emphasis in original).  PARC's reliance on *Koninklijke KPN N.V.* v. *Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019), for the proposition that an improvement over prior art can render a claim patent-eligible thus does not apply (and is not what the case stands for anyway).  And, despite PARC's protestations otherwise, Opp. at 23, the Federal Circuit has repeatedly held that claims that merely recite "processing" without explaining ***how*** that processing works cannot save the claims on § 101.  *See Elec. Power Grp.,* 830 F.3d at 1355 (collecting cases).[4]

---

[4] As PARC admits, Opp. at 23, if the specification also does not explain how the processing occurs, that creates another invalidity problem for PARC's patent claims,

### B. The '362 Patent Claims Add No Inventive Concept

PARC's *Alice* step two arguments are lacking.  Although PARC identifies "the use of inline tags that control the amount of the document shown to the recipient and the actions that the recipient may take on the document" as the alleged inventive concept of the '362 Patent, this cannot be so.  Opp. at 23.  This identification is nothing more than the abstract idea itself (receiving a tag with instructions to take a specified action on a portion of a document, processing the tag, and sending the portion to the recipient named in the tag) with certain unclaimed features also shoehorned in (the "control" of what is shown and what actions or responses the recipient may take).  Mot. at 20; *supra* at 12; *BSG*, 899 F.3d at 1290.  PARC's citations to the Complaint, the patent, and the prosecution history are all directed to these abstract ideas, Opp. at 23–24, so there is no factual dispute as to whether there are any "additional features" beyond the abstract idea "sufficient to transform the nature of the claim."  *Mayo*, 566 U.S. at 77–78.  The '362 Patent claims are thus patent-ineligible.

### IV.   Twitter's Prosecution of a Patent Unrelated to This Case Is Irrelevant

PARC attempts to discredit Twitter by pointing out that Twitter defended a wholly unrelated patent against a § 101 rejection during prosecution.  Opp. at 24.  This Court previously rejected such an argument as beside the point.  *Morsa* v. *Facebook, Inc.*, 77 F. Supp. 3d 1007, 1014 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015) (explaining that, even accepting as true that the defendant took contrary positions with respect to patents "not at issue in this case," "contrary arguments before another tribunal do not permit this Court to confer patent eligibility on otherwise ineligible subject matter").  The Court should likewise dismiss this distraction.

### V.   Twitter Complied with L.R. 7-3's Meet-and-Confer Requirement, and Amendment at This Point Would Be Futile

PARC's accusation that Twitter failed to meet and confer, postured to set up its

---

specifically an enablement or written description issue under 35 U.S.C. § 112.  *See Visual Memory LLC* v. *NVIDIA Corp.*, 867 F.3d 1253, 1261 (Fed. Cir. 2017).

request for amendment, lacks merit.  Twitter complied with L.R. 7-3:  Twitter reached out to PARC via letter to inform PARC of its belief that the patents-in-suit are invalid; the parties met and conferred live for, as PARC notes, over thirty minutes; Twitter then twice invited PARC to engage in further live discussion without PARC accepting.  Mot. Groombridge Decl., Exs. A at 1–4, C at 1–5.  PARC chose not to respond to Twitter's second invitation until a matter of hours before this motion was due, though even then PARC did not identify anything meaningfully new from what it had already articulated and declined live discussion.  *Id.* at Ex. C at 1–2.

Regardless, PARC should not be permitted to amend its Complaint at this late stage.  Now with Twitter's opening brief in hand, PARC's opposition provides no further support for the eligibility of the challenged patents than what it had offered during the parties' meet-and-confer.  At bottom, PARC's opposition simply repeats that its patents are eligible merely because they invoke the context of the Internet or computers.  PARC does not specify what amendment it could make that would save its patent claims from ineligibility.  As the Court has decided previously, this is a classic illustration of futility where amendment would be improper.  *See, e.g.*, *Mortg. Application Techs.*, 2020 WL 1000581, at *6 (citing *Lipton* v. *Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.")).

<u>CONCLUSION</u>

For the foregoing reasons, the '871, '781, and '362 claims are invalid under § 101.  Twitter respectfully requests that the Court dismiss PARC's Third, Fourth, and Sixth Claims for Relief in its Complaint with prejudice.[5]

---

[5] Twitter joins Snap's motion to dismiss with respect to the '599 and '439 Patents. *Palo Alto Research Center Inc.* v. *Snap Inc.*, 20-cv-10755-AB-MRW, Dkt. No. 31.

15

1  DATED:  March 5, 2021                     PAUL, WEISS, RIFKIND, WHARTON &
2                                            GARRISON LLP

3                                            By: _____/s/ Nicholas Groombridge_____
4                                                       Nicholas Groombridge

5                                            PAUL, WEISS, RIFKIND, WHARTON &
                                             GARRISON LLP
6                                            Nicholas Groombridge (*pro hac vice*)
                                                ngroombridge@paulweiss.com
7                                            Jenny C. Wu (*pro hac vice*)
                                                jcwu@paulweiss.com
8                                            Michael F. Milea (*pro hac vice*)
                                                mmilea@paulweiss.com
9
                                             1285 Avenue of the Americas
10                                           New York, New York 10019-6064
                                             Telephone: (212) 373-3000
11                                           Facsimile:  (212) 757-3990

12                                           J. Steven Baughman (*pro hac vice*)
                                                sbaughman@paulweiss.com
13                                           Megan Raymond (*pro hac vice*)
                                                mraymond@paulweiss.com
14                                           Tanya S. Manno (*pro hac vice*)
                                                tmanno@paulweiss.com
15
                                             PAUL, WEISS, RIFKIND, WHARTON &
16                                           GARRISON LLP
                                             2001 K Street, NW
17                                           Washington, D.C. 20006-1037
                                             Telephone: (202) 223-7300
18                                           Facsimile: (202) 223-7420

19                                           Ekwan E. Rhow - State Bar No. 174604
                                                erhow@birdmarella.com
20                                           Grace W. Kang - State Bar No. 271260
                                                gkang@birdmarella.com
21
                                             BIRD, MARELLA, BOXER, WOLPERT,
22                                           NESSIM, DROOKS, LINCENBERG &
                                             RHOW, P.C.
23                                           1875 Century Park East, 23rd Floor
                                             Los Angeles, California 90067-2561
24                                           Telephone: (310) 201-2100
                                             Facsimile:  (310) 201-2110
25
                                             Attorneys for Defendant Twitter, Inc.
26

27

28